The Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MEREDITH BEAGLE, JORDAN GUERRERO, and SOFAUNA JOHNSON on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM, INC. and AMAZON.COM SERVICES LLC,<br><br>Defendants. | No. 2:24-cv-00316-JLR<br><br>AMAZON'S MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT<br><br>NOTE ON MOTION CALENDAR: August 7, 2024[1]<br><br>ORAL ARGUMENT REQUESTED |

[1] Based on briefing schedule set pursuant to the parties' Stipulated Order (Dkt. 31).



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**TABLE OF CONTENTS**


**Page**

I. INTRODUCTION ....... 1

II. BACKGROUND ....... 2

A. Amazon.com Services Does Not Disclose PII to Third Parties Outside the Ordinary Course of Business. ....... 2

B. Plaintiffs Base Their Suit on Speculation and Fail to Allege Any Actual Disclosure of Their PII. ....... 6

III. LEGAL STANDARD ....... 8

IV. ARGUMENT AND AUTHORITY ....... 8

A. Plaintiffs Fail to State a Claim Under the VPPA. ....... 8

1. Plaintiffs' Affiliate Disclosure Claim Fails. ....... 9

2. Plaintiffs' Third-Party Disclosure Claim Fails. ....... 14

B. Plaintiffs Fail to State a Claim under Cal. Civ. Code § 1799.3. ....... 18

1. Johnson Fails to Allege Actual Disclosure of Her PII. ....... 18

2. Johnson Provided Written Consent Under § 1799.3. ....... 19

C. Plaintiffs Fail to State a Washington CPA Claim. ....... 21

1. Plaintiffs Fail to Allege Any "Unfair" or "Deceptive" Acts. ....... 22

2. Plaintiffs Fail to Allege an Injury to Their Business or Property. ....... 23

D. Plaintiffs Should Not Be Given Leave to Amend. ....... 24

V. CONCLUSION ....... 24




Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 8, 9, 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 10

*Biers v. Washington State Liquor and Cannabis Bd.*,
2016 WL 3079025 (W.D. Wash. June 1, 2016) ........ 23

*Binder v. Aetna Life Ins. Co.*,
75 Cal. App. 4th 832 (1999) ........ 19

*Brummett v. Washington's Lottery*,
171 Wn. App. 664 (2012) ........ 22

*Davis v. HSBC Bank Nev.*, N.A.,
691 F.3d 1152 (9th Cir. 2012) ........ 3, 5, 6

*Doe v. Project Fair Bid Inc.*,
2011 WL 3516073 (W.D. Wash. Aug. 11, 2011) ........ 20

*Duran v. Cal. Dep't of Forestry and Fire Prot.*,
2023 WL 5072443 (N.D. Cal. Aug. 7, 2023) ........ 16

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ........ 16, 17

*Fan v. NBA Properties Inc.*,
2024 WL 1297643 (N.D. Cal. Mar. 26, 2024) ........ 18, 19

*Flannery v. Prentice*,
26 Cal.4th 572 (2001) ........ 19

*FT Glob. Cap., Inc. v. Future Fintech Grp., Inc.*,
2021 WL 5232483 (N.D. Ga. Nov. 10, 2021) ........ 15

*Gamez v. VF Corp.*,
2018 WL 6333560 (C.D. Cal. Nov. 21, 2018) ........ 15, 16

*Garcia v. Enter. Holdings, Inc.*,
78 F. Supp. 3d 1125 (N.D. Cal. 2015) ........ 20



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Ghanaat v. Numerade Labs, Inc.*,
689 F. Supp. 3d 714 (N.D. Cal. 2023) ....................17

*Gragg v. Orange Cab Co.*,
942 F. Supp. 2d 1111 (W.D. Wash. 2013)....................23

*Gray v. Amazon.com, Inc.*,
653 F. Supp. 3d 847 (W.D. Wash. 2023)....................22

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
105 Wn.2d 778 (1986) ....................21

*Hauenstein v. Softwrap Ltd.*,
2007 WL 2404624 (W.D. Wash. Aug. 17, 2007) ....................20

*Heinz v. Amazon.com, Inc.*,
2023 WL 4466904 (E.D. Cal. July 11, 2023) ....................21

*HM DG, Inc. v. Amini*,
219 Cal. App. 4th 1100 (2013) ....................19

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016)....................17

*In re Ring LLC Privacy Litig.*,
2021 WL 2621197 (C.D. Cal. June 24, 2021) ....................20, 21

*M.K. by and through Kirksey v. Google LLC*,
2023 WL 2671381 (N.D. Cal. Mar. 27, 2023)....................10, 14

*Mason v. Mortg. Am., Inc.*,
114 Wn.2d 842 (1990) ....................23

*Mendoza v. Microsoft Inc.*,
2014 WL 4540213 (W.D. Wash. Sept. 11, 2014)....................15, 16

*Mollett v. Netflix, Inc.*,
795 F.3d 1062 (9th Cir. 2015) ....................9

*Moss v. U.S. Secret Serv.*,
572 F.3d 962 (9th Cir. 2009) ....................10, 19

*Panag v. Farmers Ins. Co.*,
166 Wn.2d 27 (2009) ....................23

*PBTM LLC v. Football Nw., LLC*,
511 F. Supp. 3d 1158 (W.D. Wash. 2021)....................8



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Rancourt v. Meredith Corp.*,
2024 WL 381344 (D. Mass. Feb. 1, 2024) ....................12, 13

*Rodriguez v. Experian Servs. Cop.*,
2015 WL 12656919 (C.D. Cal. Oct. 5, 2015)....................20

*Rodriguez v. Sony Comput. Ent. Am. LLC*,
2012 WL 12921066 (N.D. Cal. Apr. 20, 2012) ....................10, 15, 19

*Rodriguez v. Sony Comput. Ent. Am., LLC*,
801 F.3d 1045 (9th Cir. 2015) ....................9, 11, 14, 23

*Silver v. Stripe Inc.*,
2021 WL 3191752 (N.D. Cal. July 28, 2021)....................20

*Springboard Media, LLC v. Augusta Hitech Soft Sols., LLC*,
2022 WL 4598777 (S.D. Fla. Sept. 30, 2022) ....................15

*State v. Mandatory Poster Agency Inc.*,
199 Wn. App. 506 (2017) ....................22

*Sterk v. Redbox Automated Retail, LLC*,
770 F.3d 618 (7th Cir. 2014) ....................11, 12

*Swift v. Zynga Game Network, Inc.*,
805 F. Supp. 2d 904 (N.D. Cal. 2011) ....................20

*United States v. Corinthian Colleges*,
655 F.3d 984 (9th Cir. 2011) ....................24

*Wright v. Lyft, Inc.*,
2016 WL 7971290 (W.D. Wash. Apr. 15, 2016)....................23

*Young v. Toyota Motor Sales, U.S.A.*,
196 Wn.2d 310 (2020) ....................22

**Statutes**

18 U.S.C. § 2710....................1

18 U.S.C. § 2710(a)(2)....................11

18 U.S.C. § 2710(b)(2) ....................9

18 U.S.C. § 2710(b)(2)(E) ....................11

Cal. Civ. Code § 1799.3.................... *passim*

RCW 19.86.090 ....................23



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**Rules**

Federal Rules of Civil Procedure Rule 11 ........................................................................10

Federal Rules of Civil Procedure Rule 12(b)(6) ..............................................................2



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## I. INTRODUCTION

Plaintiffs' complaint is part of a wave of recent class actions filed across the nation asserting violations of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, and state law analogues like Cal. Civ. Code § 1799.3. Plaintiffs, Amazon Prime Video subscribers, allege that Amazon.com Services LLC generally collected and shared customer Personally Identifiable Information ("PII") data with Amazon affiliates and unidentified third parties. Their complaint deploys sweeping statements about privacy rights and misleading excerpts of Amazon's terms as a smokescreen to conceal the absence of *any specific allegations* of any misconduct by Amazon. Tellingly, Plaintiffs' complaint lacks any factual allegations supporting their claims that Amazon.com Services disclosed *their* PII to anyone. Plaintiffs instead speculate disclosure *might* have occurred based on language excerpted from Amazon's Privacy Notice and other online terms. But Plaintiffs ignore the clear terms of Amazon's agreements providing that Amazon does *not* share customers' PII with its affiliates or third parties outside the normal course of its business. Plaintiffs' claims thus fail on several independent grounds.

