The Honorable James L. Robart

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| MEREDITH BEAGLE, JORDAN GUERRERO, and SOFAUNA JOHNSON on Behalf of Themselves and All Others Similarly Situated,<br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM, INC. and AMAZON.COM SERVICES LLC.<br><br>Defendants. | No.: 2:24-cv-00316-JLR<br><br>**PLAINTIFFS' OPPOSITION TO AMAZON'S MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT**<br><br>NOTE ON MOTION CALENDAR: August 7, 2024<br><br>ORAL ARGUMENT REQUESTED |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........ 1
STATEMENT OF FACTS ........ 2
A. Amazon Services Provides Video Services, Collects Consumers' PII and Discloses the Consumer Data It Collects to Amazon Affiliates, and Third Parties Without Obtaining Informed Consent and Outside the Ordinary Course of Business. ........ 2
ARGUMENT ........ 4
A. Legal Standards ........ 4
1. Rule 8 requires a short and plain statement of the claim. ........ 4
2. Rule 9 does not establish a particularity pleading standard for conditions of the mind or corporate fraud ........ 5
3. In ruling on a rule 12(b)(6) motion, district courts are generally Limited to the pleadings ........ 5
B. Plaintiffs plausibly allege disclosure under the VPPA and § 1799.3. ........ 6
1. Plaintiffs plausibly allege that Amazon Services collects and discloses PII to affiliates and third parties. ........ 8
2. Defendants attempt to overcome these well-pleaded allegations by subjecting Plaintiffs to a heightened pleading standard. ........ 10
3. Plaintiffs adequately allege disclosure of their PII. ........ 13
4. Safe-harbor exceptions are premature at the pleadings stage. ........ 15
5. The pleadings establish that neither exception applies. ........ 17
a. Plaintiffs allege the affiliate and third-party disclosures were not made in the ordinary course of business. ........ 17
b. Defendants have not met their burden regarding consent. ........ 18
C. Plaintiffs allege Defendants engaged in an unfair act in violation of Washington's Consumer Protection Act. ........ 23
CONCLUSION ........ 26

## TABLE OF AUTHORITIES

**Page(s)**

***Cases***


*Balanzar v. Fid. Brokerage Servs., LLC*, 654 F. Supp. 3d 1075 (S.D. Cal. 2023) ..... 16

*Bandy v. All. for Shared Health, Inc.*, 2022 U.S. Dist. LEXIS 167801 (E.D. Wash. Sept. 16, 2022) ..... 6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..... 4

*Brown v. Google LLC*, 685 F. Supp. 3d 909 (N.D. Cal. Aug. 7, 2023) ..... 23

*Buckley v. Santander Consumer USA, Inc.*, 2018 U.S. Dist. LEXIS 53411 (W.D. Wash. Mar. 29, 2018) ..... 24

*Calhoun v. Google LLC*, 526 F. Supp. 3d 605 (N.D. Cal. 2021) ..... 19

*California Priv. Prot. Agency v. Superior Ct.*, 99 Cal. App. 5th 705 (2024) ..... 21

*Campbell v. Facebook, Inc.*, 77 F. Supp. 3d 836 (N.D. Cal. 2014) ..... 19

*Campos v. Tubi, Inc.*, 2024 U.S. Dist. LEXIS 22247 (N.D. Ill. Feb. 8, 2024) ..... 6, 7, 11, 12, 14

*Czarnionka v. Epoch Times Ass'n, Inc.*, 2022 U.S. Dist. LEXIS 209067 (S.D.N.Y. Nov. 17, 2022) ..... 14

*Daniel v. Cantrell*, 375 F.3d 377 (6th Cir. July 8, 2004) ..... 13

*Davidson v. Sprout Foods, Inc.*, 2024 U.S. App. LEXIS 15777 (9th Cir. June 28, 2024) ..... 5

*Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064 (N.D. Cal. 2023) ..... 16

*Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017) ..... 11, 12

*Erickson v. Pardus*, 551 U.S. 89 (2007) ..... 10

*Fan v. NBA Props. Inc.*, 2024 U.S. Dist. LEXIS 57205 (N.D. Cal. Mar. 26, 2024) ..... 6, 16

*Feldman v. Star Tribune Media Co. LLC*, 2023 U.S. Dist. LEXIS 37416 (D. Minn. 2023) ..... 15, 16

*Frias v. Asset Foreclosure Servs., Inc.*,
181 Wash. 2d 412 (2014) .......... 25

*Guerrero v. Gates*,
442 F.3d 697 (9th Cir. 2006) .......... 4

*Guy v. Convergent Outsourcing, Inc.*,
2023 U.S. Dist. LEXIS 125332 (W.D. Wash. July 20, 2023) .......... 24, 25

*Holy Ghost Revival Ministries v. City of Marysville*,
98 F. Supp. 3d 1153 (W.D. Wash. 2015) .......... 6

*In re Google, Inc. Gmail Litig.*,
2013 U.S. Dist. LEXIS 172784 (N.D. Cal. Sept. 26, 2013) .......... 19

*In re Hulu Privacy Litig.*,
2012 U.S. Dist. LEXIS 112916 (N.D. Cal. Aug. 10, 2012) .......... 4, 7

*In re Hulu Privacy Litig.*,
2014 U.S. Dist. LEXIS 59479 (N.D. Cal. Apr. 28, 2014) .......... 14

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 19

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) .......... 16

*Jackson v. Amazon.com, Inc.*,
65 F.4th 1093 (9th Cir. 2023) .......... 19, 20

*Jackson v. Carey*,
353 F.3d 750 (9th Cir. 2003) .......... 26

*Kaanaana v. Barrett Bus. Servs., Inc.*,
11 Cal. 5th 158 (2021) .......... 21

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .......... 6, 9

*Klem v. Wash. Mut. Bank*,
176 Wash. 2d 771 (2013) .......... 24

*Knutson v. Sirius Radio Inc.*,
771 F.3d 559 (9th Cir. 2014) .......... 19, 20

*Krefting v. Kaye-Smith Enterprises Inc.*,
2023 U.S. Dist. LEXIS 131161 (W.D. Wash. July 28, 2023) .......... 24, 25

*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001) .......... 5

*Lexin v. Superior Court*,
47 Cal.4th 1050 (2010) .......... 21

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*,
416 F.3d 940 (9th Cir. 2005) .......... 5, 9

*Long v. Provide Com., Inc.*,
245 Cal. App. 4th 855 (2016) .......... 20

*Louth v. NFL Enterprises LLC*,
2022 U.S. Dist. LEXIS 163706 (D.R.I. Sept. 12, 2022) .......... 18

*M.K. v. Google LLC*,
2023 U.S. Dist. LEXIS 133602 (N.D. Cal. Aug. 1, 2023) .......... 15, 16

*Markels v. AARP*,
689 F. Supp. 3d 722 (N.D. Cal. 2023) .......... 12

*Matera v. Google Inc.*,
2016 U.S. Dist. LEXIS 130778 (N.D. Cal. Sept. 23, 2016) .......... 16

*Merriman v. Am. Guarantee & Liab. Ins. Co.*,
98 Wash. App. 594 (2017) .......... 24

*Mollett v. Netflix, Inc.*,
795 F.3d 1062 (9th Cir. 2015) .......... 25

*Moore v. Kayport Package Express*,
885 F.2d 531 (9th Cir. 1989) .......... 5

*Moss v. U.S. Secret Serv.*,
572 F.3d 962 (9th Cir. 2009) .......... 14

*Naughton v. Amazon.com, Inc.*,
2022 U.S. Dist. LEXIS 8 (N.D. Ill., Jan. 3, 2022) .......... 7

