The Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MEREDITH BEAGLE, JORDAN GUERRERO, and SOFAUNA JOHNSON on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM, INC. and AMAZON.COM SERVICES LLC,<br><br>Defendants. | No. 2:24-cv-00316-JLR<br><br>AMAZON'S MOTION TO DISMISS THIRD AMENDED COMPLAINT<br><br>NOTE ON MOTION CALENDAR: February 28, 2025[1]<br><br>ORAL ARGUMENT REQUESTED |

[1] Based on briefing schedule set pursuant to the parties' Stipulated Order (Dkt. 58).



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF CONTENTS


Page

I. INTRODUCTION ....... 1

II. BACKGROUND ....... 2

A. Amazon.com Services Does Not Disclose PII Outside the Ordinary Course of Business. ....... 2

B. The Court Dismisses Plaintiff's Consolidated Amended Complaint ....... 6

C. Plaintiffs' Third Amended Complaint Adds No Allegations of Consequence. ....... 7

III. LEGAL STANDARD ....... 9

IV. ARGUMENT AND AUTHORITY ....... 9

A. Plaintiffs Fail to State Any Claims Against Amazon.com, Inc. ....... 9

B. Plaintiffs Fail to State a Claim against Amazon.com Services Under the VPPA. ....... 10

1. Plaintiffs Allege Only the *Possibility* of Affiliate Disclosure, Not Any Actual Disclosure. ....... 10

2. Any Alleged Disclosure to Amazon Affiliates Falls Within the VPPA's Ordinary Course of Business Exception. ....... 14

C. Plaintiffs Fail to State a Claim under Cal. Civ. Code § 1799.3. ....... 18

1. Johnson Fails to Allege Actual Disclosure of Her PII. ....... 18

2. Johnson Provided Written Consent Under Cal. Civ. Code § 1799.3. ....... 18

D. Plaintiffs Should Not Be Given Leave to Amend. ....... 21

V. CONCLUSION ....... 22




Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .... 9, 10, 12, 14

*Brand Techs., Inc. v. Cox Enters.*,
2017 WL 11631202 (C.D. Cal. Mar. 23, 2017) .... 9

*Davis v. HSBC Bank Nev.*, N.A.,
691 F.3d 1152 (9th Cir. 2012) .... 2, 3, 6, 8

*Doe v. Project Fair Bid Inc.*,
2011 WL 3516073 (W.D. Wash. Aug. 11, 2011) .... 20

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) .... 11

*Fan v. NBA Props. Inc.*,
2024 WL 1297643 (N.D. Cal. Mar. 26, 2024) .... 18, 19

*Garcia v. Enter. Holdings, Inc.*,
78 F. Supp. 3d 1125 (N.D. Cal. 2015) .... 20

*Hauenstein v. Softwrap Ltd.*,
2007 WL 2404624 (W.D. Wash. Aug. 17, 2007) .... 20

*Heinz v. Amazon.com, Inc.*,
--- F. Supp. 3d ---, 2024 WL 5304886 (W.D. Wash. Dec. 18, 2024) .... 21

*Heinz v. Amazon.com, Inc.*,
2023 WL 4466904 (E.D. Cal. July 11, 2023) .... 20

*Innovation Scis., LLC v. Amazon.com Inc.*,
2021 WL 765089 (E.D. Tex. Feb. 26, 2021) .... 9, 13

*M.K. by and through Kirksey v. Google LLC*,
2023 WL 2671381 (N.D. Cal. Mar. 27, 2023) .... 14

*Mollett v. Netflix, Inc.*,
795 F.3d 1062 (9th Cir. 2015) .... 10

*Moss v. U.S. Secret Serv.*,
572 F.3d 962 (9th Cir. 2009) .... 14, 18



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016)....................12

*PBTM LLC v. Football Nw., LLC*,
511 F. Supp. 3d 1158 (W.D. Wash. 2021)....................9

*Rancourt v. Meredith Corp.*,
2024 WL 381344 (D. Mass. Feb. 1, 2024) ....................15, 17

*In re Ring LLC Privacy Litig.*,
2021 WL 2621197 (C.D. Cal. June 24, 2021) ....................19, 21

*Rodriguez v. Experian Servs. Cop.*,
2015 WL 12656919 (C.D. Cal. Oct. 5, 2015)....................19

*Rodriguez v. Sony Comput. Ent. Am. LLC*,
2012 WL 12921066 (N.D. Cal. Apr. 20, 2012) ....................14, 18

*Rodriguez v. Sony Comput. Ent. Am. LLC*,
801 F.3d 1045 (9th Cir. 2015) ....................14, 15, 17

*Sang v. Baker*,
2010 WL 1444644 (E.D. Cal. Apr. 12, 2010)....................9

*Silver v. Stripe Inc.*,
2021 WL 3191752 (N.D. Cal. July 28, 2021)....................20

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001),
*opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001) ....................9, 14

*Sterk v. Redbox Automated Retail, LLC*,
770 F.3d 618 (7th Cir. 2014) ....................15, 16

*Swift v. Zynga Game Network, Inc.*,
805 F. Supp. 2d 904 (N.D. Cal. 2011) ....................19

*United States v. Corinthian Colleges*,
655 F.3d 984 (9th Cir. 2011) ....................21

**State Cases**

*Binder v. Aetna Life Ins. Co.*,
75 Cal. App. 4th 832 (1999) ....................19

*Flannery v. Prentice*,
26 Cal. 4th 572 (2001) ....................19



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*HM DG, Inc. v. Amini*,
219 Cal. App. 4th 1100 (2013) ....................19

**Federal Statutes**

18 U.S.C. § 2710....................1, 10, 15

**State Statutes**

Cal. Civ. Code § 1798.110 *et seq*....................13

Cal. Civ. Code § 1798.115....................13

Cal. Civ. Code § 1799.3.................... *passim*

Cal. Civil Code § 1798.110....................8

RCW 19.86 *et seq.* (Washington Consumer Protection Act)....................6, 7

**Rules**

Fed. R. Civ. P. 11....................1, 10, 12

Fed. R. Civ. P. 12(b)(6)....................2



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## I. INTRODUCTION

Plaintiffs' Third Amended Complaint ("TAC") is their latest failed attempt to manufacture claims against Amazon.com Services LLC and Amazon.com, Inc. (collectively "Amazon") under the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710 and Cal. Civ. Code § 1799.3. Despite multiple opportunities to amend, Plaintiffs have not fixed the fatal flaw with their claims: they lack any factual allegations that Amazon disclosed their Personally Identifiable Information ("PII"). Instead of pleading additional facts, Plaintiffs reduce the scope of their claims and now assert—based on the same generic and conclusory allegations this Court held insufficient—that Amazon.com Services generally collected and shared PII with its affiliates, including Amazon.com, Inc. For the same reasons that the Court previously dismissed Plaintiffs' complaint, the Court should dismiss the TAC.

