The Honorable James L. Robart

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| MEREDITH BEAGLE, JORDAN GUERRERO, and SOFAUNA JOHNSON on Behalf of Themselves and All Others Similarly Situated,<br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM, INC. and AMAZON.COM SERVICES LLC.<br><br>Defendants. | No.: 2:24-cv-00316-JLR<br><br>**PLAINTIFFS' OPPOSITION TO AMAZON'S MOTION TO DISMISS THIRD AMENDED COMPLAINT**<br><br>NOTE ON MOTION CALENDAR: FEBRUARY 28, 2025<br><br>ORAL ARGUMENT REQUESTED |


Burns Charest LLP
201 St. Charles Ave., Ste. 2900
New Orleans, LA 70170
(504) 799-2845

# TABLE OF CONTENTS

**Page**


PRELIMINARY STATEMENT ........ 1

STATEMENT OF FACTS ........ 1

ARGUMENT ........ 4

A. Legal Standards. ........ 4

1. Rule 8 requires a short and plain statement of the claim. ........ 4

2. When ruling on a Rule 12(b)(6) motion, district courts are generally limited to the pleadings. ........ 5

B. Plaintiffs Plausibly Allege that Amazon Services Discloses Their PII to its Affiliates. ........ 5

C. Defendants' Affirmative Defensives Are Premature. ........ 12

D. Defendants' Affirmative Defenses Substantively Fail. ........ 14

1. The "Ordinary Course of Business" Exception Does Not Apply to Amazon Services' Disclosures. ........ 14

2. Defendants Have Not Shown that Johnson Consented to Disclosure of her PII. ........ 20

CONCLUSION ........ 25

## TABLE OF AUTHORITIES

**Page(s)**

***Cases***

*Adams v. America's Test Kitchen, LP*,
2023 WL 4304675 (D. Mass. June 30, 2023) .................... 13

*Ade v. Viki, Inc.*,
2024 WL 1880153 (N.D. Cal. Mar. 28, 2024) .................... 19

*Backhaut v. Apple, Inc.*,
74 F. Supp. 3d 1033 (N.D. Cal. 2014) .................... 20

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................... 4

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) .................... 21

*Burdette v. Fubotv Inc.*,
2024 WL 2831466 (N.D. Ill. June 4, 2024) .................... 10, 16, 18

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) .................... 20, 21, 22

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024) .................... 20

*California Priv. Prot. Agency v. Superior Ct.*,
99 Cal. App. 5th 705 (2024) .................... 23

*Campbell v. Facebook, Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) .................... 22

*Campos v. Tubi, Inc.*,
716 F. Supp. 3d 623 (N.D. Ill. 2024) .................... 5, 10

*Cody v. Ring LLC*,
2024 WL 735667 (N.D. Cal. Feb. 22, 2024) .................... 21

*Collins v. Toledo Blade*,
720 F. Supp. 3d 543 (N.D. Ohio 2024) .................... 17, 18

*Czarnionka v. Epoch Times Ass'n, Inc.*,
2022 WL 17069810 (S.D.N.Y. Nov. 17, 2022) .................... 6, 7

*Daniel v. Cantrell*,
375 F.3d 377 (6th Cir. 2004) .................... 6, 7

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) .................... 6, 7, 11

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
545 U.S. 546 (2005) .................... 16



Burns Charest LLP
201 St. Charles Ave., Ste. 2900
New Orleans, LA 70170
(504) 799-2845

*Feldman v. Star Trib. Media Co. LLC*,
2023 WL 2388381 (D. Minn. Mar. 7, 2023) .......... 13

*Guerrero v. Gates*,
442 F.3d 697 (9th Cir. 2006) .......... 4

*Heinz v. Amazon.com, Inc.*,
2024 WL 5304886 (W.D. Wash. Dec. 18, 2024) .......... 21

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) .......... 20

*In re Google, Inc. Gmail Litig.*,
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) .......... 22

*In re Hulu Privacy Litig.*,
2012 WL 3282960 (N.D. Cal. Aug. 10, 2012) .......... 4, 6, 7

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 20, 22

*Jackson v. Amazon.com, Inc.*,
65 F.4th 1093 (9th Cir. 2023) .......... 20, 22

*Jackson v. Carey*,
353 F.3d 750 (9th Cir. 2003) .......... 25

*Jackson v. Fandom, Inc.*,
2023 WL 4670285 (N.D. Cal. July 20, 2023) .......... 19

*Kaanaana v. Barrett Bus. Servs., Inc.*,
11 Cal. 5th 158 (2021) .......... 23

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .......... 5, 19

*Knutson v. Sirius XM Radio Inc.*,
771 F.3d 559 (9th Cir. 2014) .......... 21, 22

*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001) .......... 5

*Lexin v. Superior Court*,
47 Cal.4th 1050 (2010) .......... 23

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*,
416 F.3d 940 (9th Cir. 2005) .......... 5

*Long v. Provide Com., Inc.*,
245 Cal.App.4th 855 (2016) .......... 21

*Lopez v. Apple, Inc.*,
519 F. Supp. 3d 672 (N.D. Cal. 2021) .......... 21

*Louth v. NFL Enterprises LLC*,
2022 WL 4130866 (D.R.I. Sept. 12, 2022) .......... 18

*Lusnak v. Bank of Am., N.A.*,
883 F.3d 1185 (9th Cir. 2018) ........ 13

*M. K. v. Google LLC*,
2023 WL 4937287 (N.D. Cal. Aug. 1, 2023) ........ 13

*M.K. by and through Kirksey v. Google LLC*,
2023 WL 2671381 (N.D. Cal. Mar. 27, 2023)........ 8

*Markels v. AARP*,
689 F. Supp. 3d 722 (N.D. Cal. 2023) ........ 14

*Nayab v. Cap. One Bank (USA), N.A.*,
942 F.3d 480 (9th Cir. 2019) ........ 13, 17

*Park v. Thompson*,
851 F.3d 910 (9th Cir. 2017) ........ 5

*People v. Tran*,
61 Cal. 4th 1160 (2015) ........ 23

*Rancourt v. Meredith Corp.*,
2024 WL 381344 (D. Mass. Feb. 1, 2024) ........ 18

*Rodriguez v. Sony Computer Entertainment America LLC*,
801 F.3d 1045 (9th Cir. 2015) ........ 7, 15

*Saunders v. Hearst Television, Inc.*,
711 F. Supp. 3d 24 (D. Mass. 2024) ........ 18

*Simpson Strong-Tie Co., Inc. v. Gore*,
49 Cal. 4th 12 (2010) ........ 13

*Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618 (7th Cir. 2014) ........ 6, 7, 15, 16

*U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*,
931 F.3d 966 (9th Cir. 2019) ........ 13

*Walker v. Superior Court*,
47 Cal.3d 112 (1988) ........ 23

***Statutes***

18 U.S.C. § 2710........ passim

California Civil Code § 1798.110........ 9

California Civil Code § 1798.115........ 9

California Civil Code § 1798.140........ 9, 23, 24

California Civil Code § 1799.3........ 1, 6

***Other Authorities***

1988 Cal. Legis. Serv. 1050........ 23

RESTATEMENT (SECOND) OF CONTRACTS § 19 (AM. L. INST. 2002)........ 21

Senate Report No. 100–500 (1988) ........ 17

***Rules***

Federal Rule of Civil Procedure 12(b) ........ 5

Federal Rule of Civil Procedure 12(b)(6) ........ 4

Federal Rule of Civil Procedure 8 ........ 4

Federal Rule of Civil Procedure 8(a)(2) ........ 4

## PRELIMINARY STATEMENT

Plaintiffs Meredith Beagle ("Beagle"), Jordan Guerrero ("Guerrero"), and Sofauna Johnson ("Johnson" and, together with Beagle and Guerrero, "Plaintiffs") respectfully submit this Memorandum of Law in Opposition to Amazon's Motion to Dismiss Third Amended Complaint ("Motion" or "Mot."). ECF No. 60.[1]

