The Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MEREDITH BEAGLE, JORDAN GUERRERO, and SOFAUNA JOHNSON on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM, INC. and AMAZON.COM SERVICES LLC,<br><br>Defendants. | No. 2:24-cv-00316-JLR<br><br>AMAZON'S REPLY IN SUPPORT OF MOTION TO DISMISS THIRD AMENDED COMPLAINT<br><br>NOTE ON MOTION CALENDAR: February 28, 2025[1]<br><br>ORAL ARGUMENT REQUESTED |

[1] Based on briefing schedule set pursuant to the parties' Stipulated Order (Dkt. 58).



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## Table of Contents

I. INTRODUCTION ....................1

II. ARGUMENT AND AUTHORITY ....................1

A. Plaintiffs' VPPA Claims Fail. ....................1

1. The Alleged Possibility That Amazon.com, Inc. Had Access to PII Is Insufficient to State a Claim. ....................2

2. Any Alleged Affiliate Disclosures Fall Within the VPPA's Ordinary Course of Business Exception. ....................5

B. Johnson's Claim under Cal. Civ. Code § 1799.3 Fails. ....................9

1. Johnson Fails to Allege Disclosure of Her PII ....................9

2. Johnson Consented to Disclosure. ....................9

C. Plaintiffs' VPPA and Section 1799.3 Claims Should Be Dismissed With Prejudice. ....................11

III. CONCLUSION ....................11



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## I. INTRODUCTION

Plaintiffs' Opposition confirms their claims rest solely on the hypothetical possibility that Amazon.com Services LLC collected personally identifiable information ("PII") in a database that its affiliates, including Amazon.com, Inc., might have been able to access. But Plaintiffs allege no facts supporting their conjecture and allege no facts supporting their speculation that Amazon.com Services disclosed *their* PII to anyone. Plaintiffs fail to identify any Amazon affiliate (other than Amazon.com, Inc., a holding company with no employees for which any disclosure would be incident to Amazon's business) to whom their PII was allegedly disclosed. Plaintiffs instead speculate disclosure *might* have occurred based on a hodgepodge of circumstantial evidence taken out of context, none of which suggests Amazon actually disclosed Plaintiffs' PII. As this Court already held, such speculative allegations fail because the alleged *possibility* of disclosure does not state a claim under the VPPA or Cal. Civ. Code § 1799.3.

Although Plaintiffs repackage their arguments, they rest on the same speculative allegations this Court already found insufficient. "[T]hey still fail to state a claim that is plausible and not merely possible." Dkt. 43 ("MTD Order") at 7. None of their arguments have merit, and—as Plaintiffs' repeated attempts demonstrate —further amendment cannot cure the fatal defects in their claims. Accordingly, Amazon respectfully request that this Court dismiss the Third Amended Complaint ("TAC") with prejudice.

## II. ARGUMENT AND AUTHORITY

### A. Plaintiffs' VPPA Claims Fail.

To state a VPPA claim, Plaintiffs must allege facts supporting a *plausible* inference—not just a mere *possibility* that Amazon knowingly disclosed Plaintiffs' PII without authorization. *Mollet v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015). Formulaic recitations of the VPPA and conclusory allegations do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nor do speculative allegations based solely on contractual language stating certain disclosures "may" occur. *Gamez v. VF Corp.*, 2018 WL 6333560, at *3 (C.D. Cal. 2018). Yet that is all Plaintiffs allege here. Plaintiffs thus fail to state a VPPA claim.