*First*, Plaintiffs' VPPA claim based on alleged affiliate disclosure fails because Plaintiffs do not allege any actual disclosure occurred, and because any alleged disclosure by Amazon.com Services to its affiliates is permissible under VPPA as incident to its ordinary course of business.

*Second*, Plaintiffs' VPPA claim based on alleged third party disclosure fails because Plaintiffs (i) do not allege any actual disclosure occurred, (ii) fail to identify any unaffiliated third party to whom any disclosure was made, and (iii) fail to identify any actual PII that was disclosed.

*Third*, Plaintiff Johnson's Cal. Civ. Code § 1799.3 claim fails because she does not allege any actual disclosure of her PII to Amazon affiliates or third parties and because she consented to any alleged affiliate disclosure by agreeing to Amazon's Conditions and Use and Privacy Notice.

*Fourth*, Plaintiffs' derivative Washington Consumer Protection Act claim fails because they fail to allege any unfair or deceptive act and fail to allege any cognizable injury.

The Court, therefore, should dismiss Plaintiffs' claims with prejudice.



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## II. BACKGROUND

### A. Amazon.com Services Does Not Disclose PII to Third Parties Outside the Ordinary Course of Business.

Amazon.com Services operates Amazon Prime Video, a streaming service that allows users with Amazon accounts to watch video content. Consol. Am. Compl. ("CAC") ¶¶ 4, 17, 84. To create an Amazon account and use Amazon's website and services, including Amazon Prime Video, customers agree to Amazon's Conditions of Use ("COU") and Amazon's Privacy Notice. *Id.* ¶ 52.[2] In creating an account, customers are presented with the following screen, which requires the customer to input their name, mobile number or email, and a password. *Id.*




[2] Available at https://www.amazon.com/gp/help/customer/display.html? nodeId=GLSBYFE9MGKKQXXM (Conditions of Use) and https://www.amazon.com/gp/help/customer/display.html?nodeId=GX7NJQ4ZB8MHFRNJ (Privacy Notice). This Court may consider Amazon's COU and Amazon's Privacy Notice under Rule 12(b)(6), as they are incorporated by reference into the complaint (CAC ¶¶ 56 n. 22, 60 n. 23, 62–69) and are judicially noticeable, as set forth in Amazon's concurrently-filed Request for Judicial Notice. *See Davis v. HSBC Bank Nev.*, N.A., 691 F.3d 1152, 1160 (9th Cir. 2012) ("[C]ourts may take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Under the button labeled "Create your Amazon account," Amazon informs customers that "[b]y creating an account, you agree to Amazon's Conditions of Use and Privacy Notice" with the phrases "Conditions of Use" and "Privacy Notice" containing conspicuous blue hyperlinks to each respective agreement. *Id.* Customers who create accounts and subscribe to Amazon Prime also agree to Amazon Prime's Terms and Conditions, and customers using Amazon Prime Video consent to the Amazon Prime Video Terms of Use. *Id.* ¶¶ 70–76.[3]

Amazon's COU, Prime Video Terms of Use, and Prime Terms & Conditions each inform customers that Amazon's Privacy Notice applies to their use of Amazon's websites and services, and each directs customers to the Privacy Notice via a blue hyperlink. *See* RJN Exs. 1–3. Amazon's Privacy Notice, in turn, explains the information Amazon.com Services collects from customers, the information it uses internally, and the information it *may* disclose. *See* RJN Ex. 4.

Amazon's Privacy Notice also specifies how Amazon uses the information it obtains and that customers provide. *Id*. Under the heading "**For What Purposes Does Amazon Use Your Personal Information?**," the Privacy Notice explains that Amazon uses the personal information it receives as part of its ordinary course of business "to operate, provide, develop, and improve the products and services that we offer our customers." *Id*. This heading also lists the business purposes for which Amazon uses the information it acquires, as shown below. *Id*.

are not physically attached to the plaintiff's pleading.") (internal quotations omitted).

[3] Available at https://www.primevideo.com/help?nodeId=202095490 (Prime Video Terms of Use) and https://www.amazon.com/gp/help/customer/display.html?nodeId=G2B9L3YR7LR8J4XP (Prime Terms & Conditions). This Court may consider the Prime Video Terms of Use and Amazon Prime Terms & Conditions as they are both incorporated by reference in the Complaint. (CAC ¶¶ 70–76) and are judicially noticeable. *Davis*, 691 F.3d at 1160.



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## For What Purposes Does Amazon Use Your Personal Information?

We use your personal information to operate, provide, develop, and improve the products and services that we offer our customers. These purposes include:

- **Purchase and delivery of products and services.** We use your personal information to take and handle orders, deliver products and services, process payments, and communicate with you about orders, products and services, and promotional offers.
- **Provide, troubleshoot, and improve Amazon Services.** We use your personal information to provide functionality, analyze performance, fix errors, and improve the usability and effectiveness of the Amazon Services.
- **Recommendations and personalization.** We use your personal information to recommend features, products, and services that might be of interest to you, identify your preferences, and personalize your experience with Amazon Services.
- **Provide voice, image and camera services.** When you use our voice, image and camera services, we use your voice input, images, videos, and other personal information to respond to your requests, provide the requested service to you, and improve our services. For more information about Alexa voice services , click here.
- **Comply with legal obligations.** In certain cases, we collect and use your personal information to comply with laws. For instance, we collect from sellers information regarding place of establishment and bank account information for identity verification and other purposes.
- **Communicate with you.** We use your personal information to communicate with you in relation to Amazon Services via different channels (e.g., by phone, email, chat).
- **Advertising.** We use your personal information to display interest-based ads for features, products, and services that might be of interest to you. We do not use information that personally identifies you to display interest-based ads. To learn more, please read our Interest-Based Ads notice.
- **Fraud Prevention and Credit Risks.** We use personal information to prevent and detect fraud and abuse in order to protect the security of our customers, Amazon, and others. We may also use scoring methods to assess and manage credit risks.