*Nayab v. Cap. One Bank (USA), N.A.*,
942 F.3d 480 (9th Cir. 2019) .......... 5, 15, 16, 18

*Panag v. Farmers Ins. Co. of Wash.*,
166 Wash. 2d 27 (2009) .......... 23

*Park v. Thompson*,
851 F.3d 910 (9th Cir. 2017) .......... 4

*People v. Tran*,
61 Cal. 4th 1160 (2015) .......... 21

*Rancourt v. Meredith Corp.,*
2024 U.S. Dist. LEXIS 18069 (D. Mass. Feb. 1, 2024) .......... 17

*Rodriguez v. Sony Computer Entertainment America LLC*,
801 F.3d 1045 (9th Cir. 2015) .......... 13, 17, 18

*Roe v. Amgen Inc.*,
2024 U.S. Dist. LEXIS 101754 (C.D. Cal. 2024) .......... 6

*Saunders v. Lloyd's of London*,
113 Wash. 2d 330 (1989) .......... 24

*Thornell v. Seattle Serv. Bureau, Inc.*,
184 Wash.2d 793 (2015) .......... 24

*United States v. Mission Support Alliance, LLC*, 2019 U.S. Dist. LEXIS 107460 (E.D. Wash. June 13, 2019) .... 6, 9

*Veridian Credit Union v. Eddie Bauer, LLC*, 295 F. Supp. 3d 1140 (W.D. Wash. 2017) .... 6, 24

*Walker v. Superior Court*, 47 Cal.3d 112 (1988) .... 21

*Wool v. Tandem Computers, Inc.*, 818 F.2d 1433 (9th Cir. 1987) .... 5

*Wordlaw v. Enter. Leasing Co. of Chicago, LLC*, 2020 U.S. Dist. LEXIS 239230 (N.D. Ill. Dec. 21, 2020) .... 6

***Statutes***

18 U.S.C. § 2710 .... 13, 15

Cal. Civ. Code 1798.140(h) .... 21, 22, 23

RCW 19.86.920 .... 24

***Other Authorities***

1988 Cal. Legis. Serv. 1050 .... 21

RESTATEMENT (SECOND) OF CONTRACTS § 19 (AM. L. INST. 2002) .... 20

***Rules***

Federal Rules of Civil Procedure 12(b) .... 5

Federal Rules of Civil Procedure 8 .... 4

Federal Rules of Civil Procedure 8(a)(2) .... 4

Federal Rules of Civil Procedure 9(b) .... 5



Burns Charest LLP
365 Canal St., Ste. 1170
New Orleans, LA 70130
(504) 799-2845

## PRELIMINARY STATEMENT

Plaintiffs Meredith Beagle ("Beagle"), Jordan Guerrero ("Guerrero"), and Sofauna Johnson ("Johnson" and, together with Beagle and Guerrero, "Plaintiffs") respectfully submit this Memorandum of Law in Opposition to Defendant Amazon's Motion to Dismiss Consolidated Amended Complaint ("Motion" or "Mot."). ECF No. 34.[1]

Plaintiffs' Consolidated Amended Class Action Complaint ("Complaint" or "CAC") alleges that Amazon.com Services LLC ("Amazon Services") systemically and unlawfully discloses consumers' (including Plaintiffs') personal identifiable information ("PII") to Amazon.com Inc. ("Amazon Inc." and, together with Amazon Services, collectively referred to as "Defendants" or "Amazon") and other Amazon affiliates. ECF No. 33 at ¶¶ 18; 45-56; 101, 103; 110, 112; 120-21.[2] The Complaint alleges Amazon Services violated the Video Privacy Protection Act ("VPPA") and California Civil Code § 1799.3 ("§ 1799.3") and that both Defendants violated the Washington Consumer Protection Act ("WCPA") for unfair, or in the alternative, deceptive, business practices. ¶¶ 135-63. The CAC adequately pleads a VPPA, § 1799.3, and WCPA claim. Defendants' arguments in opposition, at most, raise factual disputes (relying on a contrary reading of documents that should not be considered) that cannot be resolved on a motion to dismiss. The Court should deny the Motion as to the VPPA and § 1799.3 claims for the reasons that follow. With respect to the WCPA claim, Plaintiffs respectfully request leave to amend to allege a specific injury.

---

[1] Defendants filed a Request for Judicial Notice ("RJN") concurrently with their Motion. ECF No. 36.

[2] Citations to ¶__ are to the CAC, ECF No. 33.



Burns Charest LLP
365 Canal St., Ste. 1170
New Orleans, LA 70130
(504) 799-2845

## STATEMENT OF FACTS

**A. Amazon Services Provides Video Services, Collects Consumers' PII and Discloses the Consumer Data It Collects to Amazon Affiliates, and Third Parties Without Obtaining Informed Consent and Outside the Ordinary Course of Business.**

Amazon Services operates Amazon Prime Video, which provides subscribers with a wide array of viewable video content. ¶ 73. Defendants do not dispute that Amazon Services is a video tape service provider within the meaning of VPPA, Mot. at 16-17, or that Plaintiffs are consumers within the meaning of the VPPA, ¶ 137. Amazon Services collects substantial PII from its users, including identifying details such as names, addresses, payment information, Prime Video viewing history, and more. ¶¶ 66, 101, 103 (Beagle's data); ¶¶ 110, 112 (Guerrero's data); ¶¶ 120-21 (Johnson's data).

Plaintiffs allege that Amazon Services has engaged in systematic and unauthorized sharing of their consumer data, including PII, with Amazon Inc., other Amazon affiliates, and third parties, without appropriate disclosures. ¶¶ 18, (former Amazon chief information security officer's description of Amazon's data "free-for-all"), 44-56 (discussing Amazon entities' improper access to consumer data). Amazon's privacy-related disclosures are convoluted and accessed through a maze of inter-referential hyperlinks. ¶¶ 48, 71-72. This structure prevents consumers from providing informed consent. Specifically, Amazon Services does not obtain separate and distinct consent for sharing video PII; instead, all privacy-related information is buried in Fine Print[3] related to other matters. ¶¶ 19, 52-64, 77-78, 81-82.

[3] "Fine Print" collectively refers to the following documents: (1) Amazon.com's Conditions of Use ("COU"); (2) Amazon.com's Privacy Notice ("Privacy Notice"); (3) Amazon.com's Internet-Based Ads Policy ("Ad Policy"); (4) the Prime Video Terms of Use ("Prime Terms"); (5) the Prime Terms and Conditions ("Prime T&C"); (6) Amazon's "What Are Nielsen Viewing Measurements?" page; (7) the "Privacy Choices" page; and (8) the "Advertising Privacy and Preferences" page.

There are no opt-out options for intra-Amazon disclosures; consumers cannot opt out of disclosing their PII and video-watching history to Amazon affiliates. ¶¶ 48-49. And while there are some limited opt-out mechanisms for third-party disclosures, they are inadequate. *Id*. If consumers want to opt-out of sharing their PII with third parties, they risk diminished service quality. ¶ 63. Moreover, the process of finding these opt-out options is convoluted and scattered across a maze of hyperlinks and Fine Print. ¶¶ 48, 71-72. For example, when consumers sign up, they are presented with a disclaimer that states: "By creating an account, you agree to Amazon's Conditions of Use and Privacy Notice", with hyperlinks to each of those pages. ¶ 52. Consumers are never required to check a box indicating that they have agreed before proceeding, nor are they required to scroll through the text of these documents. ¶¶ 71-72. Neither the Conditions of Use nor the Privacy Notice contain a request for consent or an opt-out provision. ¶ 55. The third-party opt-out for cross-context behavioral ads is accessed through a hyperlink buried approximately halfway through Amazon's 3,624-word Privacy Notice. ¶ 64.