Plaintiffs again do not—because they cannot, consistent with Rule 11—allege any facts supporting their speculation that Amazon.com Services disclosed *their* PII to anyone. Plaintiffs instead speculate that such a disclosure *might* have occurred based on a report unrelated to the PII at issue here and because Amazon.com Services and Amazon.com, Inc. responded jointly to Plaintiff Sofauna Johnson's data request, even though their response *confirms* that Amazon.com Services did not share Johnson's PII with anyone. As this Court held previously, the alleged possibility of disclosure is not enough to sustain a claim under the VPPA or Cal. Civ. Code § 1799.3. Plaintiffs' claims thus fail on several independent grounds.

*First*, Plaintiffs do not allege that Amazon.com, Inc. violated either the VPPA or Cal. Civ. Code § 1799.3, so Amazon.com, Inc. should be dismissed from the case.

*Second*, Plaintiffs' VPPA claim against Amazon.com Services based on alleged affiliate disclosure fails because Plaintiffs do not allege any actual disclosure occurred, and because any alleged disclosure by Amazon.com Services to its affiliates is permissible under VPPA as incident to its ordinary course of business.

*Third*, Plaintiff Johnson's Cal. Civ. Code § 1799.3 claim against Amazon.com Services fails because she does not allege any actual disclosure of her PII to Amazon affiliates and because



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

she consented to any alleged affiliate disclosure by agreeing to Amazon's Conditions and Use and Privacy Notice.

Amazon respectfully requests that the Court dismiss Plaintiffs' claims with prejudice.

## II. BACKGROUND

The TAC does not materially alter the few factual allegations relevant to this motion, which were previously summarized in Amazon's prior briefing and the Court's order dismissing all Plaintiffs' claims. *See* Dkt. 43 (the "MTD Order") at 2–3, 5–7; *see also* Dkt. 34 at 2–6. Amazon briefly reviews the relevant allegations restated in the TAC, and the relevant procedural history.

### A. Amazon.com Services Does Not Disclose PII Outside the Ordinary Course of Business.

Amazon.com Services operates Amazon Prime Video, a streaming service that allows users with Amazon accounts to watch video content. TAC ¶¶ 4, 21, 82. To create an Amazon account and use Amazon's website and services, including Amazon Prime Video, customers agree to Amazon's Conditions of Use ("COU") and Amazon's Privacy Notice. *Id.* ¶ 57.[2] In creating an account, customers are presented with the following screen, which requires the customer to input their name, mobile number or email, and a password. *Id.*

[2] Available at https://www.amazon.com/gp/help/customer/display.html? nodeId=GLSBYFE9MGKKQXXM (Conditions of Use) and https://www.amazon.com/gp/help/customer/display.html?nodeId=GX7NJQ4ZB8MHFRNJ (Privacy Notice). This Court may consider Amazon's COU and Amazon's Privacy Notice under Rule 12(b)(6), as they are incorporated by reference into the complaint (TAC ¶¶ 61 n.25, 65 n.26, 71–75) and are judicially noticeable, as set forth in Amazon's concurrently filed Request for Judicial Notice. *See Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012) ("[C]ourts may take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading.") (citation & internal quotation marks omitted).



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax




Under the button labeled "Create your Amazon account," Amazon informs customers that "[b]y creating an account, you agree to Amazon's Conditions of Use and Privacy Notice" with the phrases "Conditions of Use" and "Privacy Notice" containing conspicuous blue hyperlinks to each respective agreement. *Id.* Customers who create accounts and subscribe to Amazon Prime also agree to Amazon Prime's Terms and Conditions, and customers using Amazon Prime Video consent to the Amazon Prime Video Terms of Use. *Id.* ¶¶ 76–81.[3]

Amazon's COU, Prime Video Terms of Use, and Prime Terms & Conditions each inform customers that Amazon's Privacy Notice applies to their use of Amazon's websites and services, and each directs customers to the Privacy Notice via a blue hyperlink. RJN Exs. 2–11. Amazon's

[3] Available at https://www.primevideo.com/help?nodeId=202095490 (Prime Video Terms of Use) and https://www.amazon.com/gp/help/customer/display.html?nodeId=G2B9L3YR7LR8J4XP (Prime Terms & Conditions). This Court may consider the Prime Video Terms of Use and Amazon Prime Terms & Conditions as they are both incorporated by reference in the Complaint. (TAC ¶¶ 76–81) and are judicially noticeable. *Davis*, 691 F.3d at 1160.



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Privacy Notice, in turn, explains the information Amazon.com Services collects from customers, the information it uses internally, and the information it *may* disclose. *See* RJN Ex. 8.

Amazon's Privacy Notice also specifies how Amazon might *use* the information it obtains and that customers provide, and how Amazon might *share* that information. *Id*. Under the heading "**For What Purposes Does Amazon Use Your Personal Information?**," the Privacy Notice explains Amazon *uses* the personal information it receives as part of its ordinary course of business "to operate, provide, develop, and improve the products and services that we offer our customers." *Id*. This heading also lists the business purposes for which Amazon uses the information it acquires, as shown below. *Id*.

## For What Purposes Does Amazon Use Your Personal Information?

We use your personal information to operate, provide, develop, and improve the products and services that we offer our customers. These purposes include:

- **Purchase and delivery of products and services.** We use your personal information to take and handle orders, deliver products and services, process payments, and communicate with you about orders, products and services, and promotional offers.
- **Provide, troubleshoot, and improve Amazon Services.** We use your personal information to provide functionality, analyze performance, fix errors, and improve the usability and effectiveness of the Amazon Services.
- **Recommendations and personalization.** We use your personal information to recommend features, products, and services that might be of interest to you, identify your preferences, and personalize your experience with Amazon Services.
- **Provide voice, image and camera services.** When you use our voice, image and camera services, we use your voice input, images, videos, and other personal information to respond to your requests, provide the requested service to you, and improve our services. For more information about Alexa voice services , click here.
- **Comply with legal obligations.** In certain cases, we collect and use your personal information to comply with laws. For instance, we collect from sellers information regarding place of establishment and bank account information for identity verification and other purposes.
- **Communicate with you.** We use your personal information to communicate with you in relation to Amazon Services via different channels (e.g., by phone, email, chat).
- **Advertising.** We use your personal information to display interest-based ads for features, products, and services that might be of interest to you. We do not use information that personally identifies you to display interest-based ads. To learn more, please read our Interest-Based Ads notice.
- **Fraud Prevention and Credit Risks.** We use personal information to prevent and detect fraud and abuse in order to protect the security of our customers, Amazon, and others. We may also use scoring methods to assess and manage credit risks.