Plaintiffs' Third Amended Class Action Complaint ("Complaint" or "TAC") alleges that Amazon.com Services LLC ("Amazon Services") systemically and unlawfully discloses consumers' (including Plaintiffs') personal identifiable information ("PII") to Amazon.com Inc. ("Amazon Inc." and, together with Amazon Services, "Defendants" or "Amazon") and other Amazon affiliates. ECF No. 59 at ¶¶ 21–25; 42–97; 103, 105; 112, 114; 122–23.[2] The Complaint alleges Amazon Services violated the Video Privacy Protection Act ("VPPA") and California Civil Code § 1799.3 ("§ 1799.3").[3] ¶¶ 137–52. The Complaint adequately pleads VPPA and § 1799.3 claims. Defendants' arguments in opposition, at most, raise factual disputes (relying on a contrary reading of documents that should not be considered) that cannot be resolved on a motion to dismiss. The Court should deny Defendants' Motion.

## STATEMENT OF FACTS

Amazon Services operates Amazon Prime Video, which provides consumers with a wide array of video content. ¶ 79. Defendants do not dispute that Amazon Services is a video tape service provider within the meaning of VPPA ("VT Service Provider"), Mot. at 15–20, or that Plaintiffs are consumers within the meaning of VPPA, ¶ 139, Mot. at 7. Amazon Services

[1] Defendants also filed a Request for Judicial Notice ("RJN") concurrently with their Motion. ECF No. 62.
[2] Citations to ¶__ are to the TAC, ECF No. 59.
[3] Amazon Inc. was named as a Defendant in this case for Plaintiffs' claims under the Washington Consumer Protection Act ("WCPA"). In light of the Court's dismissal as to Plaintiffs' WCPA claims (ECF. No. 43), Plaintiffs do not object to the dismissal of Amazon Inc. as a Defendant.


Burns Charest LLP
201 St. Charles Ave., Ste. 2900
New Orleans, LA 70170
(504) 799-2845

collects and warehouses substantial PII from its users, including identifying details such as names, addresses, email addresses, payment information, and detailed Prime Video viewing history (movie titles, playback times, etc.). ¶¶ 102–06; 111–15; 122–23 (Beagle, Guerrero, and Johnson, respectively). This information is sufficient for an ordinary person to identify consumers, what they watched, and when they watched it through simple online searches. ¶¶ 103 at n.44; 112 at n.45; 122 at n.46 (Beagle, Guerrero, and Johnson, respectively).

Plaintiffs allege that Amazon Services has engaged in systematic and unauthorized disclosure of consumer data, including PII, to Amazon Inc. other Amazon affiliates, without appropriate consent. At times, Defendants appear to concede as much. Mot. at 7–11 (arguing Amazon Services' disclosures of PII fall within VPPA exception). Plaintiffs allege that Amazon Services systematically discloses *all* of its consumers' PII. Plaintiffs also allege that they themselves are Amazon Services consumers. By extension, Plaintiffs have necessarily alleged that Amazon Services has also disclosed *their own* PII.

Amazon's own policies state that Amazon shares consumers' data with its affiliates. *See* ¶¶ 8, 54 ("We share customers' personal information . . . with subsidiaries Amazon.com, Inc. controls"; "If you opt out [of cross context behavioral ads], [w]e'll continue to share your data with our co-branded subsidiaries…"; "'If you choose not to be shown interest-based ads above, we won't: Use information about your use of our store and services to deliver ads to you off of Amazon's own properties' [but, by implication, *will* continue to target ads on Amazon's own properties]"). These admissions are not limited to non-identifying data. Additionally, Defendants' own data returns also suggest Amazon Services discloses data, including Plaintiffs' PII, to co-branded subsidiaries. *See* ¶¶ 73, 95 (*e.g.*, Johnson data return shows "Amazon Digital Services, Inc." as the seller of record for *Pose Season 2*).

Additional facts also give rise to the inference that Amazon Services makes prohibited PII disclosures. These additional facts include (i) Amazon Services' failure to destroy old records, ¶¶ 104, 106, 113, 115 (Amazon Services has not destroyed Beagle or Guerrero's PII for long-completed orders);[4] (ii) Defendants' refusal to affirmatively state that Amazon Services does not share consumers' PII with affiliates, ¶¶ 9–10, 93–97 (Defendants sent an ambiguous ***joint*** response letter to Johnson under the California Consumer Privacy Act); (iii) facts showing Amazon Inc. and its affiliates have a well-documented history of misleading consumers and not protecting their private data, ¶¶ 11, 43–45 (an FTC lawsuit against Amazon Inc. for using dark patterns to trap consumers in the Amazon Prime and the Amazon Prime Video systems); ¶¶ 11, 46–48 (two news reports discussing Amazon's handling of customer data, including allowing affiliates unfettered access to Amazon's warehouse of data); and ¶¶ 11, 49–51 (a Fair Trade Commission ("FTC") Report summarizing its findings about technology companies' data practices, including the practices of Amazon Services' parent company).

Moreover, Plaintiffs affirmatively allege that they did not consent to Defendants disclosing their PII, ¶¶ 101, 110, 120. And Defendants do not dispute that Amazon Services does not obtain VPPA-compliant consent to share PII. Mot. at 23–26.

Plaintiffs also allege that Amazon's convoluted structure of privacy-related disclosures prevents consumers from providing informed, VPPA-compliant consent, ¶¶ 23, 26, 53, 57–69, and that Amazon Services does not attempt to obtain separate and distinct consent for sharing video PII, ¶¶ 14, 16–20, 57–69, 76–83. Rather, all privacy-related information is buried in fine print related to other matters. ¶¶ 14, 16–20 (VPPA consent requirements); ¶¶ 57–69, 76–83 (sign

[4] VPPA generally requires destruction of PII once it's no longer needed "for the purpose for which it was collected." 18 U.S.C. § 2710(e). Although this violation does not give rise to a private cause of action, it nonetheless shows Amazon Services' willingness to flout VPPA's requirements.

up process and fine print displayed to consumers). For example, when consumers sign up, they are presented with a disclaimer that states that "[b]y creating an account, you agree to Amazon's [hyperlinked] Conditions of Use and Privacy Notice." ¶ 57. Consumers are never required to check a box indicating that they have agreed to PII disclosures before proceeding, nor are they required to scroll through the text of the hyperlinked documents. ¶¶ 58–59.

Amazon's own Fine Print[5] provides an illustrative list of the purposes for which Defendants use consumers data. ¶ 74. The list includes purposes such as "using personal information to communicate about promotional offers, using personal information to assess and manage credit risks, and using personal information for targeted ads," among others. ¶ 75.