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**1. The Alleged Possibility That Amazon.com, Inc. Had Access to PII Is Insufficient to State a Claim.**

Plaintiffs again rely on allegations that this Court already considered and rejected. They allege Amazon.com, Inc.—which Plaintiffs do not contest is a holding company with no employees and concede should be dismissed, Opp. at 1 n.3—allegedly received "access" to a supposed database containing unidentified consumer information, which *might possibly* include Plaintiffs' PII. Opp. at 6–11. But as this Court previously recognized, "[t]hat Amazon Services allegedly provides access to Plaintiffs' PII does not plausibly suggest that Amazon Services has taken the affirmative act of disclosing that data to Amazon.com, Inc. or that Amazon.com, Inc. has actually received that data." MTD Order at 6. Instead, "Plaintiffs allege, at most, the mere *possibility* that information could be disclosed to those affiliates, rather than that Amazon Services had *in fact* made such disclosures." *Id.* at 5. "[B]ut mere possibility is not enough." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 971–72 (9th Cir. 2009). "Because Plaintiffs do not plausibly allege that Amazon Services disclosed their PII to Amazon affiliates …, they have failed to plead an essential element of a claim under the VPPA[.]" MTD Order at 7.

In an effort to evade this Court's prior ruling, Plaintiffs argue that "providing Amazon Inc. with direct access to Amazon Services' database" amounts to disclosure because "disclosure occurs when the PII is exposed or made available to any person." Opp. at 7. But the authority Plaintiffs cite does not support their argument and is easily distinguishable here.

First, Plaintiffs rely on *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 625 (7th Cir. 2014), arguing that "the Seventh Circuit has interpreted disclosure to include granting database access." Opp. at 6. While *Sterk* did address an alleged disclosure based on access to a database containing PII, Plaintiffs omit that defendants in that case "preemptively disclos[ed] its entire customer database" to a third-party contractor, who then actively searched the database for user PII to address customer service calls. *Sterk*, 770 F.3d at 625. In other words, in *Sterk* the defendant *affirmatively disclosed* its entire database of customer PII to a third party who then regularly accessed the customer PII. Plaintiffs make no such allegations here, nor could they.



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Rather, Plaintiffs allege nothing more than Amazon.com, Inc. *might* have had access to a supposed database containing PII. But as this Court explained in rejecting this theory:

> Although the act of disclosure *suggests* access, however, the opposite is not true. That Amazon Services allegedly provides *access* to Plaintiffs' PII does not plausibly suggest that Amazon has taken the *affirmative act* of disclosing that data to Amazon.com, Inc. or that Amazon.com, Inc. has actually received that data.

MTD Order at 6 (emphasis added).

Next, Plaintiffs argue that allegedly maintaining an internal database of customer information is analogous to cases where defendants automatically transmit user PII to third parties, like Facebook. *See* Opp. at 6–7 (citing *Czarnionka v. Epoch Times Ass'n, Inc.*, 2022 WL 17069810, at *3 (S.D.N.Y. 2022); *In re Hulu Priv. Litig.*, 2014 WL 1724344, at *14(N.D. Cal. 2014)).[2] But this Court already found that these cases are "distinguishable because, in both cases, the defendant automatically sent the users' PII to third parties." MTD Order at 6. In *In re Hulu Privacy Litigation*, Hulu wrote a code that "automatically" transmitted users' PII to Facebook. 2014 WL 1724344, at *13, 16. Similarly, in *Czarnionka*, plaintiff alleged defendant disclosed plaintiff's PII by installing the Meta Pixel, which automatically "sen[t] Facebook information about the subscriber" when they watched videos. 2022 WL 17069810, at *1. Here "Plaintiffs make no allegations in their complaint of automatic disclosures from Amazon Services to Amazon.com, Inc." MTD Order at 6.

Plaintiffs rely on an FTC report that has *no relation* to the PII at issue here and a response letter from Amazon's counsel that expressly confirms Amazon *did not share video PII*. *See* TAC

---

[2] Plaintiffs also contend that because disclosure is viewed "from the perspective of the disclosing party," *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017), they have stated a plausible VPPA claim based on their vague allegations that Amazon affiliates "had the opportunity to" access a supposed database with consumer information. Opp. at 7. *Eichenberger* states no such thing. There, the Ninth Circuit noted disclosure was viewed from the perspective of the disclosing party for purposes of defining what constitutes "personally identifiable information" under the VPPA. 876 F.3d at 985. The court did not hold that a VPPA claim survives dismissal where, as here, plaintiff alleges only that a third party had "the opportunity to" access PII. *Id.* at 982 (plaintiff alleged defendant disclosed his PII "by *giving* Adobe his Roku device serial number and identifying the videos that he watched") (emphasis added).