As for the information Amazon might disclose to third parties, Amazon's Privacy Notice informs customers that Amazon is "not in the business of selling our customer's personal information to others." *Id*. Under the heading "**Does Amazon Share Your Personal Information?**" the Privacy Notice explains that Amazon *only* discloses personal information: (1) to assist in transactions involving third parties; (2) for use by third-party service providers that perform business functions on Amazon's behalf; (3) for business transfers; and (4) to comply with the law or to protect the rights, property, or safety of Amazon, its users, or others. *Id.*



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Amazon's Privacy Notice states in clear terms that Amazon never shares a customer's "name or other information that directly identifies [them]" to advertisers and instead only shares anonymized identifiers "like a cookie, a device identifier, or a code derived from … irreversible cryptography." *Id*. Amazon's Interest-Based Ads policy reiterates that Amazon does not disclose customers' PII to advertisers. RJN Ex. 6.[4] This policy states that Amazon "do[es] *not* use information which on its own identifies you, such as name or e-mail address, to serve interest-based ads" and that "[i]n providing [customers] interest-based ads we do *not* associate your interactions on unaffiliated sites with information which on its own identifies you … and we do *not* provide any such information to advertisers or to third-party sites that display our interest-based ads." *Id*. (emphasis added).

The Amazon Prime Video Terms of Use, too, provide additional detail as to what information Amazon.com Services may collect and share. RJN Ex. 2. Under the "**Software**" heading, the Prime Video Terms of Use notes that Amazon "*may* provide certain information regarding your subscription status and use of Digital Content … to video content providers." *Id.* (emphasis added). Such disclosures, however, are made "in a manner that is *not identifiable* to you" unless a customer authorizes otherwise. *Id*. (emphasis added).

Likewise, under the "**Audience Measurement**" heading, the Prime Video Terms of Use state that "Amazon may provide information about … viewing behavior to third parties for purposes of audience measurement and market research." *Id*. This subheading also includes a blue hyperlink customers can click to "learn more about these measurement services," which directs customers to a page explaining Nielsen Viewing Measurements. RJN Ex. 2. The Nielsen Viewing Measurements page states Amazon *may* provide viewing behavior data to Nielsen when customers watch AMC+, Paramount+, and Thursday Night Football programming on Prime

[4] Available at https://www.amazon.com/gp/help/customer/display.html?nodeId=GLVB9XDF9M8MU7UZ. This Court may likewise consider this policy in evaluating Amazon's Motion to Dismiss as Plaintiffs incorporated this policy by reference in the Complaint (CAC ¶ 69 & n. 28), and because it is judicially noticeable. *Davis*, 691 F.3d at 1160.



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Video. RJN Ex. 5.[5] This page also provides a link to Nielsen's Digital Measurement Privacy Statement, also cited in Plaintiffs' complaint, *see* CAC ¶ 79, that clearly states the data Nielsen receives does "do[es] *not (and cannot)* identify … the individuals about whom we collect content measurement data," unless individuals are a member of a Nielsen panel. RJN Ex. 7 (emphasis added). Nielsen's Privacy Statement also states that data provided by third party companies, like Amazon, consists of "aggregated or de-identified audience statistics" and that "Nielsen *never learns the identities* of other companies' users." *Id*. (emphasis added).

**B. Plaintiffs Base Their Suit on Speculation and Fail to Allege Any Actual Disclosure of Their PII.**

Plaintiffs are Amazon customers who have bought or rented videos through Amazon Prime Video. CAC ¶¶ 96–97, 100, 106–107, 109, 116, 119. Plaintiffs allege that Amazon.com Services generally disclosed customer PII to affiliates and unknown third parties in violation of the VPPA and, for plaintiff Johnson, in violation of California Civil Code § 1799.3. *Id.* ¶¶ 135-142, 155–163.[6] While the complaint includes inflammatory allegations about Amazon generally and irrelevant discussions about privacy laws, *see id.* CAC ¶¶ 1-5, 40-47, it lacks any specific allegations showing that Amazon violated either of the statutes at issue. Plaintiffs do not allege that Amazon.com Services affirmatively disclosed any of *their* PII to anyone. *See id.* Nor do Plaintiffs identity any third-party to whom their alleged PII was supposedly disclosed. *See id.* And Plaintiffs offer only barebones, generic allegations that Amazon.com Services purportedly allowed Amazon.com, Inc.—a holding company with no employees or operations—*access* to their PII. *See id.*

The entirety of allegations about alleged "disclosure" of Plaintiffs PII consists of one paragraph, copied-and-pasted for each plaintiff. Plaintiffs allege, without any factual support,

[5] Available at https://www.amazon.com/gp/help/customer/display.html?nodeId=202207330&view- type=content-only. The Court may also consider this policy in evaluating Amazon's Motion to Dismiss as Plaintiffs incorporated privacy statement by reference in the Complaint (CAC ¶ 77 & n. 33), and because it is judicially noticeable. *Davis*, 691 F.3d at 1160.

[6] Plaintiffs do not allege Amazon.com, Inc. violated the VPPA or Cal. Civ. Code § 1799.3. *Id*.



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

that Amazon.com Services "provide[d] Amazon Inc. *with direct access* to Amazon Services' database." *Id*. ¶¶ 103, 112, 121 (emphasis added). Plaintiffs do not allege Amazon.com, Inc. or any other Amazon entity actually accessed *their* PII. They instead speculate—based on language excerpted out of context from Amazon's agreements—that "Amazon Services gathers and shares consumers' PII with Amazon Inc. and other affiliates." *Id*. ¶ 139 (quoting portion of Amazon's Privacy Notice that describes data customer's automatically provide Amazon); *id*. ¶¶ 6, 49. These disclosures do not say that Amazon.com Services shares customer PII relating to video usage with any Amazon affiliate. Plaintiffs' only other support for their conclusory allegations consists of two news articles from 2021, which purportedly discuss Amazon's data practices generally, but do not mention Amazon Prime Video data whatsoever. *See id.* ¶¶ 44–46.

Plaintiffs also allege that Amazon.com Services discloses PII "to third parties both under the guise of 'audience measurement' and 'cross-context behavior ads.'" *Id*. ¶ 140; *see also id.* ¶ 7. Plaintiffs do not allege that their specific PII was disclosed to any third party and do not even allege the identity of any third party to whom customer PII generally was allegedly disclosed. Instead, Plaintiffs postulate that some unidentified customers' information might have been disclosed to some unidentified third parties based on excerpts from Amazon's disclosures. *Id.* ¶¶ 76, 140. These disclosures, read in full, make clear that Amazon.com Services does not disclose customers' PII for audience measurement or advertising purposes. *See* RJN Ex. 4 (Amazon's Privacy Notice: "We do not use information that personally identifies you to display interest-based ads."); Ex. 6 (Amazon's Internet-Based Ads disclosure: "In providing you interest-based ads we do not associate your interactions on unaffiliated sites with information which on its own identifies you, such as name or email address, and we do not provide any such information to advertisers or to third-party sites that display our interest-based ads."); Ex. 7 (Nielsen's Privacy Notice: third parties "provide Nielsen with aggregated or de-identified audience statistics"). And Plaintiffs' own allegations admit that, under Amazon's agreements, any disclosure is at most a possibility, not a guarantee. *See* CAC ¶ 76 ("Amazon *may* provide information about your viewing behavior" quoting Prime Video Terms of Use), ¶ 77 ("The



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

hyperlink identifies Nielsen as a third party and states that information … *may* be shared with Nielsen), ¶ 80 ("We *may* provide certain information regarding your subscription status" quoting Prime Video Terms of Use).