Once consumers are in the Amazon system, Amazon amasses data profiles for consumers with little regard for protecting their privacy. ¶ 44. Amazon uses similar patterns of misdirection, confusing language, and Fine Print to minimize how it and its affiliates violate consumers' privacy. ¶ 47. The ambiguity of who exactly Amazon considers an affiliate further complicates consent, leaving consumers in the dark about where their data might end up. ¶ 17, n.12. Amazon frequently uses the term "affiliates" in its Fine Print without providing a precise definition. *See, e.g.*, *id.* ("For example, the Privacy Notice describes 'how Amazon.com and its affiliates (collectively 'Amazon') collect and process your personal information,' lumping Amazon Inc. and Amazon Services together for purposes of the Privacy Notice").



Burns Charest LLP
365 Canal St., Ste. 1170
New Orleans, LA 70130
(504) 799-2845

Plaintiffs allege that they did not consent to Defendants' disclosures of their PII, ¶¶ 99, 108, 118, and even Defendants do not dispute that Amazon Services fails to obtain the statutorily required informed written consent under the VPPA to share PII with third parties or its affiliates. Mot. *in globo*.

Amazon Services collects and discloses PII to Amazon Inc. and other Amazon affiliates for myriad purposes, including unauthorized purposes such as audience measurement, marketing, market research, advertising, fraud detection, to offer credit or financial services, and for other data collection and analysis purposes. ¶¶ 6, 66, n.26. Amazon Services also discloses PII to third parties for audience measurement and market research purposes. ¶ 7.

## ARGUMENT

### A. Legal Standards

#### 1. Rule 8 requires a short and plain statement of the claim.

A complaint will generally defeat a motion to dismiss ("MTD") under Federal Rule of Civil Procedure ("Rule") 12 (b)(6) if it alleges a facially plausible claim for relief. Fed. R. Civ. P. 8; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[4] A complaint need only provide "a short and plain statement of the claim" showing entitlement to relief. Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required. *Id.*; 550 U.S. at 555; *In re Hulu Privacy Litig.*, 2012 U.S. Dist. LEXIS 112916, *22 (N.D. Cal. Aug. 10, 2012) (plaintiffs not required to plead evidence to survive MTD). A court must take all material factual allegations as true and "construe them in the light most favorable [to the plaintiff]." *Guerrero v. Gates*, 442 F.3d 697, 703 (9th Cir. 2006). When there are two alternative, plausible explanations, the complaint defeats the MTD. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017). Moreover, factual

[4] Unless otherwise noted, all emphasis is added and internal citations are omitted.

determinations on a MTD are improper. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 950 (9th Cir. 2005).

**2. Rule 9 does not establish a particularity pleading standard for conditions of the mind or corporate fraud.**

Rule 9 establishes a heightened particularity pleading standard for fraud. Fed. R. Civ. P. 9(b). Fraud claims must plead facts supporting the "who, what, when, where, and how" of the misconduct. *Davidson v. Sprout Foods, Inc.*, 2024 U.S. App. LEXIS 15777, *24 (9th Cir. June 28, 2024). However, the particularity standard has two exceptions. First, conditions of the mind (*e.g.*, fraudulent intent) may be alleged generally. Fed. R. Civ. P. 9(b). Second, "facts that are peculiarly within the opposing party's knowledge, and allegations based on information and belief may suffice so long as the allegations are accompanied by a statement of facts upon which the belief is founded." *Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480, 493-94 (9th Cir. 2019); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987), overruled on other grounds *Flood v. Miller*, 35 Fed. Appx. 701, 703 n.3 (9th Cir. 2002) (Rule 9's heightened pleading requirements may be relaxed in cases of corporate fraud because "the plaintiffs cannot be expected to have personal knowledge of the facts constituting the wrongdoing"); *Moore v. Kayport Package Express*, 885 F.2d 531, 540 (9th Cir. 1989) (only "a statement of the facts on which the belief is founded" is required in corporate fraud cases).

**3. In ruling on a rule 12(b)(6) motion, district courts are generally Limited to the pleadings.**

Two narrow exceptions—judicial notice and incorporation-by-reference—allow a court to consider extraneous documents. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001); *see also* Fed. R. Civ. P. 12(b). However, as explained in detail in Plaintiffs' Response to

Defendants' RJN filed concurrently herewith, judicial notice of a private corporate website or a party's website are generally improper. *Veridian Credit Union v. Eddie Bauer, LLC*, 295 F. Supp. 3d 1140, 1147, n.3 (W.D. Wash. 2017) (Robart, J.); *Roe v. Amgen Inc.*, No. 2:23-cv-07448-MCS-SSc, 2024 U.S. Dist. LEXIS 101754, at *5, (C.D. Cal. 2024); *Holy Ghost Revival Ministries v. City of Marysville*, 98 F. Supp. 3d 1153, 1162-63 (W.D. Wash. 2015) (Robart, J.). Incorporation-by-reference can only apply if the complaint refers extensively to the document or the document forms the basis of the claim. *Id.* It is never proper to "assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well[-]pleaded complaint." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 994, 1003 (9th Cir. 2018); *United States v. Mission Support Alliance, LLC*, 2019 U.S. Dist. LEXIS 107460, at *9 (E.D. Wash. June 13, 2019).

**B. Plaintiffs plausibly allege disclosure under the VPPA and § 1799.3.**

Plaintiffs bring three primary claims (violations of VPPA and § 1799.3 by Amazon Services and violations of the WCPA for unfair practices against both Defendants, collectively the "Primary Claims") and one alternative claim (violation of WCPA for deceptive practices against both Defendants). The Primary Claims are all subject to the lenient Rule 8 pleading standard. *Campos v. Tubi, Inc.*, 2024 U.S. Dist. LEXIS 22247, at *23-24 (N.D. Ill. Feb. 8, 2024) (applying Rule 8 to VPPA); *Bandy v. All. for Shared Health, Inc.*, 2022 U.S. Dist. LEXIS 167801, *15-18 (E.D. Wash. Sept. 16, 2022) (denying MTD unfair business practices claim in violation of WCPA); *Fan v. NBA Props. Inc.*, 2024 U.S. Dist. LEXIS 57205, *4-5, 10 (N.D. Cal. Mar. 26, 2024) (treating the VPPA and § 1799.3 together, noting that the plausibility pleading standard applies to VPPA, and denying MTD as to those claims); *Wordlaw v. Enter. Leasing Co. of Chicago, LLC*, 2020 U.S. Dist. LEXIS 239230 (N.D. Ill. Dec. 21, 2020), at *11-12 (denying

MTD where plaintiff alleged that the defendant collected and shared private information with subsidiaries and third parties but did not allege any specifics relative to the alleged disclosure). Specifically, courts have made clear that VPPA claims are "not subject to [Rule 9's] heightened standard for allegations sounding in fraud" and that plaintiffs "do[] not need to plead the circumstances of every alleged disclosure with particularity." *Campos*, 2024 U.S. Dist. LEXIS 22247, at *8. "This is especially so given the informational asymmetry at play; [Defendants] would not, of course, have made [Plaintiffs] privy to any potential disclosures." *Id.*

Courts routinely hold that allegations that a defendant impermissibly collects protected data and discloses that data satisfies the pleading standard; allegations regarding when, where, or to whom the disclosure occurred are not required. *Naughton v. Amazon.com, Inc.*, 2022 U.S. Dist. LEXIS 8, at *9-10 (N.D. Ill., Jan. 3, 2022) (denying MTD for violations of biometric privacy law and rejecting Amazon's argument that plaintiff needed to allege when, where, and to whom disclosure occurred because that argument "[sought] to impose a heightened pleading standard where there is none"); *Hulu*, 2012 U.S. Dist. LEXIS 112916, at *20-22 (plaintiffs satisfied Rule 8 by alleging transmission of PII to five entities without consent, despite not providing specifics about the unauthorized tracking for most entities). Here, just as in *Naughton*, Defendants implicitly ask this Court to "impose a heightened pleading standard [on Plaintiffs] where there is none." 2022 U.S. Dist. LEXIS 8, at *9-10.