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Likewise, under the heading **"Does Amazon Share Your Personal Information?"** the Privacy Notice confirms that Amazon is "not in the business of selling our customers' personal information to others," and that Amazon shares customers' personal information with Amazon subsidiaries and only for four enumerated and specific business purposes, as shown below. *Id.*

> ## Does Amazon Share Your Personal Information?
>
> Information about our customers is an important part of our business, and we are not in the business of selling our customers' personal information to others. We share customers' personal information only as described below and with subsidiaries Amazon.com, Inc. controls that either are subject to this Privacy Notice or follow practices at least as protective as those described in this Privacy Notice.
>
> - **Transactions involving Third Parties:** We make available to you services, products, applications, or skills provided by third parties for use on or through Amazon Services. For example, you can order products from third parties through our stores, download applications from third-party application providers from our App Store, and enable third-party skills through our Alexa services. We also offer services or sell product lines jointly with third-party businesses, such as co-branded credit cards. You can tell when a third party is involved in your transactions, and we share customers' personal information related to those transactions with that third party.
> - **Third-Party Service Providers:** We employ other companies and individuals to perform functions on our behalf. Examples include fulfilling orders for products or services, delivering packages, sending postal mail and email, removing repetitive information from customer lists, analyzing data, providing marketing assistance, providing search results and links (including paid listings and links), processing payments, transmitting content, scoring, assessing and managing credit risk, and providing customer service. These third-party service providers have access to personal information needed to perform their functions, but may not use it for other purposes.
> - **Business Transfers:** As we continue to develop our business, we might sell or buy other businesses or services. In such transactions, customer information generally is one of the transferred business assets but remains subject to the promises made in any pre-existing Privacy Notice (unless, of course, the customer consents otherwise). Also, in the unlikely event that Amazon.com, Inc. or substantially all of its assets are acquired, customer information will of course be one of the transferred assets.
> - **Protection of Amazon and Others:** We release account and other personal information when we believe release is appropriate to comply with the law; enforce or apply our Conditions of Use and other agreements; or protect the rights, property, or safety of Amazon, our users, or others. This includes exchanging information with other companies and organizations for fraud protection and credit risk reduction.
>
> Other than as set out above, you will receive notice when personal information about you might be shared with third parties, and you will have an opportunity to choose not to share the information.

Amazon's Privacy Notice also explains in clear terms that Amazon never shares a customer's "name or other information that directly identifies [them]" to advertisers and instead



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

only shares anonymized identifiers "like a cookie, a device identifier, or a code derived from … irreversible cryptography." *Id*. Amazon's Interest-Based Ads policy reiterates that Amazon does not disclose customers' PII to advertisers. RJN Ex. 11.[4] This policy states that Amazon "do[es] *not* use information which on its own identifies you, such as name or e-mail address, to serve interest-based ads" and that "[i]n providing [customers] interest-based ads we do *not* associate your interactions on unaffiliated sites with information which on its own identifies you … and we do *not* provide any such information to advertisers or to third-party sites that display our interest-based ads." *Id*. (emphasis added).

The Amazon Prime Video Terms of Use, too, provide additional detail as to what information Amazon.com Services may collect and share. RJN Ex. 6. Under the "**Software**" heading, the Prime Video Terms of Use notes that Amazon "*may* provide certain information regarding your subscription status and use of Digital Content … to video content providers." *Id.* (emphasis added). Such disclosures, however, are made "in a manner that is *not identifiable* to you" unless a customer authorizes otherwise. *Id*. (emphasis added).

### B. The Court Dismisses Plaintiff's Consolidated Amended Complaint

Plaintiffs' Consolidated Amended Complaint ("CAC") alleged that Amazon violated the VPPA, Cal. Civ. Code § 1799.3, and the Washington Consumer Protection Act ("CPA") by allegedly collecting and sharing Plaintiffs' PII with Amazon affiliates and unidentified third parties. The Court dismissed Plaintiffs' VPPA and Cal. Civ. Code § 1799.3 claims because (1) "Plaintiffs allege[d], at most, the mere *possibility* that information could be disclosed to those affiliates, rather than that Amazon Services had *in fact* made such disclosures[,]" MTD Order at 5, and (2) Plaintiff's inference that Amazon shared Plaintiffs' PII with third parties because Amazon's Prime Video Terms of Use suggested that Amazon "may" disclose certain information to third parties was insufficient to show that Amazon *actually had* disclosed such information. *Id.*

[4] Available at https://www.amazon.com/gp/help/customer/display.html?nodeId=GLVB9XDF9M8MU7UZ. This Court may likewise consider this policy in evaluating Amazon's Motion to Dismiss as Plaintiffs incorporated this policy by reference in the Complaint (TAC ¶ 75 & n.31), and because it is judicially noticeable. *Davis*, 691 F.3d at 1160.



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

at 7. The Court then dismissed Plaintiffs' CPA claim because Plaintiffs' (1) could not plead an "unfair act" because "all Plaintiffs had to do to avoid the alleged injury was read the terms and conditions and choose not to use Amazon's services[,]" *id.* at 8–9, and (2) Plaintiffs could not plead an injury to their business or property because "[a]t most, Plaintiffs allege that Amazon invaded their privacy, which is a personal injury, rather than a business or property injury." *Id*. at 9 (citation & internal quotation marks omitted). The Court granted Amazon's motion to dismiss Plaintiffs' CPA claim with prejudice, but gave leave to amend their VPPA and Cal. Civ. Code § 1799.3 claims. *Id.* at 11.

**C. Plaintiffs' Third Amended Complaint Adds No Allegations of Consequence.**

The TAC adds just 13 paragraphs, none of which allege Amazon actually disclosed Plaintiffs' PII or otherwise address the issues the Court identified in dismissing the CAC.

In the TAC, Plaintiffs abandon their allegations that Amazon disclosed their video PII to third parties. Plaintiffs also fail to make any allegations that Amazon.com, Inc. violated the VPPA and Cal. Civ. Code § 1799.3. *See* TAC ¶¶ 137–152. Instead, Plaintiffs maintain Amazon.com Services disclosed PII to its affiliates in violation of the VPPA and, for plaintiff Johnson, in violation of Cal. Civ. Code § 1799.3. *Id*. The majority of Plaintiffs' TAC contains the same conclusory allegations this Court previously rejected because they allege only "the mere *possibility*" of disclosure. MTD Order at 5. Plaintiffs rely on the same paragraph from the CAC, repeated for each plaintiff, generically alleging Amazon.com Services "provide[d] Amazon Inc. *with direct access* to Amazon Services' database." TAC ¶¶ 105, 114, 123 (emphasis added). Likewise, Plaintiffs continue to selectively excerpt language from Amazon's Privacy Notice and other disclosures which establish only the limited ways Amazon *may* share customer information in the ordinary course of business. *Id*. ¶¶ 46–48.