## ARGUMENT

### A. Legal Standards.

#### 1. Rule 8 requires a short and plain statement of the claim.

A complaint will generally defeat a motion to dismiss ("MTD") under Federal Rule of Civil Procedure ("Rule") 12(b)(6) if it alleges a facially plausible claim for relief. Fed. R. Civ. P. 8; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint need only provide "a short and plain statement of the claim" showing entitlement to relief. Fed. R. Civ. P. 8(a)(2).

Detailed factual allegations are not required. *Id.*; *Twombly*, 550 U.S. at 555; *In re Hulu Privacy Litig.*, 2012 WL 3282960, *7 (N.D. Cal. Aug. 10, 2012) (not required to plead evidence to survive MTD). A court must take all material factual allegations as true and "construe them in the light most favorable [to the plaintiff]." *Guerrero v. Gates*, 442 F.3d 697, 703 (9th Cir. 2006). When there are two alternative, plausible explanations, the complaint defeats the MTD.

[5] "Fine Print" collectively refers to: (1) Amazon.com's Conditions of Use ("COU"); (2) Amazon.com's Privacy Notice ("Privacy Notice"); (3) Amazon.com's Internet-Based Ads Policy ("Ad Policy"); (4) the Prime Video Terms of Use ("Prime Terms"); (5) the Prime Terms and Conditions ("Prime T&C"); (6) the "Privacy Choices" page; and (7) the "Advertising Privacy and Preferences" page.


Burns Charest LLP
201 St. Charles Ave., Ste. 2900
New Orleans, LA 70170
(504) 799-2845

*Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017). Moreover, factual determinations on a MTD are improper. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 950 (9th Cir. 2005). VPPA claims are "not subject to [Rule 9's] heightened standard for allegations sounding in fraud" and plaintiffs "do[] not need to plead the circumstances of every alleged disclosure with particularity." *Campos v. Tubi, Inc.*, 716 F. Supp. 3d 623, 637 (N.D. Ill. 2024). "This is especially so given the informational asymmetry at play; [Defendants] would not, of course, have made [Plaintiffs] privy to any potential disclosures." *Id.*

**2. When ruling on a Rule 12(b)(6) motion, district courts are generally limited to the pleadings.**

Two narrow exceptions—judicial notice and incorporation-by-reference—allow a court to consider extraneous documents. *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001); *see also* Fed. R. Civ. P. 12(b). However, as explained in detail in Plaintiffs' Response to Defendants' Request for Judicial Notice ("RJN Response") filed concurrently herewith, judicial notice of a private corporate website or a party's website are generally improper. *See* RJN Response at 5–6. Incorporation-by-reference can only apply if the complaint refers extensively to the document or the document forms the basis of the claim. *Id.* at 10. It is never proper to "assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well[-]pleaded complaint." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 994, 1003 (9th Cir. 2018).

**B. Plaintiffs Plausibly Allege that Amazon Services Discloses Their PII to its Affiliates.**

VPPA prohibits a VT Service Provider from knowingly disclosing a consumer's PII to any other person without first obtaining that consumer's informed, written consent. 18 U.S.C.


Burns Charest LLP
201 St. Charles Ave., Ste. 2900
New Orleans, LA 70170
(504) 799-2845

§ 2710(a)(3) & (b); *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 984 (9th Cir. 2017). Likewise, § 1799.3 bars video service providers from disclosing any personal information, or the contents of any record, to any third party without written consent. Defendants assert Plaintiffs only allege the possibility that Amazon discloses their PII to its affiliates, not actual disclosure. *See* Mot. at 15–19, 23.

***Disclosure***

Disclosure turns on the action of the VT Service Provider, not the person to whom that provider discloses the information. *See Eichenberger*, 876 F.3d at 985 ("[VPPA] views disclosure from the perspective of the disclosing party"); *Daniel v. Cantrell*, 375 F.3d 377, 379 (6th Cir. 2004) ("only a [VT Service Provider] can be in violation of § 2710(b)"); 18 U.S.C. § 2710 (text of VPPA does not contain an actual receipt requirement for the other party); Cal. Civ. Code § 1799.3 (same). While the Ninth Circuit has not addressed whether data exposure, such as granting database access, constitutes disclosure, the Seventh Circuit has interpreted disclosure to include granting database access. *See Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 626–27 (7th Cir. 2014) (accepting that providing access to a customer database was a form of VPPA disclosure, but ultimately affirming summary judgment for other reasons). Other courts have reached a similar conclusion for data exposure in the automatic data transmission context. *See, e.g., In re Hulu Privacy Litig.*, 2014 WL 1724344, at *14 (N.D. Cal. Apr. 28, 2014) ("Throwing Judge Bork's video watch list in the recycle bin is not a disclosure. Throwing it in the bin ***knowing*** that the Washington Post searches your bin every evening for intelligence about local luminaries might be.") (emphasis added)); *Czarnionka v. Epoch Times Ass'n, Inc.*, 2022 WL 17069810, at *3 (S.D.N.Y. Nov. 17, 2022) ("By installing the Pixel, Defendant opened a digital door and invited Facebook to enter that door and extract information from within . . . . Defendant's installation of

the Pixel exposed its subscribers' information to Facebook. This is sufficient to constitute 'disclosure' under the VPPA.").

*In re Hulu Privacy* and *Czarnionka* show that while disclosure-through-exposure can be, and often is, provided by automatic data transmissions, *Sterk* shows that it need not be. The rationale in *In re Hulu Privacy* and *Czarnionka*—analogies to a recycling bin and an open door—provide additional support to the conclusion that there is no automatic disclosure requirement for exposing information to any person, since both analogies focus on exposure, not automatic transmission. Finally, VPPA's 1988 enactment date suggests that the disclosure requirement does not require automatic or code-based disclosures. The disclosure requirement predates the current, widespread, code-based data practices. As such, VPPA disclosure occurs when the PII is exposed or made available to any person.

First, Plaintiffs have repeatedly alleged that Amazon Services systematically (i.e., for everyone) discloses consumers' PII by providing Amazon Inc. with direct access to Amazon Services' database containing that information. ¶¶ 11, 22, 46–48; 105, 114, 123. Because disclosure is viewed "from the perspective of the disclosing party," *Eichenberger*, 876 F.3d at 985, the issue here is not whether Amazon Inc. or Amazon Digital Services, Inc. received or processed the disclosed information, but whether they had the opportunity to. Who the recipients of the PII are or what, if anything, they do with it is irrelevant. *See Eichenberger*, 876 F.3d at 985; *Cantrell*, 375 F.3d at 379; *Rodriguez v. Sony Computer Entertainment America LLC*, 801 F.3d 1045, 1050 (9th Cir. 2015); 18 U.S.C. § 2710.