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

¶¶ 10–11, 49–52, 93–97; Dkt. 61 ("Goldmark Decl.") Exs. 1, 12. To the extent the FTC report addresses Amazon's data practices, it concerns data practices by Amazon's subsidiary Twitch, which is not a defendant, and whose services no plaintiff is alleged to have used. *See* TAC ¶¶ 50, 98–124; Goldmark Decl. Ex. 1. The report does not even remotely suggest that Amazon.com Services or Amazon.com, Inc. discloses customers' *video PII* in a manner that violates the VPPA. Similarly, as Plaintiffs admit, Amazon's response to Ms. Johnson's data request "confirm[s] that it has not shared any of Ms. Johnson's personal information which identifies her as having requested, obtained, or viewed specific video materials or services from Amazon." TAC ¶ 93; Goldmark Decl. Ex. 12.

While Plaintiffs concede that Amazon.com Services Inc. was the corporate predecessor of Amazon.com Services LLC, Plaintiffs contend that Amazon Digital Services may not have been a corporate predecessor. This is untrue. *See* Mot. at 9. However, even if Amazon Digital Services was not a corporate predecessor to Amazon.com Services, Plaintiffs have not alleged that Amazon.com Services disclosed anything to Amazon Digital Services. Rather, their allegations go the other direction: that Amazon Digital Services was the seller of record for certain content, but that Amazon.com Services produced data relating to that content. This in no way supports Plaintiffs' contention that Amazon.com Services disclosed their data to an affiliate.

Finally, Plaintiff cites *Burdette v. FuboTV Inc.*, 2024 WL 2831466, at *3–4 (N.D. Ill. June 4, 2024), arguing that Plaintiffs need not allege any affirmative disclosure because they "have pleaded a bundle of facts that, together, … permit an inference of disclosure." Opp. at 10. But in *Burdette*, the circumstantial evidence included defendant's own annual reports and press releases that "disclosed that use of subscriber data to deliver relevant advertising on its platform 'placed [defendant] and their content publishers at risk for claims under a number of laws, including but not limited to the Video Privacy Protection Act ('VPPA')." *Burdette*, 2024 WL 2831466, at *2. Indeed, the *Burdette* defendant essentially conceded that it had disclosed customer PII in violation of the VPPA. Here, Plaintiffs' circumstantial "evidence"—which is pure speculation—does not come close to the admissions in *Burdette*.



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Plaintiffs' allegations are instead "more akin to *Rodriguez v. Sony Computer Entertainment America LLC*, in which the 'plaintiff's allegations failed to state that a disclosure had affirmatively taken place[.]'" MTD Order at 6 (quoting *Rodriguez v. Sony Computer Entertainment America LLC*, 2012 WL 12921066, at *1 (N.D. Cal. Apr. 20, 2012)); *see also M.K. by & through Kirksey v. Google LLC*, 2023 WL 2671381, at *3 (N.D. Cal. 2023) (dismissing plaintiff's VPPA claim because it rested on conclusory allegations that Google "collected consumers' [PII]" and "upon information and belief … disclosed such information to unidentified third-parties, including data brokers and advertisers," but provided "no facts linking these allegations to allegations to [plaintiff], much less identifying what [PII] Google allegedly disclosed, or to whom such information was disclosed"). As in *Rodriguez*, Plaintiffs complaint contains no allegations that Amazon.com Services affirmatively disclosed *any of Plaintiffs' PII*, much less their video viewing information protected by the VPPA. Their conclusory and speculative claim thus fails.