Finally, Plaintiffs assert claims against Amazon.com Services and Amazon.com, Inc. for violating the Washington Consumer Protection Act ("CPA") by failing to obtain VPPA-compliant consent, to provide compliant opt-outs for customers, and to destroy old records. *Id.* ¶¶ 143-154. Plaintiffs do not allege any facts of injury or harm to their businesses or property, instead seeking only "nominal damages for invasion of privacy." *Id.* ¶¶153, 154, Prayer.

## III. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). It is not enough that the factual allegations contained in a complaint are "merely consistent with a defendant's liability." *Id*. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id*. (internal citations omitted). For this reason, courts are "not required to accept as true a legal conclusion couched as a factual allegation." *PBTM LLC v. Football Nw., LLC*, 511 F. Supp. 3d 1158, 1170 (W.D. Wash. 2021) (internal citations omitted). In resolving a motion to dismiss, "the Court may consider materials incorporated into the complaint by reference, and matters of judicial notice." *Id*. (internal citations omitted).

## IV. ARGUMENT AND AUTHORITY

### A. Plaintiffs Fail to State a Claim Under the VPPA.

Plaintiffs fail to state a VPPA claim because their allegations are wholly insufficient to show Amazon.com Services improperly disclosed their PII to Amazon affiliates or unaffiliated



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

third parties.[7] Plaintiffs attempt to mask these shortcomings through general mudslinging and grand pronouncements about the importance of privacy laws. But their superficial and irrelevant allegations are insufficient to survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678.

*First*, Plaintiffs do not plead any facts plausibly showing that Amazon.com Services disclosed their information to Amazon affiliates. They instead speculate about the *possibility* of disclosure based on excerpts from Amazon's agreements, which read in full, make clear that any use of customer data complies with the VPPA. *Second*, Plaintiffs fail to plead any facts plausibly showing that Amazon.com Services disclosed their PII to unaffiliated third parties. They do not allege what data was disclosed, when such disclosure occurred, or even to whom any disclosure was made.

**1. Plaintiffs' Affiliate Disclosure Claim Fails.**

Plaintiffs assert Amazon.com Services violates the VPPA by disclosing customer information to other Amazon affiliates. *See, e.g.*, CAC ¶¶ 103, 139. To state such a claim, Plaintiffs "must allege that (1) [Amazon.com Services] is a 'video tape service provider,' (2) [Amazon.com Services] disclosed 'personally identifiable information concerning any customer' to 'any person,' (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by section 2710(b)(2)." *Mollett v. Netflix, Inc.*,795 F.3d 1062, 1066 (9th Cir. 2015) (citing 18 U.S.C. § 2710). Plaintiffs do not and cannot satisfy the second and fourth elements.

**a. Plaintiffs Allege Only the *Possibility* of Affiliate Disclosure, Not Any Actual Disclosure.**

The first issue with Plaintiffs' claim that Amazon.com Services divulged Plaintiffs' PII to Amazon affiliates is that Plaintiffs never allege any actual "disclosure." Plaintiffs merely allege that Amazon.com Services "provid[ed] Amazon Inc. with direct *access* to Amazon Services'

---

[7] Although Plaintiffs allege Amazon failed to timely destroy records regarding their video purchases and rental history, *see* CAC ¶¶ 22, 95, 97, 103, 105, Plaintiffs concede that they cannot bring an unlawful retention claim "[b]ecause the VPPA does not include a cause of action" for unlawful retention. *See id.* ¶ 22 n. 14; *see also Rodriguez v. Sony Comput. Ent. Am., LLC*, 801 F.3d 1045, 1050–53 (9th Cir. 2015).



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

database," which allegedly contained Plaintiffs' PII. CAC ¶¶ 103, 112, 121 (emphasis added). Plaintiffs do not plead any facts to support this allegation, however. Nor could they plead any such facts, consistent with Rule 11, because Amazon.com, Inc. is a holding company that operates exclusively through its subsidiaries and has no employees or operations. They do not allege that Amazon.com, Inc. or any Amazon affiliate actually accessed their data or that Amazon.com Services ever affirmatively disclosed their particular information to an affiliate. Nor do Plaintiffs explain what this supposed "access" consists of. Instead, Plaintiffs rest their affiliate disclosure claim solely on language taken out of context from Amazon's agreements, ignoring the entire agreements, without explaining how these agreements demonstrate their PII was disclosed, and on dated articles that do not involve the Amazon Prime Video data at issue here. *See id*. ¶¶ 17, 44–46, 139.

Plaintiffs' allegations thus consist of "naked assertions devoid of further factual enhancement," and are insufficient to state a claim. *Iqbal*, 556 U.S. at 678 (internal citations omitted). Courts dismiss similar VPPA claims where, as here, plaintiff only alleges defendant collected and disclosed consumers' information generally, without linking these allegations specifically to the plaintiff. *See, e.g.*, *M.K. by and through Kirksey v. Google LLC*, 2023 WL 2671381, at *3 (N.D. Cal. Mar. 27, 2023) (dismissing VPPA claim where complaint contained "no facts linking" general allegations that Google "collected consumers' [PII]" to plaintiff).

At most, Plaintiffs allege the mere *possibility* of disclosure. "[B]ut mere possibility is not enough," *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 971–72 (9th Cir. 2009). To avoid dismissal, Plaintiffs must allege facts showing "more than a sheer possibility that [Amazon] has acted unlawfully." *Iqbal*, 556 U.S. at 678. By alleging only that Amazon affiliates had "access" to Plaintiffs' information—without alleging these affiliates actually *accessed* their information—Plaintiffs fail to "nudge[] their claims across the line from conceivable to plausible, [and] their complaint must be dismissed." *Twombly*, 550 U.S. at 570. This Court should therefore dismiss Plaintiffs' VPPA claim based on Amazon's purported affiliate disclosure. *See Rodriguez v. Sony*



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Comput. Ent. Am. LLC*, 2012 WL 12921066, at *1 (N.D. Cal. Apr. 20, 2012) (dismissing VPPA claim where "plaintiff's allegations fail to state that a disclosure has affirmatively taken place").

**b. Any Alleged Disclosure to Amazon Affiliates Falls Within the VPPA's Ordinary Course of Business Exception.**

Plaintiffs' affiliate disclosure theory also fails because "intra-corporate disclosures are not unauthorized disclosures under the [VPPA]." *Rodriguez*, 801 F.3d at 1054. The VPPA allows a business to disclose PII if the disclosure is incident to its ordinary course of business. *See* 18 U.S.C. § 2710(b)(2)(E). This exception applies with full force to Amazon.com Services.

Section 2710(b)(2)(E) of the VPPA provides that "[a] video tape service provider may disclose [PII] concerning any consumer . . . to any person if the disclosure is incident to the ordinary course of business of the video tape service provider." The VPPA defines "ordinary course of business" to mean "only debt collection activities, order fulfillment, request processing, and the transfer of ownership." 18 U.S.C. § 2710(a)(2). Critically, "request processing" and "order fulfillment" have broad meanings and encompass a wide variety of customer support services, including intra-corporate disclosure. *See, e.g.*, *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 624–26 (7th Cir. 2014); *Rodriguez*, 801 F.3d at 1054.