Specifically, Defendants assert that Plaintiffs have not sufficiently alleged that disclosure occurred because they did not show that the recipients accessed the disclosed information, that Plaintiffs' allegations of providing access to PII are insufficient to prove disclosure, and that Plaintiffs did not specifically link the disclosure allegations to themselves. Mot. at 13, 15-17, 19. These arguments fail for three reasons. First, the VPPA and § 1799.3 restrict what a video

provider can disclose; they do not require a showing of what the recipient of that information does with the information. Second, the text and history of the relevant statutes show that providing access to protected information amounts to disclosure. Third, Plaintiffs have plausibly pleaded specific facts showing that Amazon Services disclosed their PII.

**1. Plaintiffs plausibly allege that Amazon Services collects and discloses PII to affiliates and third parties.**

Plaintiffs allege that Defendants collect a host of personal information from consumers, including name, address, and phone numbers, payment information, age, location information, and IP address. ¶¶ 66, 101, 110, 120. Plaintiffs specifically allege that Amazon Services disclosed each Plaintiffs' PII to Amazon Inc. ¶¶ 101, 103, 110, 112, 120-21. In other words, Plaintiffs allegations exceed the lenient Rule 8 standard by pleading facts about "how" that disclosure occurred (*i.e.*, through direct access to a database). These allegations alone satisfy Plaintiffs' pleading requirement regarding affiliate disclosure.

Plaintiffs also allege that Amazon Services collects PII and systemically shares all PII with Amazon, Inc. generally. ¶¶ 18, 45-56. The reasonable inference drawn from these factual allegations is that Amazon Services improperly discloses *all* data it collects (including PII) from *all* consumers (including Plaintiffs) with Amazon, Inc. ¶¶ 135-42 (VPPA); ¶¶ 143-54 (unfair or in the alternative deceptive practices under the WCPA); ¶¶ 155-63 (§ 1799.3).

Finally, Plaintiffs allege that Amazon Services discloses this information—along with video information—to affiliates and third parties based on Amazon's own Fine Print. ¶ 49 ("If you choose not to be shown interest-based ads above, [Amazon] won't: Use information about your use of our store and services to deliver ads to you **off of Amazon's own properties**" [but, by implication, *will* continue to target ads on Amazon's own properties]), ¶ 76 ("[w]hile viewing

certain Channels and Sports and Live content, Amazon **may** provide information about your viewing behavior to third parties for purposes of audience measurement and market research"); ¶ 80 ("[w]e **may** provide certain information regarding your subscription status and use of Digital Content, including viewing history, to video content providers, such as third parties offering subscription services through Prime Video Channels"); ¶¶ 90-93 ("Privacy Choices page" states that even if a consumer opts-out of cross-context behavioral adds, Amazon will "continue to show you ads based on your activity on Amazon's sites and apps and those of our co-branded subsidiaries"), ¶ 140 ("Amazon Services also discloses this information to third parties both under the guise of 'audience measurement' and 'cross-context behavioral ads.'"). Through this Fine Print, Defendants admit, or at least heavily imply, that both intra-affiliate and third-party disclosures are occurring and that, at least as to intra-affiliate disclosures, there is nothing consumers can do to prevent it. Defendants' arguments to the contrary rely on cherry-picked statements from the Fine Print suggesting that Amazon Services is not involved in third-party sharing of PII. Mot. at 9-11 (citing Amazon Privacy Notice and Internet-Based Ads policy). Defendants do not, however, reference the Privacy Choices page or the Advertising Privacy and Preferences page in its Motion, nor do they request judicial notice of these documents. This Court should not take the facts pulled from the Fine Print (and referenced in its Motion) as true, because doing so would impermissibly "allow defendants to present their own version of the facts at the pleading stage and accept those facts as true" while ignoring the well-pled allegations to the contrary in Plaintiffs' Complaint. *Khoja*, 899 F.3d at 998-99; *United States v. Mission Support Alliance, LLC*, 2019 U.S. Dist. LEXIS 107460, at *9 (same). This Court should reject Defendants' request to make factual determinations based on these competing facts at the MTD stage. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 950.

**2. Defendants attempt to overcome these well-pleaded allegations by subjecting Plaintiffs to a heightened pleading standard.**

Defendants' attempt to subject Plaintiffs to some heightened pleading standard is not only erroneous, but also illogical. For example, Defendants argue that Plaintiffs' third-party claims should be dismissed because Plaintiffs "fail[ed] to provide any allegations that *their* specific information was disclosed." Mot. at 20. However, Plaintiffs allege that Amazon Services wrongfully discloses consumers' PII to its affiliates and other third parties. ¶¶ 138-40. More specific facts are not necessary; the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). The cherry-picked and non-binding case law Defendants cite in support of their argument does not (and cannot) contradict this long-established pleading standard.[5]

Moreover, Defendants' sweeping statement that "courts routinely reject VPPA and similar claims where, as here, plaintiff fails to identify to whom an alleged disclosure was made" is also baseless. Mot. at 20. First, Plaintiffs identified a third party that Amazon Services discloses their PII to, as well as identifying particular third-party services at least one Plaintiff, Beagle, has linked to her account. ¶ 77 ( hyperlink identifies Nielsen as a third party and states that information about consumers' viewing behavior may be shared with Nielsen when

[5] For example, *M.K. by & through Kirksey v. Google LLC* presented an extreme situation where the complaint lacked a factual foundation and instead made allegations "in formulaic language that largely parrot[ed] the language of the VPPA." 2023 U.S. Dist. LEXIS 51895 (N.D. Cal. Mar. 27, 2023) at *7 (explaining that "the complaint d[id] not allege any facts that M.K. watched videos, or the circumstances under which that occurred" and "[t]here are no facts alleged about the platform, application, or website M.K. reportedly used to watch videos, or any facts from which the Court plausibly could infer that M.K. is a 'consumer' and Google is a 'video tape service provider' within the meaning of the VPPA"). Similarly, *Gamez v. VF Corp.* dealt with a barebones complaint under California's "Shine the Light Law" where the plaintiff "ma[de] a conclusory allegation" without detail. 2018 U.S. Dist. LEXIS, at *8 (C.D. Cal. Nov. 21, 2018). Further, *Mendoza v. Microsoft Inc.,* 2014 U.S. Dist. LEXIS 127736 (W.D. Wash. Sept. 11, 2014) is a case about standing, not sufficient pleading.

consumers watch *inter alia*, Paramount+); ¶ 97 (Beagle registered for Paramount+ through Amazon).

Second, Defendants' cases do not support their argument. Both *Rodriguez v. Sony Computer Entertainment America LLC* and *Gamez v. VF Corp.* dealt with complaints that contained *several* deficiencies. The identities of the third parties were only one example of several details the complaints could have included but lacked.[6] Moreover, the two other cases Defendants cite are out-of-circuit breach of contract cases that have no bearing on the facts of this case.[7] Third, Defendants' argument is illogical—Plaintiffs are not denied the right to litigate their privacy law claims simply because they do not identify the party a disclosure was made to, especially when video providers can and do withhold such information. *See Campos*, 2024 U.S. Dist. LEXIS 22247, at *9.