Plaintiffs' new allegations come from three sources, none of which plausibly show Amazon.com Services actually disclosed Plaintiffs' PII to anyone. Plaintiffs first cite a recent FTC staff report, *A Look Behind the Screens: Examining the Data Practices of Social Media and Video*



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Streaming Services*, FTC (Sept. 2024) (the "*Behind the Screens* Report"),[5] which they allege describes "the FTC's findings arising from 6(b) orders it issued to nine companies, including Amazon Inc. and its subsidiary, Twitch." *Id.* ¶ 49; *see* RJN Ex. 1. Plaintiffs then quote how the companies generally responded to the FTC regarding the sharing of customer information with third parties, *id*. ¶ 50, and the report's general statement that "[m]ost companies acknowledged that they shared users' Personal Information with affiliates and other company-branded entities[,]" *id*. ¶ 51. None of Plaintiffs allegations regarding the *Behind the Screens* Report are specific to Amazon, relate to the video PII at issue here, or indicate that Amazon.com Services shared Plaintiffs' video PII with its affiliates. *See* RJN Ex. 1.

Plaintiffs also add allegations based on a letter Amazon's counsel sent Plaintiff Sofauna Johnson and the production of data regarding Johnson's account in response to a request for her personal data under Cal. Civil Code § 1798.110. TAC ¶¶ 93–97. The letter confirms Amazon "does not sell personal information" and "confirm[s] that it has not shared any of Ms. Johnson's personal information which identifies her as having requested, obtained, or viewed specific video materials or services from Amazon." *Id.* ¶ 93; RJN Ex. 12. But Plaintiffs claim this letter establishes that Amazon.com Services disclosed "consumers' data with Amazon.com Inc,"[6] because Amazon's counsel responded to Johnson's data request on behalf of both Amazon.com Services and Amazon.com, Inc., and because Amazon did not expressly state it did not disclose Johnson's information to any Amazon affiliate. *See id.* ¶¶ 94, 96–97.

Plaintiffs also claim that Amazon's production of Johnson's data reveals that the seller of record for certain digital orders included two Amazon affiliates: "Amazon.com Services Inc." and "Amazon Digital Services, Inc." *Id.* ¶ 95. But Amazon.com Services Inc. and Amazon Digital

---

[5] Available at https://www.ftc.gov/system/files/ftc_gov/pdf/Social-Medi'a-6b-Report-9-11-2024.pdf. This Court may consider the *Behind the Screens* Report as it is incorporated by reference in the Complaint. (TAC ¶¶ 49–51) and is judicially noticeable. *Davis*, 691 F.3d at 1160.

[6] This Court may consider the Letter Responding to Plaintiff Johnson's Data Request as it is incorporated by reference in the Complaint. (TAC ¶¶ 93–97) and is judicially noticeable. *Davis*, 691 F.3d at 1160.



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Services Inc. are the corporate predecessors of Amazon.com Services LLC. *See* RJN Ex. 13; *see also Innovation Scis., LLC v. Amazon.com Inc.*, 2021 WL 765089, at *1 (E.D. Tex. Feb. 26, 2021) (explaining that "Amazon Digital Services, Inc. merged into Amazon Digital Services LLC, which merged into Amazon.com Services, LLC"). Plaintiffs offer no other new allegations that Amazon disclosed their PII to its affiliates.

## III. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation & internal quotation marks omitted). Allegations that are "merely consistent with a defendant's liability" or consist of "a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Nor are courts required to accept factual allegations couched as legal conclusions, *id.*, or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001). In resolving a motion to dismiss, "the Court may consider materials incorporated into the complaint by reference, and matters of judicial notice." *PBTM LLC v. Football Nw., LLC*, 511 F. Supp. 3d 1158, 1170 (W.D. Wash. 2021) (citation & internal quotation marks omitted).

## IV. ARGUMENT AND AUTHORITY

### A. Plaintiffs Fail to State Any Claims Against Amazon.com, Inc.

Plaintiffs do not allege Amazon.com, Inc. violated the VPPA or Cal. Civ. Code § 1799.3. *See* TAC ¶¶ 137–152. Because Plaintiffs do not raise any claims against Amazon.com, Inc., their claims against it should be dismissed. *See Sang v. Baker*, 2010 WL 1444644, at *6 (E.D. Cal. Apr. 12, 2010) (dismissing claims against defendant where plaintiff did not allege injury "was due to any action or inaction" by that defendant); *Brand Techs., Inc. v. Cox Enters.*, 2017 WL 11631202, at *2 (C.D. Cal. Mar. 23, 2017) (Federal Rules do "not allow a plaintiff to keep as a defendant in a lawsuit a person against whom it has not asserted any causes of action").



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**B. Plaintiffs Fail to State a Claim against Amazon.com Services Under the VPPA.**

Plaintiffs' claims against Amazon.com Services fail for the same reasons the Court identified in previously dismissing them: Plaintiffs "do not plausibly allege that Amazon Services actually disclosed any of their PII to Amazon affiliates[.]" MTD Order at 5. Plaintiffs again attempt to mask these shortcomings through unsupported inferences and grand pronouncements about the importance of privacy laws. But their superficial and irrelevant allegations do not suffice. *See Iqbal*, 556 U.S. at 678.

Plaintiffs assert Amazon.com Services violates the VPPA by disclosing customer information to other Amazon affiliates. *See, e.g.*, TAC ¶ 141. To state such a claim, Plaintiffs "must allege that (1) [Amazon.com Services] is a 'video tape service provider,' (2) [Amazon.com Services] disclosed 'personally identifiable information concerning any customer' to 'any person,' (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by section 2710(b)(2)." *Mollett v. Netflix, Inc.*,795 F.3d 1062, 1066 (9th Cir. 2015) (citing 18 U.S.C. § 2710). Plaintiffs do not and cannot satisfy the second and fourth elements.