Second, Amazon Services' own admissions demonstrate that Amazon discloses consumer data to affiliates. ¶¶ 8, 54. While *some* of Defendants' Fine Print speaks in hypotheticals, other portions of the Fine Print affirmatively state that Amazon Services shares consumers' data with

affiliates. *See, e.g.,* ¶ 54 ("If you[6] opt out [of cross context behavioral ads], [w]e'll continue to share your data with our cobranded subsidiaries. We'll also continue to show you ads based on your activity on Amazon's sites and apps and those of our co-branded subsidiaries."). These affirmative statements admit disclosure and do not contain hypothetical or limiting language, such as "sometimes" or "may." At most, Amazon's conflicting Fine Print (hypotheticals on the one hand, affirmative statements on the other) might give rise to a dispute of material fact regarding disclosure.[7] Defendants cite *M.K. by and through Kirksey v. Google LLC*, 2023 WL 2671381, at *3 (N.D. Cal. Mar. 27, 2023) for the proposition that Plaintiffs must plead facts showing collection and disclosure of PII linked to Plaintiffs specifically. *See* Mot. at 19. This is not the rule, nor does *Kirksey* say it is. *Kirksey* relied on a variety of factors in dismissing the claim, most of which are not present here. *See id.* (no allegations regarding the identity of to whom PII was disclosed, what PII was collected, or facts showing Google was a VT service provider, etc.). By contrast, Plaintiffs show exactly what PII was collected, and they allege it was all disclosed to Amazon Inc. Moreover, unqualified admissions that Amazon Services shares consumer "data with our cobranded subsidiaries" means, or at least gives rise to the inference that, disclosure happens as a matter of course, for all consumers—including Plaintiffs. At the pleading stage, this Court should accept as true Amazon Services' statement that it shares customers' personal information with its affiliates,

---

[6] I.e., whichever consumer is allegedly covered by the Fine Print, including each of the Plaintiffs.

[7] Defendants claim the Privacy Notice "confirms that Amazon . . . shares customers' personal information with Amazon subsidiaries and only for four enumerated and specific business purposes." Mot. at 10 (citing "Does Amazon Share Your Personal Information?" section of Privacy Notice, Goldmark Decl., Ex. 8, ECF No. 61-8); *see also* Mot. at 21 n.9. But that is not what the Privacy Notice says. *See* Goldmark Decl., Ex. 8, ECF No. 61-8 ( "[w]e share customers' personal information only as described below ***and*** with subsidiaries Amazon.com, Inc. controls . . . .") (emphasis added). The purposes "described below" relate to Amazon's sharing of information with *third parties*. This section of the Privacy Notice means that Amazon shares personal information with Amazon subsidiaries (no qualifiers) *and* to third parties (for listed purposes). This is even clearer when this subsection is read with the rest of the Privacy Notice, which has other sections that deal with how *Amazon entities* use consumers' data.

including the inference that this disclosure has occurred for the Plaintiffs and, indeed, all consumers.

Third, Plaintiffs plead facts supporting the conclusion that Amazon Services discloses consumers' PII. Most notably, Amazon Services' own data returns suggest that it shares consumers PII with Amazon affiliate Amazon Digital Services, Inc. ¶¶ 73, 95 (*e.g.*, Johnson data return shows "Amazon Digital Services, Inc." as the seller of record even though Amazon Services is purportedly the VT service provider).[8] Moreover, Defendants have repeatedly refused to affirmatively state that Amazon Services does not share consumers' PII with its affiliates. ¶¶ 9, 93–97. In response to Johnson's request for data disclosure under Cal. Civ. Code § 1798.110 *et seq.,*[9] Defendants, together, stated they had not disclosed Johnson's information. But the joint letter obfuscates whether either of them had disclosed her information to the other, muddying what each entity did individually. Of course, this ambiguity can result in different inferences. Yet, at the MTD

[8] As discussed in the RJN Response, Defendants' claims regarding Amazon Digital Services, Inc.'s place in Amazon Services' corporate history is not supported by the evidence and should be disregarded. Plaintiffs do not challenge Defendant's claim that Amazon.com Services Inc. was Amazon Services' corporate predecessor.

[9] Defendants attempt to illegitimize Plaintiffs' assertions regarding Defendants' letter because "Amazon's response was not required to 'contain anything regarding any co-branded subsidiaries.'" Mot. at 18. They argue that Amazon's affiliates are not "third parties" because Johnson intentionally interacted with Amazon.com Services' affiliates" by agreeing to Amazon's COU. *Id.* This is wrong. Defendants rely on the first prong of the statutory definition of "third parties", which excludes "***The*** business [not *any* business] with whom the consumer intentionally interacts and that collects personal information from the consumer as part of the consumer's current interaction with the business. *See* Cal. Civ. Code § 1798.140(ai) (emphasis added).

Moreover, the statute defines "business" to include an entity that controls or is controlled by a business (i.e., a subsidiary or parent company) that shares common branding "*and with whom the business shares consumers' personal information*." Cal. Civ. Code § 1798.140(d)(2) (emphasis added). To the extent that Defendants attempt to argue that Amazon Services' affiliates are considered part of the "business" (and are therefore not third parties), Defendants admit that Amazon Services does share consumers' personal information with its affiliates. Moreover, Defendants blatantly ignore that the statute *also* required that Amazon Services disclose "the categories of *persons* to whom [the personal information] was disclosed for a business purpose." Cal. Civ. Code § 1798.115 (a)(3) (emphasis added). The definition of "persons" certainly encompasses Amazon affiliates. *See* Cal. Civ. Code § 1798.140(u) (defining "Person"). Consequently, Defendants' argument that they complied with the statute is wrong. They were required to disclose whether Johnson's data was shared with co-branded subsidiaries.



Burns Charest LLP
201 St. Charles Ave., Ste. 2900
New Orleans, LA 70170
(504) 799-2845

stage, Plaintiffs' inference—that Defendants intentionally phrased their letter in an ambiguous way to avoid having to admit affiliate disclosure—must be credited.

Finally, other facts supporting disclosure include Amazon Services willingness to flout VPPA's data destruction requirement, ¶¶ 104, 106, 113, 115, and Defendants' history of misleading consumers and not protecting their private data, including the FTC Report and two news reports discussing Amazon's handling of customer data (including allowing affiliates unfettered access to Amazon's data warehouse), ¶¶ 11, 43–52.

While one of these facts standing alone might not be enough to plausibly state a claim for wrongful disclosure, Plaintiffs have pleaded a bundle of facts that, together, plausibly plead their claim because they, at a minimum, *permit* an inference of disclosure. *See Burdette v. Fubotv Inc.*, 2024 WL 2831466 (N.D. Ill. June 4, 2024) (emphasis added). *Burdette* is instructive. There, the court held that a bundle of circumstantial evidence from the relevant period—including a privacy policy noting that defendant collected identifying information and that defendant "may share" that usage information; a press release discussing, *inter alia*, that the VT service provider had the "exact content and amount of time [consumers'] are watching," and annual reports—amounted to sufficient circumstantial evidence to infer disclosure. *See id.* at *3–4. The court explained that even if a policy does not contain an affirmative statement that PII is disclosed, conjectural language still supports the inference that it is. *Id.* at *3; *see also Campos*, 716 F. Supp. 3d at 639. Moreover, the *Burdette* court reasoned that a privacy policy stating a VT Service Provider disclosed information for certain purposes could support the inference that PII was disclosed—even if the policy did not articulate *what* PII was disclosed. *See Burdette*, 2024 WL 2831466 at *3–4; *see also Campos*, 716 F. Supp. 3d at 639.


Burns Charest LLP
201 St. Charles Ave., Ste. 2900
New Orleans, LA 70170
(504) 799-2845

Here, as in *Burdette*, Plaintiffs have alleged numerous facts that plausibly plead a claim, including allegations of database access disclosure; allegations from Amazon Services' data returns; Defendants' Fine Print admissions; two news articles and an independent FTC Report (all from the relevant time period); facts showing Amazon Services' disregard of VPPA; facts showing Amazon Services' pattern and practice of manipulating consumers (e.g., dark patterns); and Amazon Services' repeated refusal to plainly state that it (Amazon Services) did not disclose consumers' information. Plaintiffs have pleaded disclosure.