**2. Any Alleged Affiliate Disclosures Fall Within the VPPA's Ordinary Course of Business Exception.**

The Court should also dismiss Plaintiffs' affiliate disclosure claim because "intra-corporate disclosures are not unauthorized … under [the VPPA's ordinary course of business exception]." *Rodriguez v. Sony Comput. Ent. Am. LLC*, 801 F.3d 1045, 1054 (9th Cir. 2015).

*First*, Plaintiffs are incorrect that courts cannot apply the ordinary course of business exemption on a motion to dismiss. A court may consider an affirmative defense or safe harbor "on a motion to dismiss when there is some obvious bar to securing relief on the face of the complaint." *U.S. CFTC v. Monex Credit Co.*, 931 F.3d 966, 973 (9th Cir. 2019) (citation & internal quotation marks omitted). And courts dismiss VPPA claims where the ordinary course of business exemption applies based on the complaint's allegations and the documents it incorporates. *See*, *e.g.*, *Rodriguez*, 801 F.3d at 1054 & n.6 (affirming dismissal of VPPA claim under the ordinary course of business exemption, explaining: "We do not agree with Rodriguez that the determination of whether the [VPPA] exemption applies is a factual determination.").



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Plaintiffs cite *Monex*, 931 F.3d at 972, claiming it stands for the proposition that safe harbors cannot be raised on a motion to dismiss, Opp. at 12–13. But *Monex* states no such thing. There, the Ninth Circuit simply explained that plaintiffs need not plead facts negating a statutory exemption to state a claim, 931 F.3d at 972–73; it did not say safe harbors cannot apply based on the pleadings—a notion established Ninth Circuit law (including *Rodriquez*) squarely rejects. Here, by contrast, Plaintiffs' own allegations invoke and rely on Amazon's privacy notices, which read in full, show that any intra-corporate disclosures would be incident to Amazon's business. *Rodriguez*, 801 F.3d at 1054 (affirming dismissal at the motion to dismiss stage because alleged intra-corporate disclosures were covered by the VPPA's "order fulfillment" or "request processing" exemptions); *cf. M.K. v. Google LLC*, 2023 WL 4937287, at *6 (N.D. Cal. 2023) (unable to determine if exception applies because, unlike here, the complaint "contain[ed] no information about … contractual obligations, and they are not otherwise part of the record").

*Second*, Plaintiffs are incorrect that Amazon.com Services' alleged disclosure to its affiliates falls outside VPPA's ordinary business exception.[3] Before addressing whether the listed uses are covered by the exception, Plaintiffs assert, without any support, that the uses listed in Amazon's Privacy Notice are not exhaustive and that "there are even more purposes for which the data is used." Opp. at 14–15 n.11 (citing TAC ¶ 74 n.30). But Plaintiffs do not allege what these additional purposes are and they therefore cannot serve as the basis of their claims under Rule 8. In any event, Plaintiffs' assertion is belied by other language in Amazon's Privacy Notice stating that Amazon *shares* PII "only" for limited purposes, including to Amazon's Subsidiaries. *See* Goldmark Decl. Ex. 8.

[3] Plaintiffs also argue that the ordinary business exception cannot apply to Amazon.com, Inc. because it is merely a holding company and therefore cannot perform any of the enumerated business functions that would exempt it from the VPPA. Opp. at 14. But this argument is self-defeating. If Amazon.com, Inc. cannot "collect debts, process requests, or fulfill orders," as Plaintiffs claim, *id.*, then it similarly would be incapable of accessing customer PII purportedly housed in the Amazon.com Services database and there could be no disclosure under the VPPA.