For example, in *Sterk* the Seventh Circuit recognized that giving these terms their ordinary meaning makes it permissible for a defendant to disclose PII "in order to respond to a customer's call" or "for training purposes" because these services are "incident to the request processing function" a third-party or corporate affiliate may serve. 770 F.3d at 626. There, defendant video rental company Redbox engaged third party Stream as its customer call center vendor and allowed Stream access to its entire customer database so that Stream could respond to customer service inquiries and for training purposes. *Id.* at 621. In affirming summary judgment dismissal of the plaintiff's VPPA claim, the court held that there was "nothing objectionable about Redbox's wholesale disclosure of information pertaining to all customers" for use in potential customer service calls and training for such calls, as those uses were "incident to the request processing function that Stream serves." *Id.* at 626. Likewise, in



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Rancourt v. Meredith Corp.*, the court explained that "if the disclosure of PII is in furtherance of business management and operations that are intra-corporate or inner facing, designed to ensure the smooth operation of the business, such as customer support, internal data analytics, or cyber security, it falls under the exception." 2024 WL 381344, at *17 (D. Mass. Feb. 1, 2024).

Here, Amazon.com Services' purported disclosure (if any) of Plaintiffs' video-related PII to its affiliates qualifies as incident to its ordinary course of business. Amazon's Privacy Notice explains that Amazon may use customer information for specific purposes, including: (1) the purchase and delivery of products and services; (2) troubleshooting and improving Amazon.com Services; (3) providing customer recommendations and personalization; (4) providing voice, image, and camera support services; (5) complying with legal obligations; (6) communicating with customers; (6) advertising; and (7) fraud prevention and credit risks.[8] RJN Ex. 4.

Plaintiffs concede that most of these uses qualify under the ordinary course of business exception. *See* CAC ¶ 68. This is obvious because they involve customer support services incident to the request processing, order fulfillment, and debt collection functions Amazon's affiliates may provide. Use of PII to ensure the purchase and delivery of products and services, for example, is incident to the order fulfillment function. Likewise, use of PII to troubleshoot issues for customers, to provide customer recommendations and personalization, to provide voice, image, and camera support services, and to communicate with customers are akin to the customer support services recognized in *Sterk* as "incident to the request processing function." *See Sterk*, 770 F.3d at 626. Nonetheless, Plaintiffs allege three of these listed uses—providing customer recommendations, advertising, and fraud prevention/credit risks—purportedly do not qualify under the ordinary business exception. CAC ¶ 69. Again, Plaintiffs do not, and cannot,

[8] Plaintiffs assert, without any support, that the uses listed in Amazon's Privacy Notice are not exhaustive and that "there are even more purposes for which the data is used." CAC ¶ 68 n. 27. But Plaintiffs do not allege what these additional purposes are. In any event, Plaintiffs' assertion is belied by other language in Amazon's Privacy Notice stating that Amazon *shares* PII "only" for limited purposes, including to Amazon's Subsidiaries. *See* RJN Ex. 4.



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

allege that Amazon.com Services shares *their* PII for these purposes with affiliates, but, regardless, any such uses would not violate the VPPA.

First, the use of customer information to provide personalized recommendations and to prevent fraud and manage credit risks both fall within the ordinary course of business exception. Because Amazon.com Services' video streaming business relies on customer subscriptions, *see id.* ¶ 42, ensuring customers receive personalized recommendations and options to improve their streaming experience is imperative for Amazon's business. Use of customer information to provide recommendations and personalization is thus incident to both the order fulfillment function and request processing function. Indeed, the legislative history of the VPPA confirms the terms "request processing" and "order fulfillment" cover businesses' disclosure of PII "for marketing to their customers." S. Rep. No. 100-500, at 14 (1988). Likewise, that Amazon.com Services may use customer information to prevent fraud and manage credit risks is incident to the request processing and order fulfillment functions an affiliate may serve, as such use is designed to "prevent and detect fraud and abuse in order to protect the security of Amazon's customers." RJN Ex. 4; *see Rancourt*, 2024 WL 381344, at *17 (cyber-security and use of information for internal data analytics falls within exception).

Second, Amazon's Privacy Notice and other agreements refute Plaintiffs' conclusory claim that Amazon.com Services discloses PII to its affiliates for advertising purposes. The Privacy Notice makes clear that Amazon "do[es] *not* use information that personally identifies you to display interest-based ads." RJN Ex. 4 (emphasis added). Amazon's Interest-Based Ads Notice confirms this, stating Amazon "do[es] *not* use information which on its own identifies you, such as name or e-mail address, to serve interest based ads." RJN Ex. 6 (emphasis added).[9] As a result, Plaintiffs cannot claim that Amazon's Privacy Notice "acknowledge[s] that Amazon

[9] Plaintiffs assert that because Amazon's Interest-Based Ads Notice states that it does not use information which "on its own" identifies a customer, Amazon nevertheless discloses aggregated PII data that can identify customers. CAC ¶ 69 n. 28. Plaintiffs provide no factual allegations to substantiate this claim, however.



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Services can and is sharing PII-related video usage history," CAC ¶ 48, because the actual terms of that Notice confirm Amazon does not share PII for such purposes.

In sum, even if Plaintiffs had alleged an actual disclosure of their PII to an Amazon affiliate, Plaintiffs' theory fails because the VPPA authorizes Amazon.com Service's "intra-corporate disclosures." *Rodriguez*, 801 F.3d at 1054. The listed purposes for which Amazon uses customer data all fall within the ordinary course of its business. Plaintiffs' VPPA claim for affiliate disclosure thus fails.

### 2. Plaintiffs' Third-Party Disclosure Claim Fails.

Plaintiffs also assert Amazon.com Services violated the VPPA by disclosing information to unaffiliated third parties. But here, too, Plaintiffs never allege Amazon.com Services disclosed *their* PII and instead rest their claim on vague allegations about the disclosure of "consumer" information in general. Moreover, the information Plaintiffs speculate Amazon.com Services disclosed to unaffiliated third parties does not qualify as PII and cannot support a VPPA claim.

#### a. Plaintiffs Do Not Allege *Their* Information Was Disclosed Or Identify the Third Parties to Whom Any Disclosure Was Made.

Plaintiffs fail to state a third-party disclosure claim because, again, they do not plead any facts plausibly showing that such a disclosure occurred. Nowhere in Plaintiffs' Complaint do they allege that Amazon.com Services disclosed *their* particular PII to any unaffiliated third party. *See* CAC ¶¶ 90–122 (allegations specific to plaintiffs only focusing on disclosure to Amazon affiliates). Nor do Plaintiffs identify any third parties to whom such information was purportedly disclosed. Instead, Plaintiffs make generalized allegations that "Amazon Services gathers and shares *consumers*' PII" and that "Amazon Services also discloses this information to third parties" based on language excerpted from Amazon's agreements. *Id.* ¶¶ 139–41, 159. These vague and conclusory allegations are insufficient to state a VPPA claim, and in any case, are belied by the actual terms of the agreements on which they rely.

Courts routinely dismiss VPPA and similar privacy claims where, as here, plaintiff fails to provide any allegations that *their* specific information was disclosed. *See, e.g.*, *M.K. by and*



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*through Kirksey*, 2023 WL 2671381, at *3 (dismissing VPPA claim where plaintiff alleged Google "collected consumers' personally identifiable information" and disclosed such information to unidentified third parties without pleading facts linking these allegations to plaintiff); *Mendoza v. Microsoft Inc.*, 2014 WL 4540213, at *3–4 (W.D. Wash. Sept. 11, 2014) (dismissing VPPA claim for lack of standing where plaintiffs failed to allege their information was disclosed and instead relied on general statements in Microsoft's privacy policy); *see also Gamez v. VF Corp.*, 2018 WL 6333560, at *3 (C.D. Cal. Nov. 21, 2018) (dismissing unlawful disclosure claim under California privacy statute because plaintiff did "not allege that Defendant disclosed *his* personal information").