Finally, Defendants incorrectly argue that the information disclosed by Amazon Services to third parties does not constitute PII. "The VPPA defines 'personally identifiable information' to include[] information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 984 (9th Cir. 2017). Plaintiffs allege that Amazon Services collects a host of consumers' personal information in addition to information about the content those consumers viewed.[8]

---

[6] *See Rodriguez,* 2012 U.S. Dist. LEXIS 55959, at *3 (N.D. Cal. Apr. 20, 2012) (complaint even "fail[ed] to state that a disclosure has affirmatively taken place"); *Gamez*, 2018 U.S. Dist. LEXIS, at *6.

[7] *FT Glob. Cap., Inc. v. Future Fintech Grp., Inc.*, 2021 U.S. Dist. LEXIS 217395, at *9-10 (N.D. Ga. Nov. 10, 2021); *Springboard Media, LLC v. Augusta Hitech Soft Sols., LLC*, 2022 U.S. Dist. LEXIS 178311, at *3-5 (S.D. Fla. Sept. 30, 2022).

[8] *See, e.g.*, ¶ 66, n.24 ("The Privacy Notice declares that Amazon entities 'collect your personal information'" including, for example, "**identifying information such as [consumers'] name, address, and phone numbers; payment information; age; location information; IP address**; . . . ."); ¶ 66, n.25 (explaining Amazon entities automatically collect data such as information about consumers' interaction with content, including "the **internet protocol (IP) address** . . . ; login, **email address**, and password; **location** of the consumer's device or computer . . . .") ¶¶ 101, 110 ("Amazon Services collected the content viewed . . . along with the name, address, email address, credit card information, and other identifying information for [Plaintiff]"); ¶ 120 (similar allegation); ¶ 139 ("This [gathered and shared] information includes 'content interaction information, such as content downloads, streams, and playback details, including duration and number of simultaneous streams and

Plaintiffs also allege that "Amazon Services gathers and shares consumers' PII with Amazon Inc. and other affiliates" and "Amazon Services *also discloses this information to third parties*." ¶¶ 139-40. Thus, Plaintiffs plausibly plead that Amazon Services discloses information that "readily permit[s] an ordinary person to identify a specific individual's video-watching behavior." *See Eichenberger*, 876 F.3d at 985; *see also Campos*, 2024 U.S. Dist. LEXIS 22247, at *28 ("That [Defendant] knowingly disclosed the relevant combination of information to its advertising partners, in contravention of the VPPA, is a plausible inference based on the Privacy Policy, in tandem with the other [alleged] facts . . . that the Court must take as true.").

Defendants' Fine Print does not refute the notion that Amazon Services shares PII with third parties, as its carefully crafted language makes clear. Amazon's Privacy Notice states that it "never share[s] [with advertisers] your name or other information that *directly* identifies you," Mot. at 23-24 (emphasis added), while the Prime Video Terms provide that Amazon Services will provide information to third parties "in a manner that is not identifiable to you," Mot. at 24. Importantly, this language does not state that Amazon Services never shares information *that can be used* to identify consumers, and thus does not eliminate the possibility that Amazon Services shares consumer information that it knows third parties can use to identify specific users. *See Eichenberger*, 876 F.3d at 984 ("[T]he term 'personally identifiable information' covers some information that is 'capable of' identifying a person, as well as information that, standing alone, identifies a person."); *Markels v. AARP*, 689 F. Supp. 3d 722, 728 (N.D. Cal. 2023) ("though the random string of numbers making up a Facebook ID would not identify someone, that ID links to a Profile which could"). Moreover, Nielsen's digital measurement states that Nielsen "**generally** do[es] not (and cannot) identify, or attempt to identify, the

downloads, and network details for streaming and download quality, including information about [consumers'] internet service provider.'").

individuals about whom we collect content measurement data." ¶ 79. Again, this choice language does not foreclose the possibility that Amazon Services shares information that can be used to identify consumers; if anything, it implies that the totality of the information *can* be used to identify consumers.

**3. Plaintiffs adequately allege disclosure of their PII.**

Despite Plaintiffs adequately alleging impermissible data disclosures, Defendants argue that Plaintiffs' allegations that Amazon Services provided Amazon Inc. with "access" to the protected information are insufficient. Mot. at 16, 18. But the VPPA and § 1799.3 restrict what a video provider can disclose; they do not require a showing of what the recipient of that information does with the information. *Compare* 18 U.S.C. § 2710(b)(1) (knowing disclosure triggers liability) *with* Mot. at 16. Defendants' argument contradicts the language of the statute, which focuses on whether *video tape service providers disclose PII*, not on who the recipients of the PII are or what, if anything, they do with the data they receive. 18 U.S.C. § 2710(b)(1); *Daniel v. Cantrell*, 375 F.3d 377, 379 (6th Cir. July 8, 2004) ("only a video tape service provider (VTSP) can be in violation of § 2710(b)"); *see also Rodriguez v. Sony Computer Entertainment America LLC*, 801 F.3d 1045, 1050 (9th Cir. 2015) ("the more plausible interpretation [of VPPA's private right of action provision] is that it is limited to enforcing the prohibition of disclosure"). Plaintiffs' claims relate to Amazon Services' disclosures, not Amazon Inc.'s disclosure *or access*. Defendants cite no law supporting its contention that Plaintiffs must allege what Amazon.com, Inc. does with the data. *See* Mot. at 18.

Defendants' lack of authority is unsurprising because exposure of protected information constitutes a disclosure. Neither the text of the statutes nor their legislative history support Defendants' argument that Plaintiffs fail to plead actual disclosure. Although "disclosure" is not

defined under the VPPA or §1799.3, courts have consistently held that exposing information to a third party is disclosure. *See In re Hulu Privacy Litig.*, 2014 U.S. Dist. LEXIS 59479, at *47 (N.D. Cal. Apr. 28, 2014) ("Throwing Judge Bork's video watch list in the recycle bin is not a disclosure. Throwing it in the bin knowing that the Washington Post searches your bin every evening for intelligence about local luminaries might be."); *Czarnionka v. Epoch Times Ass'n, Inc.*, 2022 U.S. Dist. LEXIS 209067, at *9-10 (S.D.N.Y. Nov. 17, 2022) ("By installing the Pixel, Defendant opened a digital door and invited Facebook to enter that door and extract information from within. . . . Defendant's installation of the Pixel exposed its subscribers' information to Facebook. This is sufficient to constitute 'disclosure' under the VPPA.").

Finally, Defendants' argument that Plaintiffs cannot allege disclosure because "the terms of Amazon's agreement all state that any alleged disclosure of consumer information is a *possibility*, not an actuality" should be rejected. Mot. at 21. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). That Defendants' policies state that Amazon "may" (as opposed to "does") disclose consumers' information is of no consequence where, as here, these Fine Print disclosures—together with the other facts Plaintiffs allege—lead to the inference that the data is actually being disclosed. *See Campos*, 2024 U.S. Dist. LEXIS 22247, at *29-30. Defendants' proposed standard would create the absurd incentive for video providers to use permissive language in their policies to put consumers on notice of disclosure while simultaneously shielding themselves from consumers' allegations that those disclosures are actually made.