**1. Plaintiffs Allege Only the *Possibility* of Affiliate Disclosure, Not Any Actual Disclosure.**

First, "[b]ecause Plaintiffs do not plausibly allege that Amazon Services disclosed their PII to Amazon affiliates …, they have failed to plead an essential element of a claim under the VPPA[.]" MTD Order at 7. Plaintiffs again merely allege that Amazon.com Services "provid[ed] Amazon Inc. with direct access to Amazon Services' database," which allegedly contained Plaintiffs' PII. *Compare* CAC ¶¶ 103, 112, 121 *with* TAC ¶¶ 105, 114, 123. Plaintiffs fail to add any new facts in the TAC to show that this purported "access" actually resulted in disclosure. Nor could they plead any such facts consistent with Rule 11. Amazon.com, Inc. is a holding company that operates exclusively through its subsidiaries and has *no employees or operations*. Plaintiffs still do not allege that Amazon.com, Inc. or any Amazon affiliate accessed their PII or that Amazon.com Services ever affirmatively disclosed their PII to an affiliate.



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Instead, Plaintiffs now rest their affiliate disclosure claim on an FTC report that has *no relation* to the PII at issue here and a response letter from Amazon's counsel that expressly confirms Amazon did *not share PII*. *See* FAC ¶¶ 10–11, 49–52, 93–97; RJN Exs. 1, 12. But neither of these sources resuscitates Plaintiffs' VPPA claim. To the extent that the *Behind the Screens* Report addresses Amazon's data practices, it concerns data practices by Amazon's subsidiary Twitch, which is not a defendant, and whose services no plaintiff is alleged to have used. *See id.* ¶¶ 50, 98–124; RJN Ex. 1. The Report also contains no specific conclusions about Amazon.com Services or Amazon.com, Inc., and instead makes generic statements that do not identify any company by name, such as "[m]any Companies relied on selling advertising services to other businesses based largely on using the personal information of their users."[7] RJN Ex. 1 at v.

Nor does the *Behind the Screens* Report provide any detail as to whether Amazon.com Services or Amazon.com, Inc. discloses customers' *video PII* in a manner that violates the VPPA. The Report defines "Personal Information" as "information about a specific individual or Device" including hashed identifiers like cookies, "internet browsing history," "health or medical information," or "any other information associated with that User or Device," and thus discusses data practices for a vast array of data outside the ambit of the VPPA. *Id.* at 14 n.94. By contrast, under the VPPA, PII refers to "information that readily permits an ordinary person to identify *a particular individual as having watched certain videos*." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (citation & internal quotation marks omitted) (emphasis altered). This is because the VPPA "focuses on what information a video service provider knowingly discloses" as opposed to "what the recipient of that information decides to do with it." *Id.* Accordingly, information such as IP addresses, streaming device serial numbers, and even the names of videos watched do not constitute PII unless an ordinary person can readily use such information to identify a particular consumer. *See id.* at 986 (streaming device serial number coupled with names of video

[7] Amazon's Privacy Notice also makes clear Amazon could not be one of these "many" Companies, because Amazon "is not in the business of selling our customers' personal information to others." RJN Ex. 8.



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

plaintiff watched do not qualify as PII); *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 282–84, 289 (3d Cir. 2016) (IP address, device identifier, and browser fingerprint not PII).

Plaintiffs' allegations based on Amazon's response to Johnson's data request likewise have no merit. As Plaintiffs admit, Amazon's response "confirm[s] that it has not shared any of Ms. Johnson's personal information which identifies her as having requested, obtained, or viewed specific video materials or services from Amazon." *Id.* ¶ 93; RJN Ex. 12. Despite this confirmation, Plaintiffs nonetheless contend Amazon's response somehow suggests that Amazon.com Services discloses consumer PII because (i) Amazon responded jointly to Johnson's data request, (ii) the data Johnson received lists different Sellers of Record, and (iii) Amazon was allegedly required to, but did not, confirm that it had not disclosed Johnson's PII to its affiliates. TAC ¶¶ 94–96. These arguments fail.

Plaintiffs' suggestion that Amazon.com Services disclosed customer PII to its affiliates simply because Amazon.com Services and Amazon.com, Inc. responded jointly to Johnson's request strains credulity. Amazon's letter states, and Plaintiffs admit, that Johnson made her data request not to Amazon.com Services or Amazon.com Inc. individually, but to Amazon collectively, hence Amazon's joint response. RJN Ex. 13; TAC ¶ 93 n.42 ("Johnson … submitted a request to Amazon for her data"). Moreover, Plaintiffs provide no causal link or rational explanation in the TAC as to how Amazon's joint response "indicates that Amazon Inc. has possession of (and therefore has accessed) Jonson's data." TAC ¶ 94. Nor can Plaintiffs allege this missing link consistent with Rule 11. As a mere holding company, Amazon.com, Inc. would not need to access or review Johnson's data to confirm that none of Johnson's data was shared. *See Iqbal*, 556 U.S. at 678 (allegations insufficient to state a claim when they are "merely consistent with a defendant's liability") (citation & internal quotation marks omitted).

Likewise meaningless are Plaintiffs' allegations that Amazon.com Services must have shared consumer PII because the data Johnson received shows "Amazon.com Services Inc." and "Amazon Digital Services Inc." as the Seller of Record of her video purchases. Plaintiffs do not explain why being listed as the Seller of Record demonstrates that Amazon.com Services disclosed



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

customer PII to its affiliates. Nor can they. Amazon.com Services Inc. and Amazon Digital Services Inc. are the corporate *predecessors* of Amazon.com Services as opposed to contemporary affiliate companies. *See* RJN Ex. 13; *see also Innovation Scis.*, 2021 WL 765089, at *1 (explaining "Amazon Digital Services, Inc. merged into Amazon Digital Services LLC, which merged into Amazon.com Services, LLC"). Nor do Amazon's Video Terms of Use support Plaintiffs' unfounded conjecture that Amazon Services' data is "inevitably tied to other Amazon entities." TAC ¶ 95. Amazon's Prime Video Terms simply explain the service provider for Prime Video changes depending on the customer's location and "may change from time to time, without or without prior notice." RJN Ex. 6.

Lastly, Plaintiffs are wrong that Amazon's response establishes Amazon.com Services disclosed Plaintiffs' video PII because the letter "did not contain anything regarding any co-branded subsidiaries that Amazon Services shared Johnson's data with." TAC ¶ 96. Cal. Civ. Code § 1798.110 *et seq*. only required Amazon to provide Johnson with the *categories* of personal information it discloses, and the *categories* of third parties to whom the personal information was sold. *See* Cal. Civ. Code § 1798.115(a), (c). Critically, the statute defines "third parties" to exclude any "business with whom the consumer intentionally interacts and that collects personal information from the consumer," "service provider[s] to the business," and "contractor[s]." *Id.* § 1798.140(ai). As an Amazon account holder, TAC ¶ 117, Johnson agreed to Amazon's Conditions of Use and thus intentionally interacted with Amazon.com Services "and/or its affiliates." RJN Exs. 3–4 (COUs in effect when Johnson created her account in 2017). Accordingly, Amazon's response was not required to "contain anything regarding any co-branded subsidiaries," TAC ¶ 96. In any event, Plaintiffs' focus on Amazon's response under Cal. Civ. Code § 1798.110 *et seq*.—a statute that is neither specific to video PII, and under which Plaintiffs do not and cannot assert any claim—reflects nothing but an attempt to distract from their inability to allege facts supporting any actual disclosure of their video PII to any Amazon affiliate.