***PII***

PII is "information which identifies a person as having requested or obtained specific video materials or services." 18 U.S.C. § 2710(a)(3). To identify a person, the PII must readily permit an ordinary person to identify an individual as having watched certain videos. *Eichenberger*, 876 F.3d at 985–86 (adopting ordinary person standard and noting that, in addition to names and addresses, an individual might also be identified through, *inter alia*, name and phone number, name and birthday, or email address).

Amazon Services harvests PII. ¶¶102–105; 111–115; 122–23. First, Amazon Services collects information including video title, what was viewed and for how long, and playback start and end times. ¶¶ 102–103, 105, 111–12, 114, 122–23. This viewing history shows not only the video material or services "requested or obtained" by each consumer, but also each consumer's exact viewing patterns. *See* 18 U.S.C. § 2710(a)(3) & (b); *Eichenberger*, 876 F.3d at 984.

Amazon Services also collects information which would connect each consumer's specific viewing history to each consumer. ¶¶ 70, 103, 112, 122. This identifying information includes, but is not limited to, name, address, email, payment information, and billing address, ¶¶ 70, 103, 112, 122. And, although not required, Plaintiffs even plead facts showing how the information readily



Burns Charest LLP
201 St. Charles Ave., Ste. 2900
New Orleans, LA 70170
(504) 799-2845

permits an ordinary person to identify their respective watch histories. ¶¶ 103, n.44; 112, n.45; 122, n.46. These allegations, standing alone, plausibly plead that the data constitutes PII.

Plaintiffs also allege facts that show, or at least support the inference that, the data is PII. ¶ 72 (Privacy Notice) and ¶ 50 at n.24 (FTC Report). First, the Privacy Notice states that Amazon Services collects personal information that consumers provide to Amazon (e.g., name, address, and phone numbers; payment information; age; location information; IP address; and documents regarding identity). ¶ 72, n.27. The Privacy Notice also states that Amazon Services automatically gathers information, including, but not limited to, email address; content interaction information, such as content downloads, streams, and playback details; and purchase and content use history. ¶ 72 at n.28.

Second, the FTC Report suggests the information constitutes PII. ¶ 50 at n.24. The FTC Report specifically includes categories of information that constitute PII in its definition of Personal Information, including "first and last name", "home or other physical address …", "email address or other online contact information", "telephone number", and "video, audio, cable, or TV viewing history." ¶ 50 at n.24. In other words, the FTC Report *does* cover video PII—despite Defendants' assertion to the contrary. Mot. at 16.[10] Plaintiffs have plausibly pleaded Amazon Services collects their PII.

**C. Defendants' Affirmative Defensives Are Premature.**

Defendants also argue Plaintiffs' claims fail because (1) VPPA's ordinary course of business exception applies, and (2) Johnson provided written consent. *See generally* ECF No. 60 at 19; *id.* at 23. But "[o]rdinarily, affirmative defenses . . . may not be raised on [an MTD]." *U.S.*

[10] Defendants claim that the FTC Report does not sufficiently address PII, Mot. at 16, pointing to certain categories of unrelated information in that report, such as medical data. They ignore the information that qualifies as PII in the FTC Report. Mot. at 16.

*Commodity Futures Trading Comm'n v. Monex Credit Co.*, 931 F.3d 966, 972 (9th Cir. 2019) (quoting *Lusnak v. Bank of Am., N.A.*, 883 F.3d 1185, 1194 n.6 (9th Cir. 2018)); *see also Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480, 494–95 (9th Cir. 2019) ("The burden of proving justification or exemption under a special exception to the prohibitions of a statute generally rests on one who claims its benefits . . . . The plaintiff need not negative the exception to the statute.") (cleaned up)); *Simpson Strong-Tie Co., Inc. v. Gore*, 49 Cal. 4th 12, 23 (2010) ("In California, it has been declared that where the statute has exemptions, exceptions or matters which will avoid the statute the burden is on the claimant to show that he falls within that category." (quotations omitted)). And courts across the country have rejected attempts to assert these same affirmative defenses at the MTD stage in other VPPA cases. *See, e.g., M. K. v. Google LLC*, 2023 WL 4937287, at *6 (N.D. Cal. Aug. 1, 2023) (plaintiffs "ha[ve] no duty to foreclose an ordinary course of business defense in [their] complaint"); *Adams v. America's Test Kitchen, LP*, 2023 WL 4304675, at *8 (D. Mass. June 30, 2023) (plaintiff need not negate "consent" exception to VPPA liability at the pleading stage, as it is akin to an affirmative defense); *Feldman v. Star Trib. Media Co. LLC*, 2023 WL 2388381, at *11 (D. Minn. Mar. 7, 2023) (same).

Moreover, Plaintiffs do not plead facts that could establish that either of these affirmative defenses apply. In fact, they plead the opposite. *See* ¶ 75 (listing uses that *do not* fall into the ordinary course of business exception); ¶ 120 ("Johnson did not consent to the disclosure of her PII to Amazon Inc. or other Amazon Affiliates."); Decl. of Sofauna Johnson (ECF No. 31-1). Even if the Court considered Defendants' argument that its Fine Print establishes the exceptions apply, that would, at most, create a dispute of fact. Defendants' affirmative defense arguments should be denied on this basis alone.



Burns Charest LLP
201 St. Charles Ave., Ste. 2900
New Orleans, LA 70170
(504) 799-2845

### D. Defendants' Affirmative Defenses Substantively Fail.

#### 1. The "Ordinary Course of Business" Exception Does Not Apply to Amazon Services' Disclosures.

Even if the Court were to consider Defendants' argument that the disclosures fall within VPPA's "ordinary course of business" exception (it should not), their argument fails. VPPA exempts disclosures made "incident to the ordinary course of business of the [VT] service provider." 18 U.S.C. § 2710(b)(2)(E). "Under the VPPA, the term 'ordinary course of business means *only* debt collection activities, order fulfillment, request processing, and the transfer of ownership." *Markels v. AARP*, 689 F. Supp. 3d 722, 729 (N.D. Cal. 2023) (citing 18 U.S.C. § 2710(a)(2)).

First, Defendants' claim that Amazon Inc. is a holding company with "*no employees or operations*" undermines their argument that Amazon Services' disclosures are made for the ordinary course of business. *See* Mot. at 15 (emphasis original). If Amazon Inc. is a holding company without any operations or employees, how can it collect debts, process requests, or fulfill orders? It can't. The ordinary course of business exception cannot apply to Amazon Services' disclosures to Amazon Inc.

Second, Defendants focus on three purposes of data disclosure that Plaintiffs allege in the Complaint: communicating about promotional offers, assessing and managing credit risks, and targeted ads. ¶ 75. The Complaint alleges that Amazon Services may be unlawfully disclosing data for several purposes and identifies three specific examples.[11] This further confirms that this affirmative defense cannot be considered at this stage, as the Court does not have all the facts

[11] *See* ¶ 74 n. 30 ("This list is not an exhaustive list . . . there are even more purposes for which the data is used beyond those itemized in the list.").

before it to determine whether each and every purpose for which Amazon Services discloses PII to its affiliates falls within the exception.