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Plaintiffs argue that the purposes identified in the TAC, for "recommendations and personalization,"[4] "advertising," and "fraud prevention and credit risks," Goldmark Decl. Ex. 8, do not fall within the ordinary business exception, Opp. at 15–19. They are wrong. In *Rancourt v. Meredith Corp.*, 2024 WL 381344 (D. Mass. 2024), the court explained that "if the disclosure of PII is in furtherance of business management and operations that are intra-corporate or inner facing, designed to ensure the smooth operation of the business, such as customer support, internal data analytics, or cyber security, it falls under the exception." *Id.* at *17; *see also Sterk*, 770 F.3d at 624–26 (noting that the "request processing" and "order fulfillment" have broad meanings and encompass a wide variety of customer support services, including intra-corporate disclosure); *Rodriguez*, 801 F.3d at 1054 (same). Each of the alleged uses is thus covered under the exception.

Relying on *Collins v. Toledo Blade*, 720 F. Supp. 3d 543, 555 (N.D. Ohio 2024), Plaintiffs argue that using customer information to provide recommendations and personalization does not constitute "order processing" or "request fulfillment" because "the language of VPPA itself indicates that marketing to a business's own customers is not within the "ordinary course of business." Opp. at 17. But Plaintiff's reliance on *Collins* is misplaced. *Collins* is a Meta Pixel case where plaintiff alleged that defendant installed the Meta Pixel on their website, which in turn automatically shared customer PII with Facebook. 720 F. Supp. 3d at 546–47. While the Court acknowledged that courts "have interpreted the 'ordinary course of business' exception to include marketing[,]" the Court distinguished these prior cases because "Defendants do not offer any argument that Meta performed some function of Defendants' business, such as customer

---

[4] Plaintiffs claim that the language in Amazon's Privacy Notice and other disclosures should not be considered and should not control over the allegations in Plaintiff's Complaint. Opp. at 15, n. 15. Not so. Plaintiffs base their arguments on excerpts of Amazon's Privacy Notice; Amazon simply provided the complete Privacy Notice. *Compare* TAC ¶¶ 71–75 (allegation based on Privacy Notice) *with* Goldmark Decl. Ex. 8. The actual Privacy Notice language—not Plaintiffs' selective excerpts—controls. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 990 (9th Cir. 2001) (courts are "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint") (citation & internal quotation marks omitted), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001).



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

service or a similar function, that would normally be performed by Defendants themselves." *Id.* at 555 (citing *Sterk*, 770 F.3d 618). Here, by contrast, any purported intra-corporate use of customer information to ensure customers receive personalized recommendations and options to improve their streaming experience is an imperative customer service function for Amazon's streaming television business.[5]

As for "fraud prevention and credit risks," Plaintiffs speculate, with no support, that preventing such risks is not "akin to cybersecurity." Opp. at 17 & n.13. But Plaintiffs ignore that the Privacy Notice explains Amazon uses customer information "to protect the security of our customers," Goldmark Decl. Ex. 8, and that such credit assessment constitutes "internal data analytics" protected by the exemption, *Rancourt*, 2024 WL 381344, at *17.

Lastly, for "advertising," despite Amazon's Interest-Based Ads Notice that states that it does not use information which "on its own" identifies a customer, Plaintiffs assert that Amazon discloses aggregated PII data that can identify customers. Opp. at 18 (citing TAC ¶ 75 n.31). But Plaintiffs provide no factual allegations to substantiate this unfounded claim. Instead, they cite *Burdette* as an example of a court finding plaintiff plausibly alleged VPPA claim where defendant's privacy policy stated it "discloses information that does not personally identify you[.]" Opp. at 18 (quoting *Burdette*, 2024 WL 2831466, at *3). Plaintiffs ignore, however, that in *Burdette*, "[t]he Privacy Policy [expressly] permit[ed] [defendant] to collect and *disclose users' viewing history and specific individual-identifying information, such as names, demographic information, and location information*." 2024 WL 2831466, at *3 (emphasis

---

[5] Plaintiffs also urge this court to ignore the legislative history, which expressly confirms the terms "request processing" and "order fulfillment" cover businesses' disclosure of PII "for marketing to their customers." S. Rep. No. 100-500, at 14 (1988). In making this argument, Plaintiffs cite and misstate the *Sterk* court's reasoning. In *Sterk*, the plaintiff attempted to use the legislative history to limit exempted "disclosure[s] only to third-parties engaged in (1) debt collection, (2) transfer of ownership, and (3) marketing[.]" *Sterk*, 770 F.3d at 624. The court in *Sterk* did not reject the legislative history's express inclusion of marketing activities in the ordinary business exception, but instead rejected plaintiff's attempt to use the legislative history to narrow the scope of the exemptions. *Id*. at 624–25. The Court here should similarly reject Plaintiffs' attempt to narrow the exemptions Congress expressly intended to include.