Similarly, courts routinely reject VPPA and similar claims where, as here, plaintiff fails to identify to whom an alleged disclosure was made. *See Rodriguez*, 2012 WL 12921066, at *1 (dismissing VPPA unlawful disclosure claim where plaintiff failed to "identify with particularity the person(s) or entity to whom such disclosure was made"); *Gamez*, 2018 WL 6333560, at *3 (dismissing California unlawful disclosures claim because plaintiff failed to plead "the identity of the third parties the personal information was shared with"); *FT Glob. Cap., Inc. v. Future Fintech Grp., Inc.*, 2021 WL 5232483, at *4 (N.D. Ga. Nov. 10, 2021) (dismissing breach of contract claim premised on improper disclosure where plaintiff did not identify "to whom Defendant disclosed this information"); *Springboard Media, LLC v. Augusta Hitech Soft Sols., LLC*, 2022 WL 4598777, at *2 (S.D. Fla. Sept. 30, 2022) (same).

Likewise here, Plaintiffs fail to allege that Amazon.com Services ever disclosed *their* information to any third-party and fail to identify any third-party to whom any such disclosure was made. Their complaint thus fails to state a VPPA third-party disclosure claim.

Nor can Plaintiffs base their third-party disclosure claim on Amazon's Privacy Notice and other agreements. As the relevant disclosures make clear, Amazon.com Services does *not* disclose customer PII to third parties. And, as Plaintiffs' complaint admits, the terms of Amazon's agreement all state that any alleged disclosure of consumer information is a *possibility*, not an actuality. *See* CAC. ¶¶ 76–77, 80. Amazon's Privacy Notice, for example,



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

explains that while Amazon "never share[s] your name or other information that directly identifies you," Amazon may share "an advertising identifier." RJN Ex. 4. The Prime Video Terms of Use, too, explain that Amazon "*may* provide information about … viewing behavior," and that Amazon "*may* provide certain information regarding your subscription status and use of Digital Content … to video content providers … in a manner that is *not identifiable to you*." RJN Ex. 2 (emphasis added); *see also* CAC ¶¶ 76–77, 80.[10]

Even if these disclosures suggested that Amazon.com Services may disclose customers' video-related PII to third parties (which they do not), Plaintiffs never allege Amazon.com Services *has* disclosed their information to any third parties, which is fatal to their claim. *See, e.g.*, *Mendoza*, 2014 WL 4540213, at *3–4 (dismissing VPPA claim where plaintiff failed to allege facts to support disclosure theory and instead relied on statements from Microsoft's privacy policy); *Gamez*, 2018 WL 6333560, at *3 ("[T]he privacy policy alone cannot give rise to a reasonable inference that Defendant shared Plaintiff's personal information with third parties because it says only that Defendant *may* share personal information, not that it has a practice of doing so, and certainly not that it shared *Plaintiff's* information."); *Duran v. Cal. Dep't of Forestry and Fire Prot.*, 2023 WL 5072443, at *4 (N.D. Cal. Aug. 7, 2023) (dismissing claim where "Plaintiffs' allegations focus on what Color may do with their information under its policies … without any factually supported allegations of actual disclosure").

**b. The Only Possible Information Plaintiffs Suggest Was Disclosed Does Not Constitute PII.**

Plaintiffs' third-party disclosure claim also fails because none of the information Plaintiffs speculate Amazon.com Services *might* have disclosed constitutes PII. PII refers to "information that readily permits an ordinary person to identify a particular individual as having watched certain videos." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (internal

[10] Although Plaintiffs discuss language in the Prime Video Terms of Use that Amazon *may* share information with Nielson, they never allege Amazon.com Services shared *their* information with Nielson. *See* CAC ¶¶ 76–79, 96–122, 139. And Nielson's Privacy Notice states that third parties provide it with "aggregated or *de-identified* audience statistics." RJN Ex. 7 (emphasis added).



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

citations omitted). This is because the VPPA "focuses on what information a video service provider knowingly discloses" as opposed to "what the recipient of that information decides to do with it." *Id*. Accordingly, information such as IP addresses, streaming device serial numbers, and even the names of videos watched do not constitute PII unless an ordinary person can readily use such information to identify a particular plaintiff. *See id*. at 986 (streaming device serial number coupled with names of video plaintiff watched do not qualify as PII); *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 283-84 (3d Cir. 2016) (IP address, device identifier, and browser fingerprint not PII).

Plaintiffs allege only that Amazon.com Services "gathers … consumers' PII" including "content interaction information, such as content downloads, streams, and playback details, including duration and number of simultaneous streams and downloads, and network details for streamlining and download quality, including information about consumers internet service provider." CAC ¶ 139. Plaintiffs then allege Amazon.com Services discloses this consumer information to unspecified third parties "both under the guise of 'audience measurement' and 'cross-context behavioral ads.'" *Id.* ¶ 140. But Plaintiffs do not allege how the information Amazon.com Services purportedly discloses to these hypothetical third parties would allow an "ordinary person" to identify Plaintiffs as having watched certain videos. Nor can they. Plaintiffs do not allege that the "content interaction information" "streams and playback details" and "network details" are coupled with any identifying information about *them*, and courts have made clear that such information, by itself, does not constitute PII under the "ordinary person" standard. *See Eichenberger*, 876 F.3d at 985; *Nickelodeon*, 827 F.3d at 283–84; *see also Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 720 (N.D. Cal. 2023) (dismissing VPPA claim where plaintiffs alleged defendant disclosed Facebook IDs, but failed to allege "their Facebook pages contain any personal information, such as their names or email addresses").

Further, the Amazon agreements on which Plaintiffs rest their claim refute any notion that Amazon.com Services may have shared *PII* with an unaffiliated third party. Amazon's Privacy Notice makes clear that Amazon "never share[s] [with advertisers] your name or other



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

information that directly identifies you" and instead uses anonymized data, like "advertising identifier[s]." RJN Ex. 4. The Prime Video Terms of Use also explains Amazon *may* provide certain information regarding a customer's subscription status, "in a manner that is not identifiable to you." RJN Ex. 2. And to the extent Plaintiffs' rest their claim on any possible disclosure to Nielsen, this claim is undercut by other allegations in their Complaint. Indeed, Plaintiffs admit Nielsen's Digital Measurement Privacy Statement states that the data it receives "do[es] not (and cannot) identify … the individuals about whom we collect content measurement data" and that "Nielsen never learns the identities of other companies' users." RJN Ex. 7; CAC ¶ 80. Thus, because Plaintiffs have not alleged Amazon.com Services shared *their* information, or that such information even constitutes PII, Plaintiffs' VPPA third-party disclosure claim fails.