### 4. Safe-harbor exceptions are premature at the pleadings stage.

A plaintiff need not negate affirmative defenses on the pleadings. *Nayab,* 942 F.3d at, 494-95 ("The burden of proving justification or exemption under a special exception to the prohibitions of a statute generally rests on one who claims its benefits . . . . The plaintiff need not negate the exception to the statute. If the defendant wishes to rely upon the proviso, the burden is upon it to bring itself within the exception[,]" especially where the exceptions and prohibitions are set forth separately.). Consent and whether data is used for the ordinary course of business are defenses to privacy laws like the VPPA. *M.K. v. Google LLC*, 2023 U.S. Dist. LEXIS 133602, at *17, n.4 (N.D. Cal. Aug. 1, 2023); *Feldman v. Star Tribune Media Co. LLC*, 2023 U.S. Dist. LEXIS 37416, *34-35 (D. Minn. 2023).

The VPPA provides a list of six safe harbor exceptions that permit disclosure of PII, including an ordinary course of business exception. 18 U.S.C. § 2710 (b)(2)(A-F); 18 U.S.C. § 2710(b)(2)(E) (ordinary course of business). It does not include an exception for intra-corporate disclosures. 18 U.S.C. § 2710. The VPPA separately sets forth the prohibited conduct and exceptions to it. 18 U.S.C. § 2710(b)(1); 18 U.S.C. § 2710(b)(2). The VPPA narrowly defines the ordinary course of business to include only debt collection activities, order fulfillment, request processing, and transfer of ownership. 18 U.S.C. § 2710(a)(2). Under §1799.3, persons providing video recording sales or rental services are prohibited from disclosing personal information or contents of video records to any person other than the individual who is the subject of the record without first obtaining that individual's written consent.

Defendants contend Plaintiffs' affiliate disclosure claims are foreclosed by the ordinary course of business exception. Mot. at 15. This is not so. Relatedly, they argue that intra-

corporate disclosures are *per se* permissible under VPPA because it is part of the ordinary course of business. *Id*. at 17-18. Defendants also allege that Johnson's § 1799.3 claim fails because she provided written consent. *Id*. at 25-27. But the ordinary course of business and consent exceptions are procedurally premature and should instead be assessed after discovery has provided a more developed factual record. *Nayab*, 942 F.3d at 494-95; *M.K.*, 2023 U.S. Dist. LEXIS 133602, at *17, n.4 (plaintiff is not required to foreclose the ordinary course of business defense in his complaint); *Feldman*, 2023 U.S. Dist. LEXIS 37416, *34-35 (concluding that it was "[b]etter to leave [consideration of affirmative defenses like VPPA consent/safe-harbor] to be addressed, if at all, on a sufficiently developed factual record"); *see also Matera v. Google Inc.*, 2016 U.S. Dist. LEXIS 130778, at *51 (N.D. Cal. Sept. 23, 2016) ("it is [Amazon's] burden to prove consent."). Neither exception is part of Plaintiffs' *prima facie* claim, but are instead akin to affirmative defenses. For example, courts apply the reasonable person standard to determine consent. *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1028 (N.D. Cal. 2014). But whether "reasonable consumers" would understand that they were consenting to the disclosure of their PII "is a question that should be resolved on a fuller factual record." *Fan*, 2024 U.S. Dist. LEXIS, at *8; *see also Balanzar v. Fid. Brokerage Servs., LLC*, 654 F. Supp. 3d 1075, 1081 (S.D. Cal. 2023) (allegations plaintiff "did not give consent—written or otherwise—to Defendant to collect voiceprints" sufficient at the pleading stage); *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1078 (N.D. Cal. 2023) (determination of whether actual consent was given depends on a variety of facts). As such, assessing these exceptions at this stage would impermissibly shift Defendants' burden of proof to Plaintiffs' burden to plead.

### 5. The pleadings establish that neither exception applies.

Even if the court could consider these exceptions at this stage (it cannot), neither the VPPA's ordinary course of business exception nor §1799.3's consent exception apply.

#### a. Plaintiffs allege the affiliate and third-party disclosures were not made in the ordinary course of business.

Defendants attempt to discredit Plaintiffs' allegations of Amazon Services' disclosures to its affiliates by arguing that "intra-corporate disclosures are not unauthorized disclosures under the [VPPA]." *Rodriguez*, 801 F.3d at 1054. But the "intra-corporate disclosures" in *Rodriguez* were deemed permissible because they fell within the ordinary course of business exception – namely, the "order fulfillment" or "request processing" categories. *Id.* Amazon Services' disclosures to its affiliates to communicate about promotional offers, to assess and manage credit risks, and for targeted ads do not fall within any of the categories defined in § 2710(a)(2).[9]

First, Defendants argue that using consumer information to give promotional offers to its customers is incident to both the order fulfillment function and request processing function. But "to the extent the PII disclosure is in furtherance of an objective beyond the general upkeep of the operation, the ordinary course of business exception cannot apply." *Rancourt v. Meredith Corp.,* 2024 U.S. Dist. LEXIS 18069, at *45 (D. Mass. Feb. 1, 2024). Amazon's use of consumers' PII for promotional offers is no doubt in furtherance of its aim to drive revenue. *Id.* ("[Defendant]'s model of deriving revenue from targeted advertising goes beyond the management and operations of the business to . . . a purely pecuniary end."). Second, contrary

[9]Defendants conveniently change the wording of Plaintiffs' allegations to serve their arguments. Plaintiffs allege that Amazon uses personal information "to communicate about promotional offers," "to assess and manage credit risks," and "for targeted ads." ¶ 69. Defendants cite these allegations as "*providing customer recommendations*, *advertising*, and *fraud prevention*/credit risks." Mot. at 18 (emphasis added to highlight difference). Importantly, Plaintiffs did not limit their allegations to these three types of disclosures. ¶ 69.

to Defendants' argument, using consumers' PII to manage credit risks is not akin to cyber-security. Third, Defendants do not dispute that using PII for targeted ads does not fall into the ordinary course of business exception. *See*, *e.g.*, *Id.*; *Louth v. NFL Enterprises LLC*, 2022 U.S. Dist. LEXIS 163706, at *10-11 (D.R.I. Sept. 12, 2022) (disclosing PII to "increase advertising revenue" does not fall within exception).

Moreover, when a plaintiff alleges facts that give rise to a reasonable inference that a defendant obtained private information for an unauthorized purpose, the plaintiff has stated a claim for relief even if the complaint is silent regarding whether the purpose of the data transfer was proper. *See Nayab,* 942 F.3d at 487, 499 (reversing the district court's dismissal for failure to state a claim under the Fair Credit Reporting Act when the plaintiff did not allege that her credit report was obtained for an improper purpose, reasoning that it would be premature to dismiss a complaint on purpose grounds prior to discovery in light of Rule 8's "liberal pleading principles"). And although Defendants argue that intra-corporate disclosures are per se admissible, the reality is that, based on the plain language of the VPPA—which does not carve out a safe harbor exception for intra-corporate disclosures—it is the *purpose* of the disclosure that matters when determining whether disclosures fall within the ordinary course of business exception. *Rodriguez*, 801 F.3d 1045 (disclosure to an affiliate for order fulfillment or request processing was permissible because order fulfillment and request processing are purposes that fall within the ordinary course of business exception).

**b. Defendants have not met their burden regarding consent.**

Johnson alleges that she did not consent to the disclosure of her PII to Amazon Inc., or other Amazon affiliates, or unrelated third parties. ¶ 118. Defendants support their position by impermissibly relying on the Fine Print, which is not proper for judicial notice or incorporation-

by-reference. *See* Response to RJN filed concurrently herewith. Defendants argue this Fine Print was "publicly available" at various times between May 11, 2021, and October 19, 2023. *See* Declaration of John Goldmark ("Goldmark Decl."), ECF No. 35. But, as alleged in the Complaint, Johnson created her Amazon account "in or around 2017." ¶ 115. Defendants have submitted no evidence that Plaintiff agreed to any terms that post-date creation of her account in 2017. Accordingly, because Defendants have not established that Plaintiff agreed to the terms on which it relies, Defendants cannot establish Plaintiff consented to Amazon's terms. *See Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1099 (9th Cir. 2023) (denying enforcement of agreement when "Amazon did not … make any showing that Jackson received [] notice" of terms); *see also Knutson v. Sirius Radio Inc.*, 771 F.3d 559, 566 (9th Cir. 2014) ("Nothing in the record, however, indicates that Sirius XM's offer was clearly and effectively communicated to Knutson . . .").