Taking Plaintiffs' allegations at face value, "Plaintiffs allege, at most, the mere possibility that information could be disclosed to those affiliates, rather than that Amazon Services had in fact



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

made such disclosures." MTD Order at 5. "[B]ut mere possibility is not enough." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 971–72 (9th Cir. 2009). To avoid dismissal, Plaintiffs must allege facts showing "more than a sheer possibility that [Amazon] has acted unlawfully." *Iqbal*, 556 U.S. at 678. Plaintiffs have failed to do so. As this Court previously recognized, "[t]hat Amazon Services allegedly provides access to Plaintiffs' PII does not plausibly suggest that Amazon Services has taken the affirmative act of disclosing that data to Amazon.com, Inc. or that Amazon.com, Inc. has actually received that data." MTD Order at 6.[8] Courts routinely dismiss VPPA claims where, as here, plaintiffs only allege that a defendant collected and disclosed consumers' information generally, without linking these allegations specifically to the plaintiff. *See, e.g.*, *M.K. by and through Kirksey v. Google LLC*, 2023 WL 2671381, at *3 (N.D. Cal. Mar. 27, 2023) (dismissing VPPA claim where complaint contained "no facts linking" general allegations that Google "collected consumers' [PII]" to plaintiff); *Rodriguez v. Sony Comput. Ent. Am. LLC*, 2012 WL 12921066, at *1 (N.D. Cal. Apr. 20, 2012) (dismissing VPPA claim where "plaintiff's allegations fail to state that a disclosure has affirmatively taken place"). Because Plaintiffs' allegations still consist of "naked assertions devoid of further factual enhancement," *Iqbal*, 556 U.S. at 678, and "unreasonable inferences," they are insufficient to state a claim, *Sprewell*, 266 F.3d at 988.

### 2. Any Alleged Disclosure to Amazon Affiliates Falls Within the VPPA's Ordinary Course of Business Exception.

Plaintiffs' affiliate disclosure theory also fails because "intra-corporate disclosures are not unauthorized disclosures under the [VPPA]." *Rodriguez v. Sony Comput. Ent. Am. LLC*, 801 F.3d 1045, 1054 (9th Cir. 2015). The VPPA allows a business to disclose PII if the disclosure is incident

---

[8] Plaintiffs suggest that allegedly maintaining an internal database of customer information is somehow analogous to sharing customer data with Facebook by using the Meta Pixel. TAC ¶ 11 n.9 (citing *Czarnionka v. Epoch Times Ass'n, Inc.*, 2022 U.S. Dist. LEXIS 209067, at *9–10 (S.D.N.Y. Nov. 17, 2022). But this comparison falls flat. The Meta Pixel is a tool that companies use to optimize targeted ads that automatically collects customer information and then shares it with Facebook. Here, there is no allegation Amazon.com Services affirmatively disclosed the PII it allegedly maintains with its affiliates or third parties, much less utilized a tool that does so automatically. Plaintiffs attempt to analogize this case to cases involving the Meta Pixel is off point, and the line of cases sustaining VPPA claims involving the Meta Pixel are inapplicable.



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

to its ordinary course of business. *See* 18 U.S.C. § 2710(b)(2)(E). This exception applies with full force to Amazon.com Services.

The VPPA provides that "[a] video tape service provider may disclose [PII] concerning any consumer" "to any person if the disclosure is incident to the ordinary course of business of the video tape service provider[.]" 18 U.S.C. § 2710(b)(2)(E). The VPPA defines "ordinary course of business" to mean "only debt collection activities, order fulfillment, request processing, and the transfer of ownership." 18 U.S.C. § 2710(a)(2). Critically, "request processing" and "order fulfillment" have broad meanings and encompass a wide variety of customer support services, including intra-corporate disclosure. *See, e.g.*, *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 624–26 (7th Cir. 2014); *Rodriguez*, 801 F.3d at 1054.

For example, in *Sterk* the Seventh Circuit recognized that giving these terms their ordinary meaning makes it permissible for a defendant to disclose PII "in order to respond to a customer's call" or "for training purposes" because these services are "incident to the request processing function" a third-party or corporate affiliate may serve. 770 F.3d at 626. There, defendant video rental company Redbox engaged third party Stream as its customer call center vendor and allowed Stream access to its entire customer database so that Stream could respond to customer service inquiries and for training purposes. *Id.* at 621. In affirming summary judgment dismissal of the plaintiff's VPPA claim, the court held that there was "nothing objectionable about Redbox's wholesale disclosure of information pertaining to all customers" for use in potential customer service calls and training for such calls, as those uses were "incident to the request processing function that Stream serves." *Id.* at 626. Likewise, in *Rancourt v. Meredith Corp.*, 2024 WL 381344 (D. Mass. Feb. 1, 2024), the court explained that "if the disclosure of PII is in furtherance of business management and operations that are intra-corporate or inner facing, designed to ensure the smooth operation of the business, such as customer support, internal data analytics, or cyber security, it falls under the exception." *Id.* at *17.

Here, Amazon.com Services' purported disclosure (if any) of Plaintiffs' video-related PII to its affiliates qualifies as incident to its ordinary course of business. Amazon's Privacy Notice



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

explains that Amazon may use customer information for specific purposes, including: (1) the purchase and delivery of products and services; (2) troubleshooting and improving Amazon.com Services; (3) providing customer recommendations and personalization; (4) providing voice, image, and camera support services; (5) complying with legal obligations; (6) communicating with customers; (6) advertising; and (7) fraud prevention and credit risks.[9] RJN Ex. 8.

Plaintiffs concede that most of these uses qualify under the ordinary course of business exception. *See* TAC ¶ 74. This is obvious because they involve customer support services incident to the request processing, order fulfillment, and debt collection functions Amazon's affiliates may provide. Use of PII to ensure the purchase and delivery of products and services, for example, is incident to the order fulfillment function. Likewise, use of PII to troubleshoot issues for customers, to provide customer recommendations and personalization, to provide voice, image, and camera support services, and to communicate with customers are akin to the customer support services recognized in *Sterk* as "incident to the request processing function." *See Sterk*, 770 F.3d at 626. Nonetheless, Plaintiffs allege three of these listed uses—providing customer recommendations, advertising, and fraud prevention/credit risks—purportedly do not qualify under the ordinary business exception. TAC ¶ 75. Again, Plaintiffs do not, and cannot, allege that Amazon.com Services shares *their* video PII for these purposes with affiliates, but, regardless, any such uses would not violate the VPPA.