Still, even these enumerated purposes do not fall into VPPA's "ordinary course of business" exception. Defendants argue that "'request processing' and 'order fulfillment' have broad meanings and encompass a wide variety of customer support services, including intra-corporate disclosure." Mot. at 20 (citing *Sterk*, 770 F.3d at 624–26 and *Rodriguez*, 801 F.3d at 1054). But this flips the standard. First, *Sterk* does not stand for the premise that "intra-corporate" disclosures are *per se* authorized under VPPA. Rather, the *Sterk* court held that Redbox's outsourcing of its *customer services operations* to a third party were incident to request processing. *See Sterk*, 770 F.3d at 620. And the "intra-corporate disclosures" alleged in *Rodriguez* involved disclosure when Sony Network allegedly *assumed management* of an affiliate. *See Rodriguez*, 801 F.3d at 1054. Importantly, these disclosures were deemed permissible because the act of managing fell within the "order fulfillment" or "request processing" categories of the exception, *not* simply because the disclosures were intra-corporate. *See id.*

Defendants argue that "the use of customer information to provide personalized recommendations" falls into the "order fulfillment" and "request processing" categories of the "ordinary course of business" exception. First and foremost, Plaintiffs allege that Amazon Services unlawfully shares PII with its affiliates for *promotional offers*, not "personalized recommendations."[12] Nonetheless, either way, these uses do not fall into the exception. Defendants argue that because Amazon Services' video streaming business runs on subscriptions, marketing

[12] In Plaintiffs' Opposition to Defendants' Motion to Dismiss the First Amended Complaint (ECF. No. 37), Plaintiffs identified the same issue. In their reply, *see* ECF. No. 39, Defendants argued that they were using the language supplied in Amazon's Privacy Notice, which, as explained in the RJN Response, should not be considered. The Complaint itself, which is what matters here, discusses "promotional offers". ¶ 75. To the extent this Court considers the Privacy Notice, it explicitly states that "[w]e use your personal information . . . to communicate with you about orders, products and services, *and promotional offers.*" *See* Goldmark Decl., Ex. 8, ECF No. 61-8 (emphasis added).

to its customers or giving "personalized recommendations and options to improve their streaming experience is imperative for Amazon's business." Mot. at 16. If Defendants' argument was true, the exception would swallow the rule—most businesses operate on a model that relies on customer retention to sustain growth and profitability. By this logic, every PII disclosure a business made in furtherance of customer retention would be exempt from VPPA. What is more, Defendants have pointed to no authority showing that subscription-based models are uniquely situated in this respect. Defendants' argument, if anything, points to why it's beneficial to *Amazon Services* to market and/or provide recommendations to its customers, not why its customers need promotional offers or personalized recommendations in order to have their orders fulfilled or requests processed.

Defendants' reliance on the 1988 Senate Judiciary Report for the premise that "order fulfillment" and "request processing" encompasses a video service provider marketing to its own customers is similarly unpersuasive. "[T]he authoritative statement is the statutory text, not the legislative history or any other extrinsic material." *Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 568 (2005). In *Sterk*, the Seventh Circuit acknowledged the district court's refusal to rely on this same report to interpret § 2710(a)(2), seeing "no persuasive reason to effectively rewrite a federal statute based on an *ambiguous committee report*." *Sterk*, 770 F.3d at 624 (emphasis added); *see also Exxon Mobil Corp.,* 545 U.S. at 568 ("legislative history is itself often murky, ambiguous, and contradictory" and "judicial reliance on legislative materials like committee reports . . . may give unrepresentative committee members—or, worse yet, unelected staffers and lobbyists—both the power and the incentive to attempt strategic manipulations of legislative history to secure results they were unable to achieve through the statutory text"); *Burdette*, 2024 WL 2831466, at *5 (rejecting argument that the report "strongly suggests that



Burns Charest LLP
201 St. Charles Ave., Ste. 2900
New Orleans, LA 70170
(504) 799-2845

marketing to customers was one purpose Congress intended to encompass in the exceptions" and holding that "'order fulfillment' and 'request processing' cannot reasonably be synonymous with marketing activities"). What is more, the committee report cuts both ways, stating that "[t]he activities that constitute 'ordinary course of business' are *narrowly defined* so as to avoid the possibility that a subsequent interpretation would undercut the purpose of this Act." S. Rep. No. 100–500, at 14 (1988) (emphasis added).

Indeed, the language of VPPA itself indicates that marketing to a business's own customers is not within the "ordinary course of business." VPPA permits a VT service provider to disclose PII "if the disclosure is for the exclusive use of marketing goods and services directly to the consumer" and the consumer had an opportunity to first prohibit the disclosure. *See* 18 U.S.C. § 2710(b)(2)(D). As one court put it: "Congress already addressed marketing in a separate subsection—Subsection (D). If Congress intended to include 'marketing' in Subsection (E) where it discussed the 'ordinary course of business,' then it would have done so, and perhaps would not have also addressed 'marketing' in [Subsection (D)]." *Collins v. Toledo Blade*, 720 F. Supp. 3d 543, 554–55 (N.D. Ohio 2024).

Next, Defendants—in a single conclusory sentence—argue that the use of consumer information to assess and manage credit risks[13] "is incident to the request processing and order fulfillment functions an affiliate may serve." Mot. at 17. But Defendants fail to explain how assessing credit risks is akin to cyber security. *See Nayab*, 942 F.3d at 494 (general rule of statutory construction places the burden of proving an exception to a statute on the one who claims its benefits).

[13] Once again, Defendants misconstrue Plaintiffs' allegations. Plaintiffs allege that Defendants use personal information to "assess and manage credit risks." ¶ 75. Defendants characterize this as "fraud prevention/credit risks" and then attempt to bolster their cyber security argument by pointing to language in the Privacy Notice that refers to fraud prevention.

And finally, Defendants do not dispute that disclosing PII for targeted advertising does not fall into the ordinary course of business exception. *See, e.g., Louth v. NFL Enterprises LLC*, 2022 WL 4130866, at *4 (D.R.I. Sept. 12, 2022) (disclosing PII to "increase advertising revenue" does not fall within exception); *Saunders v. Hearst Television, Inc*., 711 F. Supp. 3d 24, 32 (D. Mass. 2024) ("'[M]arketing, advertising, and analytics'. . . do not fall within the exception's narrow list of permissible uses."); *Collins,* 720 F. Supp. 3d at 554–55 (rejecting argument that "ordinary course of business" encompasses advertising); *Rancourt v. Meredith Corp.*, 2024 WL 381344, at *17 (D. Mass. Feb. 1, 2024). Instead, Defendants argue that Amazon's Privacy Notice refutes any claim that Amazon Services discloses PII to affiliates for advertising purposes. *See* Mot. at 22. As addressed in Plaintiffs' complaint, "[t]he Privacy Notice disclaimer makes it sound like you cannot be personally identified at all with the information Defendants use for targeted ads, but the reality—as explained in the Internet-Based Ads notice—is that the aggregation of information that Defendants use *can* identify you." ¶ 75 n. 31; *see also Burdette,* 2024 WL 2831466, at *3 (plaintiffs plausibly alleged VPPA claim although defendant's privacy policy stated it "disclose[s] information *that does not personally identify you* (*e.g.*, IP address or a device identifier) with information about content you view" (emphasis added)).

Moreover, Amazon's own "Your Ads Privacy Choices" and "Advertising Privacy and Preferences" pages confirm that Amazon shares consumers' information with Amazon affiliates. *See, e.g.,* ¶ 54 ("If you opt out of [cross context behavioral ads], [w]e'll continue to share your data with our co-branded subsidiaries. We'll also continue to show you ads based on your activity on Amazon's sites and apps and those of our co-branded subsidiaries."); *id.* ("'If you choose not to be shown interest-based ads above, we won't: Use information about your use of our store and

services to deliver ads to you **off of Amazon's own properties'** [but, by implication, *will* continue on Amazon's own properties]").