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

added). Here, Amazon's Privacy Notice makes clear that Amazon "do[es] *not* use information that personally identifies you to display interest-based ads." Goldmark Decl. Ex. 8 (emphasis added). Amazon's Interest-Based Ads Notice confirms this, stating Amazon "*do[es] not use* information which on its own identifies you, *such as name or e-mail address*, to serve interest based ads." *Id.* Ex. 11 (emphasis added).[6] Plaintiffs cannot claim Amazon's Privacy Notice "acknowledge[s] that Amazon Services can and is sharing PII-related video usage history," TAC ¶ 53, because the actual terms of that Notice confirm Amazon does not share PII for such purposes.

**B. Johnson's Claim under Cal. Civ. Code § 1799.3 Fails.**

**1. Johnson Fails to Allege Disclosure of Her PII.**

For the reasons discussed above, because Johnson fails to plausibly allege any disclosure of her PII to an Amazon affiliate, her section 1799.3 claim fails.

**2. Johnson Consented to Disclosure.**

Johnson's section 1799.3 claim also fails because she consented to any alleged disclosure. Unlike the VPPA, Cal. Civ. Code § 1799.3 requires only "written consent" for the disclosure of customer PII. *Id.* Johnson does not dispute that she "contracted with Amazon Services," TAC ¶ 119, and created an Amazon account, which required her to click a button that explained "[b]y creating an account, you agree to Amazon's Conditions of Use and Privacy Notice," with direct hyperlinks to both documents. *Id.* ¶ 57. Nonetheless, Johnson claims she did not consent to any disclosure because: (1) Amazon did not include the Privacy Notice in place in 2017 when she created her account or show that she agreed to later versions of the notices; and (2) any consent purportedly did not qualify as "written consent." Both arguments fail.

---

[6] Plaintiff also argues that "Amazon's own 'Your Ads Privacy Choices' and 'Advertising Privacy and Preferences' pages confirm that Amazon shares consumers' information with Amazon affiliates." Opp. at 18–19. But these pages simply allow Amazon customers to opt out of personalized ads on Amazon and do not suggest in any way that Amazon shares customers' identifying information. To the contrary, both pages clearly link to Amazon's Privacy Notice and Amazon's Interest-Based Ads Notice, which make clear Amazon does not share this information. Plaintiff's attempt to create a factual issue where none exists is therefore unavailing.



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Johnson's consent to Amazon's Privacy Notice does not require further development. As Johnson admits, she created her Amazon account in 2017 and was required to accept Amazon's Conditions of Use and Privacy Notice in place at that time. TAC ¶¶ 57, 117. The Conditions of Use and Privacy Notice she accepted in 2017 contained materially similar privacy disclosures as the current versions. *See* Goldmark Decl. Exs. 3–5, 9–10. Thus, by registering, Johnson provided "written consent" to Amazon's Conditions of Use and Privacy Notice. Further, Johnson alleges and admits that she continued using Amazon's services after 2017, TAC ¶¶ 118–121, thereby again consenting to the updated privacy notices. *See* Goldmark Decl. Exs. 9–10 ("our current Privacy Notice applies to all information that we have about you and your account"); *cf. Gray v. Amazon.com, Inc.*, 653 F. Supp. 3d 847, 857 n.9 (W.D. Wash. 2023) ("Given Plaintiffs' alleged continued use of Alexa …, they would not be bound solely by policies in effect when they registered their devices."), *aff'd*, 2024 WL 2206454 (9th Cir. 2024).