### B. Plaintiffs Fail to State a Claim under Cal. Civ. Code § 1799.3.

Plaintiff Johnson also claims Amazon.com Services' purported affiliate disclosures violated California Civil Code § 1799.3, the California analogue to the VPPA. CAC ¶¶ 24–29, 155–163. Section 1799.3 provides that "[n]o person providing video recording sales or rental services shall disclose any personal information or the contents of any record, including sales or rental information, [to] any person, other than the individual who is the subject of the record, without the written consent of that individual." Cal. Civ. Code § 1799.3; *see also Fan v. NBA Properties Inc.*, 2024 WL 1297643, at *2 (N.D. Cal. Mar. 26, 2024). Here, much like Plaintiffs' VPPA claim, Johnson's § 1799.3 claim fails for two reasons. *First*, Johnson fails to allege Amazon.com Services actually disclosed her PII. *Second*, Johnson admits she "contracted with Amazon Services" and therefore gave written consent to any alleged disclosure. CAC ¶ 117.

#### 1. Johnson Fails to Allege Actual Disclosure of Her PII.

Johnson fails to assert that Amazon.com Services affirmatively disclosed her specific PII to any Amazon affiliate. Instead, Johnson merely alleges Amazon.com Services "provid[ed] Amazon Inc. with direct access to Amazon Service's database with information on Plaintiff[s]." CAC ¶ 121. Again, Johnson pleads no facts to support this allegation. She does not allege Amazon.com, Inc. actually accessed or used her particular data, nor does she explain what this



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

"access" consists of, particularly given that Amazon.com, Inc. has no employees or operations. Because Johnson has not alleged Amazon.com Services actually disclosed her particular PII and has instead alleged only the possibility of disclosure by way of "access," her § 1799.3 claim fails. *See Rodriguez*, 2012 WL 12921066, at *1; *Moss*, 572 F.3d at 971–72 ("[M]ere possibility is not enough" to state a claim).

**2. Johnson Provided Written Consent Under § 1799.3.**

Johnson likewise fails to state a claim under § 1799.3 because she gave Amazon.com Services written consent for any purported disclosure of her PII. Unlike the VPPA, which imposes "more stringent requirements for consent, including that the consent … [be] in a form distinct and separate from any form setting forth other legal … obligations," *Fan*, 2024 WL 1297643, at *2, no such requirements exist under § 1799.3. The statute instead only requires "written consent." *See* Cal. Civ. Code § 1799.3.

Because the statute does not define "written consent," the phrase must be given its "plain and commonsense meaning," *Flannery v. Prentice*, 26 Cal.4th 572, 577 (2001), which here would be a voluntary agreement made in writing. *See, e.g.*, *Written*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/written (last visited May 13, 2024) ("written" is understood to be "made or done in writing"); CONSENT, Black's Law Dictionary (11th ed. 2019) ("consent" means "[a] voluntary yielding to what another proposes or desires, agreement, approval, or permission regarding some act or purpose."). Given this plain meaning, where a party agrees by contract to allow the disclosure of their PII, they have given sufficient "written consent" for disclosure of their PII within the ambit of § 1799.3.

"To form a contract, a manifestation of mutual assent is necessary." *Binder v. Aetna Life Ins. Co.*, 75 Cal. App. 4th 832, 850 (1999). "Mutual assent is determined under an objective standard applied to the outward manifestations or expressions of the parties." *HM DG, Inc. v. Amini*, 219 Cal. App. 4th 1100, 1109 (2013). Under these principles, courts routinely find that a customer manifests assent to online terms, where, as here, "the user is provided with an opportunity to review the terms [] in the form of a hyperlink immediately above or below a



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

button that must be clicked to affirmatively acknowledge the terms, place an order, or register for an account." *In re Ring LLC Privacy Litig.*, 2021 WL 2621197, at *5 (C.D. Cal. June 24, 2021) (citing cases; holding consumer consented to Ring Terms of Service by creating account); *Rodriguez v. Experian Servs. Cop.*, 2015 WL 12656919, at *1–2 (C.D. Cal. Oct. 5, 2015) (assent where "website contained a hyperlink to the Terms of Use at the bottom of every page and included an express disclosure and acknowledgment, which stated, 'By clicking the button above ... you agree to our Terms of Use'"); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 912 (N.D. Cal. 2011) (binding contract created where plaintiff "was provided with an opportunity to review the terms of service in the form of a hyperlink immediately under the 'I accept' button and she clicked 'Accept'").[11] The result is the same in the context of privacy policies. *See, e.g.*, *Silver v. Stripe Inc.*, 2021 WL 3191752, at *4–5 (N.D. Cal. July 28, 2021) (plaintiff gave consent to collection and disclosure of data by agreeing to privacy policy in click-wrap agreement); *see also Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1137 (N.D. Cal. 2015) (by creating an account plaintiff agreed to defendant's privacy policy via click-wrap agreement and thus consented to collection and sharing of personal information).

Here, Johnson provided Amazon.com Services with written consent to use and disclose her PII when she "contracted with Amazon Services to access Amazon Prime Video." CAC ¶ 117. Johnson admits she created an Amazon account, *id.* ¶ 115, requiring that she click a button stating that "[b]y creating an account, you agree to Amazon's Conditions of Use and Privacy Notice" with Conditions of Use and Privacy Notice containing direct hyperlinks to those agreements. *Id.* ¶ 52. Amazon's Privacy Notice provides in bold text that "**[b]y using Amazon Services, you are consenting to the practices described in this Privacy Notice**," which

[11] Under Washington law, which governs the agreement here, this clickwrap agreement is also enforceable. *See, e.g.*, *Doe v. Project Fair Bid Inc.*, 2011 WL 3516073, at *4 (W.D. Wash. Aug. 11, 2011) (Pechman, J.) ("This kind of 'clickwrap' agreement has been upheld in several cases in this circuit and elsewhere."); *Hauenstein v. Softwrap Ltd.*, 2007 WL 2404624, at *2-3, *6 (W.D. Wash. Aug. 17, 2007) (Pechman, J.) (plaintiff "manifested his assent to the License Agreement by 'clicking' the appropriate box").



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

includes all practices related to Amazon's use of a customer's PII and any possible disclosures of the same.[12] RJN Ex. 4. Thus, by creating an account and "contract[ing] with Amazon Services to access Amazon Prime Video," CAC ¶ 117, Johnson provided Amazon.com Services written consent to use and disclose her PII as described in the Privacy Notice.

Further, although Plaintiffs mischaracterize Amazon's terms as "a maze of hyperlinks and fine print," *Id.* ¶ 52, courts routinely find these same and similar clickwrap agreements enforceable. *See, e.g.*, *See Heinz v. Amazon.com, Inc.*, 2023 WL 4466904, at *2 (E.D. Cal. July 11, 2023) ("This court agrees with the findings of other district courts and concludes that the [Amazon.com Conditions of Use customers accept to create accounts] are sufficiently conspicuous and thus enforceable"); *In re Ring LLC Privacy Litig.*, 2021 WL 2621197, at *5 (collecting cases). By creating an account and contracting with Amazon to use Prime Video Services, Johnson provided written consent for Amazon.com Services to use and disclose her PII as detailed in the Privacy Notice. As a result, Johnson's § 1799.3 claim fails.

**C. Plaintiffs Fail to State a Washington CPA Claim.**

In conjunction with their other claims, Plaintiffs assert a CPA claim against both Amazon.com Services and Amazon.com, Inc.[13] "[T]o prevail in a private CPA action . . . a plaintiff must establish five distinct elements: (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780 (1986). Failure to satisfy any one of these elements is "fatal" to a CPA claim. *Id.* at 793. Here, Plaintiffs fail to satisfy at least two elements. *First*, Plaintiffs fail to allege any "unfair or deceptive act or practice" by Amazon.com Services or Amazon.com, Inc.