Even if this Court were to consider the Fine Print, the consent argument fails because "consent must be actual." *In re Google, Inc. Gmail Litig.*, 2013 U.S. Dist. LEXIS 172784, at *47 (N.D. Cal. Sept. 26, 2013). For actual consent, the disclosures must "explicitly notify" users of the practice at issue. *Id.* at *13; *see also Campbell v. Facebook, Inc.*, 77 F. Supp. 3d 836, 847–48 (N.D. Cal. 2014) (for a finding of consent, the disclosures must have given users notice of the "specific practice" at issue). "The disclosures must have only one plausible interpretation for a finding of consent." *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 620 (N.D. Cal. 2021); *see also In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 793 (N.D. Cal. 2022) ("[I]n order to be effective, the consent must be to the particular conduct of the actor, or to substantially the same conduct." (cleaned up)).

"Under California law and generally applicable principles of contract law, the burden is on Amazon as the party seeking [enforcement of the contract] to show that it provided notice . . . and that there was mutual assent to the contractual agreement." *Jackson*, 65 F.4th at 1099. Mutual assent requires, at a minimum, that the party relying on the contractual provision establish that the other party had notice and gave some indication of assent. *See* RESTATEMENT (SECOND) OF CONTRACTS § 19 (AM. L. INST. 2002) ("The conduct of a party is not effective as a manifestation of his assent unless he intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents."); *Long v. Provide Com., Inc.*, 245 Cal. App. 4th 855 (2016). Under California law, "an offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious." *Long*, 200 Cal. Rptr. 3d at 122. Courts must evaluate "whether the outward manifestations of consent would lead a reasonable person to believe the offeree has assented[.]" *Knutson*, 771 F.3d at 565.

Here, the Court should look at the definition of consent found in California Consumer Privacy Practices Act, Cal. Civ. Code 1798 *et seq.* ( "CCPA") under the doctrine of *in pari materia*. The CCPA is part of the statutory regime governing the dissemination of personal information, and defines consent as:

> any freely given, specific, informed, and unambiguous indication of the consumer's wishes by which the consumer . . . including by a statement or by a clear affirmative action, signifies agreement to the processing of personal information relating to the consumer for a narrowly defined particular purpose. Acceptance of a general or broad



Burns Charest LLP
365 Canal St., Ste. 1170
New Orleans, LA 70130
(504) 799-2845

> terms of use, or similar document, that contains descriptions of personal information processing along with other, unrelated information, does not constitute consent.

Cal. Civ. Code 1798.140(h).

Under the doctrine of *in pari materia*, the Court may read the CCPA and §1799.3 together. "It is an established rule of statutory construction that similar statutes should be construed in light of one another . . . and that when statutes are *in pari materia* similar phrases appearing in each should be given like meanings." *People v. Tran*, 61 Cal. 4th 1160, 1167-68 (2015). "Statutes are considered to be *in pari materia* when they relate to the same person or thing, or class of persons or things, or have the same purpose or object." *Kaanaana v. Barrett Bus. Servs., Inc.*, 11 Cal. 5th 158, 175 (2021). Such statutes should "be construed together so that all parts of the statutory scheme are given effect." *Lexin v. Superior Court*, 47 Cal.4th 1050, 1090-91 (2010). Thus, "language appearing in separate provisions dealing with the same subject matter should be accorded the same interpretation." *Walker v. Superior Court*, 47 Cal.3d 112, 132, 253 (1988).

Here, the CCPA and §1799.3 are *in pari materia* because their purpose is to "safeguard the informational privacy of Californians." *California Priv. Prot. Agency v. Superior Ct.*, 99 Cal. App. 5th 705, 712 (2024); *see also* 1988 Cal. Legis. Serv. 1050 ("Existing law does not generally restrict the disclosure by persons providing video cassette sales or rental services of records prepared or maintained by those persons, although the California Constitution specifies privacy as one of the inalienable rights of all people in the state.").

The CCPA's definition precludes a finding that Defendants obtained consent to disclose Johnson's video rental records. As defined "[a]cceptance of a general or broad terms of use, or similar document, that contains descriptions of personal information processing along with other,

unrelated information, ***does not constitute consent***." Cal. Civ. Code 1798.140(h). Here, all of the terms that Defendants rely on to establish consent are part of its broader policies. For example, the Privacy Notice includes unrelated information, such as information regarding whether "children [are] allowed to use Amazon" and Amazon's participation "in the EU-US Data Privacy Framework," as well as generic "Related Practices and Information." *See* Goldmark Decl., Ex. 4, ECF 35-4. Likewise, the Prime Terms of Service include terms for "Cancellation," "Shipping," and "Fees," *see id.*, Ex. 3, ECF No. 35-3, and the Prime Video Terms, contain information relating to "Compatible Devices," "Geographic Variability," and "Limitation[s] of liability" among other things. *See id.*, Ex. 2, ECF No. 35-2.

Moreover, the terms of the Privacy Notice are so broad it effectively renders them meaningless. The Privacy Notice is not drafted in a manner that informs consumers that their video rental rights are being disclosed for "a ***narrowly*** defined particular purpose." Cal. Civ. Code 1798.140(h). Rather, the Privacy Notice generically states that Amazon collects personal information, which may include "information you provide" and "certain types of information about your use of Amazon Services[.]" *See* Goldmark Decl., Ex. 4, ECF 35-4. Further, to the extent Amazon states it discloses consumers' information, the categories are so broad they could cover any information Amazon possesses. For example, under Transactions Involving Third Parties, the notice states:

> We make available to you services, products, applications, or skills provided by third parties for use on or through Amazon Services. For example, you can order products from third parties through our stores, download applications from third-party application providers from our App Store, and enable third-party skills through our Alexa services. We also offer services or sell product lines jointly with third-party businesses, such as

> co-branded credit cards. You can tell when a third party is involved in your transactions, and we share customers' personal information related to those transactions with that third party. You can tell when a third party is involved in your transactions, and we share customers' personal information related to those transactions with that third party.

*Id.* at 2. This provision does not provide a narrowly defined purpose for which information would be shared with third parties. It merely states that Defendants may provide those services. *Id.* Similarly, the "Third-Party Service Providers" section explains that Defendants "employ other companies and individuals to perform functions on our behalf" and provides a generic, partial list of the tasks these providers engage in, without identifying who the third parties or what all the services are so that, at most, this disclaimer notifies you that some unknown individual may provide some unknown service to Amazon. *Id.* Such generic descriptors hardly detail "narrowly defined particular purpose(s)" for the disclosure of information. Cal. Civ. Code 1798.104(h); *see also Brown v. Google LLC*, 685 F. Supp. 3d 909, 926 (N.D. Cal. Aug. 7, 2023) ("For consent to be actual, the disclosures must 'explicitly notify' users of the practice at issue."). Indeed, Johnson found these terms vague and ambiguous and did not understand these provisions as requesting her consent to disclose her video rental records. Declaration of Sofauna Johnson, ¶¶ 4-5; ¶ 82 (stating vagueness of disclosures).