First, the use of customer information to provide personalized recommendations and to prevent fraud and manage credit risks both fall within the ordinary course of business exception. Because Amazon.com Services' video streaming business relies on customer subscriptions, *see id*. ¶ 42, ensuring customers receive personalized recommendations and options to improve their streaming experience is imperative for Amazon's business. Use of customer information to provide

[9] Plaintiffs assert, without any support, that the uses listed in Amazon's Privacy Notice are not exhaustive and that "there are even more purposes for which the data is used." TAC ¶ 74 n.30. But Plaintiffs do not allege what these additional purposes are. In any event, Plaintiffs' assertion is belied by other language in Amazon's Privacy Notice stating that Amazon *shares* PII "only" for limited purposes, including to Amazon's Subsidiaries. *See* RJN Ex. 8.



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

recommendations and personalization is thus incident to both the order fulfillment function and request processing function. Indeed, the legislative history of the VPPA confirms the terms "request processing" and "order fulfillment" cover businesses' disclosure of PII "for marketing to their customers." S. Rep. No. 100-500, at 14 (1988). Likewise, that Amazon.com Services may use customer information to prevent fraud and manage credit risks is incident to the request processing and order fulfillment functions an affiliate may serve, as such use is designed to "prevent and detect fraud and abuse in order to protect the security of Amazon's customers." RJN Ex. 8; *see Rancourt*, 2024 WL 381344, at *17 (cyber-security and use of information for internal data analytics falls within exception).

Second, Amazon's Privacy Notice and other agreements refute Plaintiffs' conclusory claim that Amazon.com Services discloses PII to its affiliates for advertising purposes. The Privacy Notice makes clear that Amazon "do[es] *not* use information that personally identifies you to display interest-based ads." RJN Ex. 8 (emphasis added). Amazon's Interest-Based Ads Notice confirms this, stating Amazon "do[es] *not* use information which on its own identifies you, such as name or e-mail address, to serve interest-based ads." RJN Ex. 11 (emphasis added).[10] As a result, Plaintiffs cannot claim Amazon's Privacy Notice "acknowledge[s] that Amazon Services can and is sharing PII-related video usage history," TAC ¶ 53, because the actual terms of that Notice confirm Amazon does not share PII for such purposes.

In sum, even if Plaintiffs had alleged an actual disclosure of their PII to an Amazon affiliate, their theory fails because the VPPA authorizes Amazon.com Service's "intra-corporate disclosures." *Rodriguez*, 801 F.3d at 1054. The listed purposes for which Amazon uses customer data all fall within the ordinary course of its business. Plaintiffs' VPPA claim for affiliate disclosure thus fails.

---

[10] Plaintiffs assert that because Amazon's Interest-Based Ads Notice states that it does not use information which "on its own" identifies a customer, Amazon nevertheless discloses aggregated PII data that can identify customers. TAC ¶ 75 n.31. Plaintiffs provide no factual allegations to substantiate this claim, however.



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**C. Plaintiffs Fail to State a Claim under Cal. Civ. Code § 1799.3.**

Plaintiff Johnson also claims Amazon.com Services' purported affiliate disclosures violated Cal. Civ. Code § 1799.3, the California analogue to the VPPA. TAC ¶¶ 27–31, 144–152. Section 1799.3 provides that "[n]o person providing video recording sales or rental services shall disclose any personal information or the contents of any record, including sales or rental information, [to] any person, other than the individual who is the subject of the record, without the written consent of that individual." Cal. Civ. Code § 1799.3; *see also Fan v. NBA Props. Inc.*, 2024 WL 1297643, at *2 (N.D. Cal. Mar. 26, 2024). Here, much like Plaintiffs' VPPA claim, Johnson's Cal. Civ. Code § 1799.3 claim fails for two reasons. *First*, Johnson fails to allege Amazon.com Services actually disclosed her PII. *Second*, Johnson admits she "contracted with Amazon Services" and therefore gave written consent to any alleged disclosure. TAC ¶ 119.

**1. Johnson Fails to Allege Actual Disclosure of Her PII.**

First, as with their VPPA claim, "[b]ecause Plaintiffs do not plausibly allege that Amazon Services disclosed their PII to Amazon affiliates …, they have failed to plead an essential element of a claim under … section 1799.3." MTD Order at 7. Instead, Johnson merely alleges Amazon.com Services "provid[ed] Amazon Inc. with direct access to Amazon Service's database with information on [Plaintiffs]." TAC ¶ 123. Again, Johnson pleads no facts to support this allegation. She does not allege Amazon.com, Inc. actually accessed or used her particular data, nor does she explain what this "access" consists of, particularly given that Amazon.com, Inc. has no employees or operations. Because Johnson has not alleged Amazon.com Services actually disclosed her particular PII and has instead alleged only the possibility of disclosure by way of "access," her § 1799.3 claim fails. *See Rodriguez*, 2012 WL 12921066, at *1; *Moss*, 572 F.3d at 971–72 ("mere possibility is not enough" to state a claim).

**2. Johnson Provided Written Consent Under Cal. Civ. Code § 1799.3.**

Johnson likewise fails to state a claim under Cal. Civ. Code § 1799.3 because she gave Amazon.com Services written consent for any purported disclosure of her PII. Unlike the VPPA, which imposes "more stringent requirements for consent, including that the consent … [be] in a



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

form distinct and separate from any form setting forth other legal … obligations," *Fan*, 2024 WL 1297643, at *2, no such requirements exist under Cal. Civ. Code § 1799.3. The statute instead only requires "written consent." *See id*.

Because the statute does not define "written consent," the phrase must be given its "plain and commonsense meaning," *Flannery v. Prentice*, 26 Cal. 4th 572, 577 (2001), which here would be a voluntary agreement made in writing. *See, e.g.*, *Written*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/written (last visited May 13, 2024) ("written" is understood to be "made or done in writing"); CONSENT, Black's Law Dictionary (11th ed. 2019) ("consent" means "[a] voluntary yielding to what another proposes or desires, agreement, approval, or permission regarding some act or purpose"). Given this plain meaning, where a party agrees by contract to allow the disclosure of their PII, they have given sufficient "written consent" for disclosure of their PII within the ambit of Cal. Civ. Code § 1799.3.