Defendants do not reference the Privacy Choices page or the Advertising Privacy and Preferences page in their Motion, nor do they request judicial notice of these documents. This Court should not take the facts cherrypicked from the Fine Print (and referenced in Defendants' Motion) as true, because doing so would impermissibly allow defendants to "present their own version of the facts at the pleading stage" while ignoring the well-pled allegations to the contrary. *Khoja,* 899 F.3d at 998–99 (explaining that when defendants "pile on numerous documents" to MTDs via requests for judicial notice and incorporation-by-reference to present their version of the facts, "it becomes near impossible for even the most aggrieved plaintiff to demonstrate a sufficiently 'plausible' claim for relief."). This Court should reject Defendants' request to make factual determinations based on these competing facts at the MTD stage. *See Ade v. Viki, Inc.*, 2024 WL 1880153, at *3 (N.D. Cal. Mar. 28, 2024) ("The scope of the ordinary course of business exception and whether [defendant's use] falls within the exception are issues better addressed on a fuller record at summary judgment."); *Jackson v. Fandom, Inc.,* 2023 WL 4670285, at *5 (N.D. Cal. July 20, 2023) ("To the extent Fandom challenges Jackson's factual allegations regarding the purpose of Fandom's data-sharing practices, that factual issue is not appropriate for resolution on a motion to dismiss.").

In conclusion, Defendants have not demonstrated that the purposes for which Plaintiffs allege that Amazon Services discloses data to its affiliates fall into VPPA's "ordinary course of business" exception.



Burns Charest LLP
201 St. Charles Ave., Ste. 2900
New Orleans, LA 70170
(504) 799-2845

**2. Defendants Have Not Shown that Johnson Consented to Disclosure of her PII.**

Defendants argue that Johnson's Cal. Civ. Code § 1799.3 claim fails "because she gave Amazon.com Services written consent for any purported disclosure of her PII." Mot. at 23. The party seeking to invoke a consent defense bears the burden of establishing that consent exists. *See Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 620 (N.D. Cal. 2021). For the consent to be "actual," the "disclosures must 'explicitly notify' users of the practice at issue." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 793 (N.D. Cal. 2022) (citation omitted). Consent is evaluated under a "reasonable user" standard, *Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1046 (N.D. Cal. 2014), and if there is more than one plausible interpretation, "the Court cannot decide the consent issue in [defendants'] favor," *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 789 (N.D. Cal. 2019). Consent is a fact-intensive inquiry, which requires the court to consider "what a 'reasonable user' of a service would understand they were consenting to." *Calhoun v. Google, LLC*, 113 F.4th 1141, 1149 (9th Cir. 2024). Here, Defendants' consent defense fails because Johnson alleges that she did not consent to the disclosure of her PII to any Amazon affiliates. ¶ 120.

Defendants support their position by impermissibly relying on the Fine Print, which is not proper for judicial notice or incorporation-by-reference. *See generally* RJN Response. But the mere existence of privacy statements in Defendants' policies are insufficient for consent. *See* Mot. at 25. Instead, it is Defendants' burden to show notice of and assent thereto. *See Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1099 (9th Cir. 2023) ("Under California law and generally applicable principles of contract law, the burden is on [Defendants] as the party seeking [enforcement of the contract] to show that it provided notice of . . . and that there was mutual

assent to the contractual agreement[s].") (emphasis added)); *Cody v. Ring LLC*, 2024 WL 735667, at *4 (N.D. Cal. Feb. 22, 2024) ("Ring fails to cite any cases in which merely having a privacy policy online is sufficient to show consent under CIPA."); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 926 n.13 (N.D. Cal. 2023) (finding that "consent is a defense to plaintiffs' claims and it is therefore on Google, not plaintiffs, to prove.") (cleaned up)); *Calhoun*, 526 F. Supp. 3d at 620 (N.D. Cal. 2021) (same); *Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 685 (N.D. Cal. 2021) (same).

Mutual assent requires, at a minimum, that the party relying on the contractual provision establish that the other party had notice and gave some indication of assent to the contract. *See* RESTATEMENT (SECOND) OF CONTRACTS § 19 (AM. L. INST. 2002) ("The conduct of a party is not effective as a manifestation of his assent unless he intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents."); *Long v. Provide Com., Inc.*, 245 Cal.App.4th 855 (2016). Courts must evaluate "whether the outward manifestations of consent would lead a reasonable person to believe the offeree has assented to the agreement." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014).

Defendants do not and cannot meet this burden. According to Defendants, "by creating an account and contracting with Amazon to use Prime Video Services, Johnson had adequate notice of the Privacy Notice, which 'means consent,' for the data practices detailed in the Privacy Notice." Mot. at 26. In support, Defendants affix to the RJN several (but not all of) Amazon's purported policies (see ECF Nos. 61-3, 61-4, 61-5, 61-6, 61-7, 61-8, 61-9, 61-10, 61-11, 61-12).[14] But

---

[14] Defendants also rely on *Heinz v. Amazon.com, Inc.*, 2024 WL 5304886 (W.D. Wash. Dec. 18, 2024) for the proposition that "the Amazon.com Conditions of Use and Privacy Notice gave the plaintiff customer adequate notice of Amazon's data practices." Mot. at 26. But that case actually found that, while considering whether the plaintiff had adequate notice that his chat transcripts with Amazon's support system would be recorded, "the explicit language about 'communicat[ing] with us by phone, email, or otherwise' and a 'support ticket' should have put him on notice that his data, typed into Amazon's support system, would be received and stored." *Heinz*, 2024 WL 5304886, at *3. Contrary to Defendants' representation, *Heinz* does not conclude that Amazon's policies constitute adequate notice of *all* of Defendants' data practices.

Defendants have failed to include any proof whatsoever that during the Amazon Prime Video sign-up process (or at any other point), Johnson saw, let alone read and consented to, the policies on which Defendants rely. Indeed, there is no indication or manifestation of Johnson's assent to the policies precisely because Defendants never requested Johnson's consent to the conduct at issue here. *See* ¶¶ 21, 28, 31, 56, 57, 60, 62, 66, 120 142, 151. Accordingly, because Defendants have not established that Plaintiff agreed to the terms on which it relies, Defendants cannot establish Plaintiff consented to Amazon's terms. *See Jackson*, 65 F.4th at 1099 (denying enforcement of the agreement when "Amazon did not . . . make any showing that Jackson received [] notice" of terms); *see also Knutson*, 771 F.3d at 566 ("Nothing in the record, however, indicates that Sirius XM's offer was clearly and effectively communicated to Knutson . . . .").

Even if this Court were to consider the Fine Print, the consent argument fails because "consent must be actual." *In re Google, Inc. Gmail Litig.*, 2013 WL 5423918, at *12 (N.D. Cal. Sept. 26, 2013). For actual consent, the disclosures must "explicitly notify" users of the practice at issue. *Id.* at *13; *see also Campbell v. Facebook, Inc.*, 77 F. Supp. 3d 836, 847–48 (N.D. Cal. 2014) (for a finding of consent, the disclosures must have given users notice of the "specific practice" at issue). "The disclosures must have only one plausible interpretation for a finding of consent." *Calhoun v. Google LLC*, 526 F. Supp. 3d at 620; *see also In re Meta Pixel Healthcare Litig.*, 647 F. Supp. at 793 ("[I]n order to be effective, the consent must be to the particular conduct of the actor, or to substantially the same conduct." (cleaned up)).