Recognizing her acceptance of these terms, Johnson argues that she could not have "consented" to Amazon's Privacy Notice because "Defendants never requested Johnson's consent to the conduct at issue here." Opp. at 22. But Johnson ignores that all applicable versions of Amazon's Privacy Notice state in bold that, by using Amazon's services or websites, she consents to "**the practices described in this Privacy Notice**" and clearly lists all the purposes for which Amazon may use customer data, as Plaintiffs detail in the complaint. *See* TAC ¶¶ 72–75; Goldmark Decl. Exs. 8–10. Indeed, courts routinely find that this clickwrap agreement to Amazon's Privacy Notice is sufficiently conspicuous to consumers and enforceable. *See, e.g.*, *Heinz v. Amazon.com, Inc.*, -- F. Supp. 3d. --, 2024 WL 5304886, at *3 (W.D. Wash. Dec. 18, 2024) (plaintiff provided consent to Amazon's data practices and Amazon's Privacy Notice through "multiple interactions with Amazon.com, including making purchases"); *Heinz v. Amazon.com, Inc.*, 2023 WL 4466904, at *2 (E.D. Cal. July 11, 2023) (plaintiff provided consent to Amazon's Conditions of Use, because he had to accept them to make account, sign into said account, and place orders); *Storey v. Amazon.com Servs. LLC*, 2024 WL 2882270, at *6 n.6



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

(W.D. Wash. 2024) (holding Amazon provides clear and conspicuous notice of its privacy notice; *Garner v. Amazon.com, Inc.*, 603 F. Supp. 3d 985, 997–99 (W.D. Wash. 2022) (same).

Johnson also argues that her actions do not constitute consent under the California Consumer Privacy Act ("CCPA"), and thus cannot constitute consent under section 1799.3 because both statutes are interpreted *in pari materia*. But Johnson cites no case in which a court has construed section 1799.3 *in pari materia* with the CCPA or held the consent required by both statutes is the same. This is for good reason. Section 1799.3 was enacted decades *before* the CCPA's definition of consent was amended in 2021 to exclude "[a]cceptance of a general or broad terms of use." *Compare* 1988 Cal. Legis. Serv. 1050 *with* 2021 Cal. Legis. Serv. Ch. 525 (A.B. 694). If the legislature wished to amend the understanding of consent under section 1799.3, it could have done so. That it did not indicates "consent" is not interpreted *in pari materia*. *Kaanaana v. Barrett Bus. Servs., Inc.*, 11 Cal. 5th 158, 175 (2021) ("Where the Legislature chooses to define the same term differently in two different provisions, neither provision should be rewritten under the guide of an *in pari materia* construction.")

### C. Plaintiffs' VPPA and Section 1799.3 Claims Should Be Dismissed With Prejudice.

Plaintiffs request leave to (yet again) amend their VPPA or section 1799.3 claims, but have not identified any unpled facts that could overcome the deficiencies with their claims or that warrant giving Plaintiffs a fourth bite at the apple. Accordingly, Plaintiffs' VPPA and section 1799.3 claims should be dismissed with prejudice.

## III. CONCLUSION

For the above reasons and those set forth in Amazon's Motion, this Court should dismiss Plaintiffs' claims with prejudice.



Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

DATED this 28th day of February, 2025.

DAVIS WRIGHT TREMAINE LLP
*Attorneys for Amazon.com, Inc. and Amazon.com Services LLC*

By *s/ John Goldmark*
John Goldmark, WSBA # 40980
Lauren Rainwater, WSBA #43625
Erwin Reschke, *pro hac vice*
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
Tel: (206) 622-3150
Email: JohnGoldmark@dwt.com
Email: LaurenRainwater@dwt.com
Email: ErwinReschke@dwt.com

I certify that this brief contains 4,076 words, in compliance with the Local Civil Rules.