---

[12] Plaintiffs' claim that "[t]he Privacy Notice does not request consumers' consent to disclose PII" is patently false, given the bolded language in the Privacy Notice. *Compare Johnson* CAC ¶ 61 *with* RJN Ex. 4.

[13] For the purposes of the CPA claim, references to "Amazon" collectively refer to Amazon.com Services and Amazon.com, Inc.



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Second*, Plaintiffs do not allege an injury to their business or property. Instead, they only allege an invasion of privacy, which is a personal injury not cognizable under the CPA.

**1. Plaintiffs Fail to Allege Any "Unfair" or "Deceptive" Acts.**

Whether an "act or practice is 'unfair or deceptive' is a question of law." *Young v. Toyota Motor Sales, U.S.A.*, 196 Wn.2d 310, 317 (2020). "The 'unfair or deceptive act' element can be established in one of three ways: (i) *per se* unfair or deceptive conduct, (ii) an act that has the capacity to deceive a substantial portion of the public, or (iii) an unfair or deceptive act or practice not regulated by statute but in violation of the public interest." *State v. Mandatory Poster Agency Inc.*, 199 Wn. App. 506, 518 (2017). Plaintiffs' allegations do not establish an unfair or deceptive act under any of these methods.

*First*, Plaintiffs do not allege, and the Washington legislature has not declared, that violations of the VPPA constitute a *per se* unfair or deceptive act. So Plaintiffs cannot and do not premise their CPA claim on a *per se* violation. *See Brummett v. Washington's Lottery*, 171 Wn. App. 664, 677 (2012); *see also* CAC ¶¶ 143–154.

*Second*, Plaintiffs have not alleged how Amazon's conduct was deceptive, or otherwise "had the capacity to deceive a substantial portion of the public." *Young*, 196 Wash. 2d at 317. To the contrary, Plaintiffs' complaint alleges Amazon does not conceal information about its data privacy practices, *see* CAC ¶ 49, so Plaintiffs cannot now claim Amazon's alleged "acknowledge[ment] that Amazon Services can and is sharing PII-related video usage history" was in any way deceptive. *See Gray v. Amazon.com, Inc.*, 653 F. Supp. 3d 847, 858–59 (W.D. Wash. 2023) (determining on motion to dismiss that Amazon's data practices were not deceptive because "the applicable policies do not conceal Amazon's use of Alexa-captured voice data for advertising purposes, but instead contemplate that very practice").

*Third*, although Plaintiffs premise their CPA claim on alleged violation of "public policy as it has been established by … the VPPA," CAC ¶ 150, they fail to allege any VPPA claim, *see infra* Section IV.A, which defeats their derivative CPA. Plaintiffs suggest that Amazon's failure to "destroy old records" may form the basis of a CPA claim. *See* CAC ¶ 147. But alleged



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

"unlawful retention" is one step further removed from an unfair act in violation of the public interest, as Congress chose not to create a private right of action under the VPPA to challenge unlawful retention. *See Rodriguez*, 801 F.3d at 1053. And Plaintiffs do not allege that Amazon made any misrepresentations about its destruction of records of their video viewing history. *See* CAC ¶¶ 22, 147. Moreover, while Plaintiffs invoke generic privacy laws to amorphously assert that privacy rights are important in Washington, *id*. ¶ 151, they do not allege Amazon violated *any* of Washington's privacy laws. Lastly, Plaintiffs' allegations that Amazon's actions "are injurious to the public interest," *id*. ¶ 152, merely "parrot the statutory language" and cannot state a CPA claim. *Biers v. Washington State Liquor and Cannabis Bd.*, 2016 WL 3079025, at *12 (W.D. Wash. June 1, 2016) (Robart, J.).

**2. Plaintiffs Fail to Allege an Injury to Their Business or Property.**

Plaintiffs' CPA claim also fails because they do not allege any cognizable injury. The CPA provides a cause of action only to a "person who is injured in his or her business or property." RCW 19.86.090. "[W]hile the injury need not be great, it must be established." *Mason v. Mortg. Am., Inc.*, 114 Wn.2d 842, 854 (1990). Non-economic injuries are not cognizable under the CPA, and Plaintiffs must show some diminution to their financial or property interest. *Panag v. Farmers Ins. Co.*, 166 Wn.2d 27, 57 (2009). Plaintiffs attempt to satisfy this requirement by vaguely alleging they "have suffered damages, including damages *to their property right to protected privacy*." CAC ¶ 153 (emphasis added). This attempt fails.

Because "the concept of privacy by its very nature is inherently personal, not pecuniary," privacy is not a cognizable injury under the CPA. *Gragg v. Orange Cab Co.*, 942 F. Supp. 2d 1111, 1118–19 (W.D. Wash. 2013) ("Plaintiff cites no Washington law that establishes that an invasion of privacy is a cognizable injury under the CPA, and the Court has not found any such authority.") (Lasnik, J.). Indeed, this Court has repeatedly rejected invasion of privacy as a cognizable injury under the CPA. *See id.*; *Wright v. Lyft, Inc.*, 2016 WL 7971290, at *5 (W.D. Wash. Apr. 15, 2016) ("several of Plaintiff's alleged injuries—… the 'invasion of his privacy' — are, at best, personal injuries and not the 'injury to business or property' that the CPA requires.")



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

(Pechman, J.). Plaintiffs thus cannot state that they have suffered an injury to their "property" by claiming an injury to their privacy. Their own Prayer for Relief further underscores Plaintiffs' lack of cognizable injury, seeking no actual damages but only "[n]ominal damages for invasion of privacy." CAC Prayer. Because Plaintiffs fail to allege any injury to their business or property, their CPA claim fails and should be dismissed.

**D. Plaintiffs Should Not Be Given Leave to Amend.**

Plaintiffs cannot cure the fundamental defects in their claims. *See United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) ("Leave to amend is warranted if the deficiencies can be cured with additional allegations that are 'consistent with the challenged pleading' and that do not contradict the allegations in the original complaint.") (citation omitted). Plaintiffs cannot plausibly allege any facts demonstrating the Amazon.com Services violated the VPPA or §1799.3 by disclosing *their* PII to Amazon affiliates or third parties. Plaintiffs cannot plausibly allege that any disclosure that occurred were not incident to the ordinary course of business. Johnson cannot plausibly allege that she did not consent in writing to the disclosure of her PII. And Plaintiffs cannot allege that Amazon.com Services or Amazon.com, Inc.'s conduct was unfair or deceptive or injured their business or property, as required to sustain a CPA claim. As a result, Plaintiffs should not be granted leave to amend their CAC.

## V. CONCLUSION

For the above reasons, this Court should dismiss Plaintiffs' claims with prejudice.

DATED this 24th day of June, 2024.

DAVIS WRIGHT TREMAINE LLP
*Attorneys for Amazon.com, Inc. and Amazon.com Services LLC*

By *s/ John Goldmark*
John Goldmark, WSBA # 40980
Lauren Rainwater, WSBA #43625
Erwin Reschke, *pro hac vice*



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

920 Fifth Avenue, Suite 3300
Seattle, WA 98104
Tel: (206) 622-3150
Email: JohnGoldmark@dwt.com
Email: LaurenRainwater@dwt.com
Email: ErwinReschke@dwt.com

I certify that this memorandum contains 8,101 words, in compliance with the Local Civil Rules.