### C. Plaintiffs allege Defendants engaged in an unfair act in violation of Washington's Consumer Protection Act.

"To prevail in a private [W]CPA claim, the plaintiff must prove (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation." *Panag v. Farmers Ins. Co. of Wash.*, 166 Wash. 2d 27, 37 (2009). "Because the [WCPA] does not define 'unfair' or 'deceptive,' [the

Washington Supreme Court] has allowed the definitions to evolve through a gradual process of judicial inclusion and exclusion." *Saunders v. Lloyd's of London*, 113 Wash. 2d 330, 344 (1989). Either an unfair or a deceptive act can be the basis for a WCPA claim. *Klem v. Wash. Mut. Bank*, 176 Wash. 2d 771, 787 (2013). "An unfair act is established by evidence that it (1) causes or is likely to cause substantial injury, which (2) consumers cannot avoid, and (3) is not 'outweighed by countervailing benefits.'" *Merriman v. Am. Guarantee & Liab. Ins. Co.*, 98 Wash. App. 594, 628 (2017). The WCPA "shall be liberally construed [so] that its beneficial purposes may be served." RCW 19.86.920; *see also Thornell v. Seattle Serv. Bureau, Inc.*, 184 Wash.2d 793, 794 (2015) ("The language of the [W]CPA evinces a broad, rather than narrow, lens through which we interpret the statute.").

Privacy violations may constitute an unfair act under the WCPA. *See Buckley v. Santander Consumer USA, Inc.*, 2018 U.S. Dist. LEXIS 53411, at *8 (W.D. Wash. Mar. 29, 2018) ("By alleging that Santander deliberately disclosed her information to an unauthorized third party, Buckley has outlined a theory" under the WCPA); *Krefting v. Kaye-Smith Enterprises Inc.*, 2023 U.S. Dist. LEXIS 131161, at *14-15 (W.D. Wash. July 28, 2023); *Veridian Credit Union v. Eddie Bauer, LLC*, 295 F. Supp. 3d 1140, 1162 (W.D. Wash. 2017); *Guy v. Convergent Outsourcing, Inc.*, 2023 U.S. Dist. LEXIS 125332, at *23 (W.D. Wash. July 20, 2023).

Plaintiffs allege that Defendants engaged in an unfair practice by violating their privacy through disclosures of Plaintiffs' PII in violation of the VPPA and §1799.3. *See supra* section B(1). Moreover, Plaintiffs allege that Defendants' conduct was unfair because Defendants "mislead[] [them] about what identifying information is collected" by Defendants, "fail[ed] to

provide an opt-out mechanism; and fail[ed] to timely destroy [consumer's] records[.]" ¶ 22. These facts support the unfairness prong of the WCPA.

Plaintiffs concede that they have not alleged an injury under the WCPA. *See* Mot. at 28. "[T]he business and property injuries compensable under the [W]CPA are relatively expansive" and "[b]ecause the [W]CPA addresses 'injuries' rather than 'damages,' quantifiable monetary loss is not required." *Frias v. Asset Foreclosure Servs., Inc.*, 181 Wash. 2d 412, 431 (2014). Therefore, "[t]he injury element can be met even where the injury alleged is both minimal and temporary." *Id.* "In fact, nonquantifiable injuries such as time or expense incurred investigating a suspected deceptive practice will suffice." *Krefting*, 2023 U.S. Dist. LEXIS 131161, at *269; *see also Guy*, 2023 U.S. Dist. LEXIS 125332, at *24 ("allegations of the lost value of the PII are sufficient to show an injury" under the WCPA). Based on the foregoing, Plaintiffs respectfully request leave to amend to add allegations regarding the lost value of their PII and time or expenses incurred mitigating the disclosure of their PII. In the alternative, Plaintiffs respectfully request leave to amend to add a claim for invasion of privacy under Washington law. *See Guy*, 2023 U.S. Dist. LEXIS 125332, at *18-19 ("Washington recognizes a common law right of privacy and individuals may bring a cause of action for invasion of that right . . . . The claim generally requires the plaintiff to prove that the defendant publicized a 'matter concerning the private life of another' where the information publicized: '(a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public.'"). Plaintiffs can readily meet this standard because, as discussed throughout, they allege that Defendants disclosed their video rental and sales records, which are records that are uniquely private. *See Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065-66 (9th Cir. 2015) ("According to the Senate Report on the VPPA, Congress's purpose when enacting the statute was [t]o preserve personal privacy with respect to

the rental, purchase or delivery of video tapes or similar audio visual materials" and "Congress's intent . . . evinces the principle that protection is merited when the consumer lacks control over the dissemination of the information at issue.").

## CONCLUSION

For the foregoing reasons, this Court should deny Amazon's Motion in its entirety. In the alternative, if this Court grants the Motion in whole or in part, it should grant Plaintiffs leave to amend under the liberal amendment standard.[10]

DATED: July 24, 2024

Respectfully submitted,

**BURNS CHAREST LLP**
*(Admitted pro hac vice)*

*s/ Korey A. Nelson*

Amanda K. Klevorn (LA Bar #35193)
Korey A. Nelson (LA Bar #30002)
Laura S. Seggerman (TX Bar #24134116)
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845
Facsimile: (504) 881-1765
Email: aklevorn@burnscharest.com
knelson@burnscharest.com
lseggerman@burnscharest.com

Cristina Delise (NY Bar #5442033)
Burns Charest LLP
757 Third Avenue, 20th Floor
New York, New York 10017
Telephone: (469) 904-4550 main
Telephone: (469) 663-5940 direct
Facsimile: (469) 444-5002
Email: cdelise@burnscharest.com

*Interim Co-Lead Counsel for the Nationwide Class*

---

[10] "Dismissal without leave to amend is [generally] improper." *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

**DUNCAN LAW, PLLC**

*s/ Shaquelle M. Duncan*
Shaquelle M. Duncan (WA Bar #56701)
410 SW 10th Street, Suite 215
Renton, WA 98057
Telephone: (206) 237-7714
Facsimile: (206) 238-1324
Email: duncans@duncanlawpllc.com

*Additional Counsel for Plaintiffs*

**BRAGAR EAGEL & SQUIRE, P.C.**
*(Admitted pro hac vice)*

*s/ Lawrence P. Eagel*
Lawrence P. Eagel (NY Bar #1924067)
Casey C. DeReus (LA Bar #37096)
810 Seventh Avenue, Suite 620
New York, NY 10019
Telephone: (212) 308-5858
Facsimile: (212) 486-0462
Email: eagel@bespc.com
dereus@bespc.com

Melissa A. Fortunato (CA Bar #319767)
580 California Street, Suite 1200
San Francisco, CA 94104
Telephone: (415) 568-2124
Facsimile: (212) 304-0506
Email: fortunato@bespc.com

*Interim Co-Lead Counsel for the Nationwide Class*

**CARSON NOEL PLLC**
Wright A. Noel
20 Sixth Avenue NE
Issaquah, WA 98027
Telephone: (425) 837-4717
Facsimile: (425) 837-5396
Email: wright@carsonnoel.com

*Additional Counsel for Plaintiffs*

**BURSOR & FISHER, P.A.**
*(Admitted pro hac vice)*

*s/ Brittany S. Scott*
Brittany S. Scott
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: bscott@bursor.com

Joseph I. Marchese
Philip L. Fraietta
1300 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: jmarchese@bursor.com
pfraietta@bursor.com

*Additional Counsel for Plaintiffs*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7(e)(6)

"I certify that this memorandum contains 8,037 words, in compliance with the Local Civil Rules."

*s/ Korey A. Nelson*
Korey A. Nelson (LA Bar #30002)

*Interim Co-Lead Counsel for the Nationwide Class*