"To form a contract, a manifestation of mutual assent is necessary." *Binder v. Aetna Life Ins. Co.*, 75 Cal. App. 4th 832, 850 (1999). "Mutual assent is determined under an objective standard applied to the outward manifestations or expressions of the parties." *HM DG, Inc. v. Amini*, 219 Cal. App. 4th 1100, 1109 (2013). Under these principles, courts routinely find that a customer manifests assent to online terms, where, as here, "the user is provided with an opportunity to review the terms … in the form of a hyperlink immediately above or below a button that must be clicked to affirmatively acknowledge the terms, place an order, or register for an account." *In re Ring LLC Privacy Litig.*, 2021 WL 2621197, at *5 (C.D. Cal. June 24, 2021) (citing cases; holding consumer consented to Ring Terms of Service by creating account); *Rodriguez v. Experian Servs. Cop.*, 2015 WL 12656919, at *1–2 (C.D. Cal. Oct. 5, 2015) (assent where "website contained a hyperlink to the Terms of Use at the bottom of every page and included an express disclosure and acknowledgment, which stated, 'By clicking the button above ... you agree to our Terms of Use'"); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 912 (N.D. Cal. 2011) (binding contract created where plaintiff "was provided with an opportunity to review the terms of service in the form of a hyperlink immediately under the 'I accept' button and she clicked



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

'Accept'").[11] The result is the same in the context of privacy policies. *See, e.g.*, *Silver v. Stripe Inc.*, 2021 WL 3191752, at *4–5 (N.D. Cal. July 28, 2021) (plaintiff gave consent to collection and disclosure of data by agreeing to privacy policy in click-wrap agreement); *see also Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1137 (N.D. Cal. 2015) (by creating an account plaintiff agreed to defendant's privacy policy via click-wrap agreement and thus consented to collection and sharing of personal information).

Here, Johnson provided Amazon.com Services with written consent to use and disclose her PII when she "contracted with Amazon Services to access Amazon Prime Video." TAC ¶ 119. Johnson admits she created an Amazon account, *id.* ¶ 117, requiring that she click a button stating that "[b]y creating an account, you agree to Amazon's Conditions of Use and Privacy Notice" with Conditions of Use and Privacy Notice containing direct hyperlinks to those agreements, *id.* ¶ 57. Amazon's Privacy Notice provides in bold text that "**[b]y using Amazon Services, you are consenting to the practices described in this Privacy Notice**," which includes all practices related to Amazon's use of a customer's PII and any possible disclosures of the same.[12] RJN Ex. 8. Thus, by creating an account and "contract[ing] with Amazon Services to access Amazon Prime Video," TAC ¶ 119, Johnson provided Amazon.com Services written consent to use and disclose her PII as described in the Privacy Notice.

Further, although Plaintiffs mischaracterize Amazon's terms as "a maze of hyperlinks and fine print," *id.* ¶ 55, courts routinely find these same and similar clickwrap agreements enforceable. *See, e.g.*, *Heinz v. Amazon.com, Inc.*, 2023 WL 4466904, at *2 (E.D. Cal. July 11, 2023) ("This

---

[11] Under Washington law, which governs the agreement here, this clickwrap agreement is also enforceable. *See, e.g.*, *Doe v. Project Fair Bid Inc.*, 2011 WL 3516073, at *4 (W.D. Wash. Aug. 11, 2011) (Pechman, J.) ("This kind of 'clickwrap' agreement has been upheld in several cases in this circuit and elsewhere."); *Hauenstein v. Softwrap Ltd.*, 2007 WL 2404624, at *2–3, 6 (W.D. Wash. Aug. 17, 2007) (Pechman, J.) (plaintiff "manifested his assent to the License Agreement by 'clicking' the appropriate box").

[12] Plaintiffs' claim that "[t]he Privacy Notice does not request consumers' consent to disclose PII" is patently false, given the bolded language in the Privacy Notice. *Compare* TAC ¶ 66 *with* RJN Ex. 8.



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

court agrees with the findings of other district courts and concludes that the [Amazon.com Conditions of Use customers accept to create accounts] are sufficiently conspicuous and thus enforceable"); *In re Ring LLC Privacy Litig.*, 2021 WL 2621197, at *5 (collecting cases).

Indeed, in recently dismissing a privacy claim under the Washington Privacy Act ("WPA"), Judge Martinez found that the Amazon.com Conditions of Use and Privacy Notice gave the plaintiff customer adequate notice of Amazon's data practices. *Heinz v. Amazon.com, Inc.*, --- F. Supp. 3d ---, 2024 WL 5304886 at *3 (W.D. Wash. Dec. 18, 2024). As the Court held: "Mr. Heinz's multiple interactions with Amazon.com, including making purchases, … should have put him on notice [under the Conditions of Use and Privacy Notice] that his data, typed into Amazon's support system, would be received and stored. Adequate notice means consent, which means no WPA claim." *Id.* Likewise here, by creating an account and contracting with Amazon to use Prime Video Services, Johnson had adequate notice of the Privacy Notice, which "means consent," for the data practices detailed in the Privacy Notice. As a result, Johnson's Cal. Civ. Code § 1799.3 claim fails.

**D. Plaintiffs Should Not Be Given Leave to Amend.**

Plaintiffs should not get another bite at the apple. As the TAC demonstrates, despite repeated opportunities, Plaintiffs cannot cure the fundamental defects in their claims. *See United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) ("Leave to amend is warranted if the deficiencies can be cured with additional allegations that are 'consistent with the challenged pleading' and that do not contradict the allegations in the original complaint.") (citation omitted). The TAC makes clear that Plaintiffs cannot plausibly allege any facts demonstrating that Amazon.com Services violated the VPPA or §1799.3 by disclosing *their* PII to Amazon affiliates or that any purported disclosure that occurred was not incident to the ordinary course of business. Johnson cannot plausibly allege that she did not consent in writing to the disclosure of her PII. As a result, Plaintiffs should not be granted leave to amend their TAC.



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## V. CONCLUSION

For the above reasons, Amazon respectfully requests that the Court dismiss Plaintiffs' claims with prejudice.

DATED this 17th day of January, 2025.

DAVIS WRIGHT TREMAINE LLP
*Attorneys for Amazon.com, Inc. and Amazon.com Services LLC*

By *s/ John Goldmark*
John Goldmark, WSBA # 40980
Lauren Rainwater, WSBA #43625
Erwin Reschke, *pro hac vice*
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
Tel: (206) 622-3150
Email: JohnGoldmark@dwt.com
Email: LaurenRainwater@dwt.com
Email: ErwinReschke@dwt.com

I certify that this memorandum contains 6,996 words, in compliance with the Local Civil Rules.