Here, the Court should look at the definition of consent found in California Consumer Privacy Practices Act, Cal. Civ. Code 1798 *et seq.* under the doctrine of *in pari materia*. The CCPA is part of the statutory regime governing the dissemination of personal information, and defines consent as:

> any freely given, specific, informed, and unambiguous indication of the consumer's wishes by which the consumer . . . including by a statement or by a clear affirmative action, signifies agreement to the processing of personal information relating to the consumer for a narrowly defined particular purpose. Acceptance of a general or broad terms of use, or similar document, that contains descriptions of personal information processing along with other, unrelated information, does not constitute consent.

Cal. Civ. Code 1798.140(h).

Under the doctrine of *in pari materia*, the Court may read the CCPA and §1799.3 together. *See People v. Tran*, 61 Cal. 4th 1160, 1167-68 (2015) ("It is an established rule of statutory construction that similar statutes should be construed in light of one another . . . and that when statutes are *in pari materia* similar phrases appearing in each should be given like meanings."). "Statutes are considered to be *in pari materia* when they relate to the same person or thing, or class of persons or things, or have the same purpose or object." *Kaanaana v. Barrett Bus. Servs., Inc.*, 11 Cal. 5th 158, 175 (2021). Such statutes should "be construed together so that all parts of the statutory scheme are given effect." *Lexin v. Superior Court*, 47 Cal.4th 1050, 1090–91 (2010). Thus, "language appearing in separate provisions dealing with the same subject matter should be accorded the same interpretation." *Walker v. Superior Court*, 47 Cal.3d 112, 132, 253 (1988).

Here, the CCPA and §1799.3 are *in pari materia* because their purpose is to "safeguard the informational privacy of Californians." *California Priv. Prot. Agency v. Superior Ct.*, 99 Cal. App. 5th 705, 712 (2024); *see also* 1988 Cal. Legis. Serv. 1050 ("Existing law does not generally restrict the disclosure by persons providing video cassette sales or rental services of records prepared or maintained by those persons, although the California Constitution specifies privacy as one of the inalienable rights of all people in the state.").

The CCPA's definition precludes a finding that Defendants obtained consent to disclose Johnson's video rental records. As defined, "[a]cceptance of a general or broad terms of use, or similar document, that contains descriptions of personal information processing along with other, unrelated information, does not constitute consent." Cal. Civ. Code 1798.140(h). Here, the terms that Defendants rely on to establish consent are part of Amazon's broader policies. For example, the Privacy Notice includes unrelated information, such as information regarding whether "children [are] allowed to use Amazon" and Amazon's participation "in the EU-US Data Privacy Framework," as well as generic "Related Practices and Information." *See* Goldmark Decl., Ex. 8, ECF 61-8. Likewise, the Prime Terms of Service include terms for "Cancellation," "Shipping," and "Fees," *see id.*, Ex. 7, ECF No. 61-7, and the Prime Video Terms contain information relating to "Compatible Devices" and "Limitation[s] of liability" among other things. *See id.*, Ex. 6, ECF No. 61-6.

Moreover, the terms of the Privacy Notice are so broad to effectively render them meaningless. The Privacy Notice is not drafted in a manner that informs consumers that their PII is being disclosed for "a narrowly defined particular purpose." Cal. Civ. Code 1798.140(h). Rather, the Privacy Notice generically states that Amazon collects personal information, which may include "information you provide" and "certain types of information about your use of Amazon Services[.]" *See* Goldmark Decl,, Ex. 8, ECF 61-8. Indeed, Defendants do not point to *any specific terms* in the Conditions of Use or Privacy Notice that request permission for disclosure of PII, but instead make the conclusory statement that their Fine Print requests that permission and that Johnson consented to same. *See* Mot. 23–26. And even if they could, Johnson found these terms vague and ambiguous and did not understand these provisions as requesting her consent to disclose her video rental records. *See* Declaration of Sofauna Johnson, ¶¶ 4–5 (ECF No. 31-1).

## CONCLUSION

For the foregoing reasons, this Court should deny Amazon's Motion in its entirety. In the alternative, if this Court grants the Motion in whole or in part, it should grant Plaintiffs leave to amend under the liberal amendment standard.[15]

DATED: February 14, 2025

Respectfully submitted,

**BURNS CHAREST LLP**
(Admitted *pro hac vice*)

*s/ Korey A. Nelson*
Amanda K. Klevorn (LA Bar #35193)
Korey A. Nelson (LA Bar #30002)
Laura S. Seggerman (TX Bar #24134116)
201 St. Charles Avenue, Suite 2900
New Orleans, Louisiana 70170
Telephone: (504) 799-2845
Facsimile: (504) 881-1765
Email: aklevorn@burnscharest.com
knelson@burnscharest.com
lseggerman@burnscharest.com

Cristina R. Delise (NY Bar #5442033)
757 Third Avenue, 20th Floor
New York, New York 10017
Telephone: (469) 904-4550 main
Telephone: (469) 663-5940 direct
Facsimile: (469) 444-5002
Email: cdelise@burnscharest.com

*Co-Lead Counsel for Plaintiffs and the Nationwide Class*

**BRAGAR EAGEL & SQUIRE, P.C.**
(Admitted *pro hac vice*)

*s/ Lawrence P. Eagel*
Lawrence P. Eagel (NY Bar #1924067)
Casey C. DeReus (LA Bar #37096)

[15] "Dismissal without leave to amend is [generally] improper." *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

810 Seventh Avenue, Suite 620
New York, New York 10019
Telephone: (212) 308-5858
Facsimile: (212) 486-0462
Email: eagel@bespc.com
dereus@bespc.com

Melissa A. Fortunato (CA Bar #319767)
580 California Street, Suite 1200
San Francisco, California 94104
Telephone: (415) 568-2124
Facsimile: (212) 304-0506
Email: fortunato@bespc.com

*Co-Lead Counsel for Plaintiffs and the Nationwide Class*

**BURSOR & FISHER, P.A.**
(Admitted *pro hac vice*)

*s/ Joseph I. Marchese*

Joseph I. Marchese
Philip L. Fraietta
1300 Avenue of the Americas, 32nd Floor
New York, New York 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: jmarchese@bursor.com
pfraietta@bursor.com

*Additional Counsel for Plaintiffs*

**CARSON NOEL PLLC**

Wright A. Noel
20 Sixth Avenue NE
Issaquah, Washington 98027
Telephone: (452) 837-4717
Facsimile: (425) 837-5396
Email: wright@carsonnoel.com

*Additional Counsel for Plaintiffs*

**DUNCAN LAW, PLLC**

*s/ Shaquelle M. Duncan*
Shaquelle M. Duncan (WA Bar #56701)
410 SW 10th Street, Suite 215
Renton, Washington 98057
Telephone: (206) 237-7714
Facsimile: (206) 238-1324
Email: duncans@duncanlawpllc.com

*Additional Counsel for Plaintiffs*

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7(e)**

"I certify that this memorandum contains 8,051 words, in compliance with the Local Civil Rules."

*s/ Korey A. Nelson*
Korey A. Nelson

*Co-Lead Counsel for Plaintiffs and the Nationwide Class*